**DRAFT**

LAW OFFICES OF THOMAS SCULY
10736 Jefferson Blvd., #117
Culver City, CA   90230
310-439-1140
310-351-1119 mobile
509-756-6952 fax
Email: Thomas@ThomasScullyLaw.com

Attorney for Plaintiff
TERRENCE M. WYLES

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TERRENCE M. WYLES,<br><br>        Plaintiff,<br><br>    v.<br><br>ALLEN ZACHARY SUSSMAN; LOEB & LOEB L.L.P.; ALUMINAID INTERNATIONAL, A.G.; WEST HILLS RESEARCH & DEVELOPMENT, INC. (f/k/a Aluminaid, Inc.); ALUMINAID PTE LTD., aka ADVANCED FIRST AID RESEARCH PTE LTD.; CARL JOHAN FREER; JAMES JOHN HUNT, aka ADAM AGERSTAM, aka ADAM CARL-JOHAN AGERSTAM; JULIA FREER-AGERSTAM, aka JULIA FREER, aka JULIA AGERSTAM; DAVID ANDREW WARNOCK, aka DAVID WARNOCK; ALEX ARENDT; JOSEPH MATHEW MARTEN, aka JOE MARTEN; and THOMAS D. BRADY, aka TOM BRADY.<br><br>        Defendants. | CASE No. 2:17-cv-07722-DMG (SK)<br><br>Hon. Dolly M. Gee, District Judge<br>Courtroom 8C<br><br>**JOINT STIPULATION RE: DISCOVERY DISPUTES BETWEEN PLAINTIFF AND BRADY—**<br><br>• ORIGINAL DEPOSITION DATE<br>• OBJECTIONS TO DEPOSITION HELD<br>• WRITTEN DISCOVERY BEFORE THE ORIGINAL DISCOVERY CUT-OFF<br>• WRITTEN DISCOVERY DURING EXTENDED DISCOVERY<br><br>Non-Expert Discovery Cut-Off:<br>    December 10, 2019<br><br>Extended Discovery Cut-Off:<br>    April 10, 2020<br><br>Extended Motion cut-off:<br>    April 20, 2020<br><br>Final Pretrial Conf.:   vacated<br><br>Trial Dates:   vacated |


**DRAFT**

TO THE HONORABLE COURT AND TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

**PLEASE TAKE NOTICE THAT**, pursuant to Local Rule 37-2 plaintiff Terrence M. Wyles ("Plaintiff") by and through his counsel, and defendant THOMAS D. BRADY aka TOM BRADY ("Brady") *pro se*, hereby stipulate as follows:

## STIPULATION

**WHEREAS** Plaintiff Wyles and Brady met and conferred over email to set a deposition date at a mutually agreeable time and place, prior to the original discovery cut-off date, with unlimited scope as to what questions could be asked, settling on a date just after the cut-off, but that Brady refused to appear;

**WHEREAS** Plaintiff took the deposition of Brady February 7, 2020 during the extended discovery period that was more limited in scope, although Brady objected to, and refused to answer, a large number of questions put to him orally by Plaintiff's counsel;

**WHEREAS** Plaintiff propounded written discovery on Brady before the original discovery cut-off date which Brady objected to, or failed to respond to without making a formal objection;

**WHEREAS** Plaintiff propounded written discovery in the form of Requests for Admission on Brady after the original discovery cut-off date but during the extended discovery period which Brady also failed to respond to;

**WHEREAS** Plaintiff's counsel met and conferred with Brady by phone, which was preferred by Brady, at mutually agreeable times including most recently March 5 and March 7;

**WHEREAS** Plaintiff's counsel Mr. Scully and Brady proceeding *pro se* were unable to identify any points of compromise regarding any of these Discovery disputes,

**DRAFT**

NOW, THEREFORE, pursuant to Local Rule 37-2.1 Plaintiff and Brady agree:

### As to the Depositions:

A.   Having exchanged various dates of availability prior to December 10, 2019 which was the original discovery cut-off date, Brady chose and agreed to the date of December 13, 2019 for which Plaintiff noticed a deposition.   But after about December 10, 2019 Brady's position was that the deposition set for December 13, 2019 was beyond the discovery cut-off, and he did not need to appear.   Plaintiff's position is that Brady effectively waived the cut-off by stipulating to be deposed a few days after the cut-off, and he should have appeared.

B.   After the Court made orders regarding an extended discovery period Plaintiff took Brady's deposition February 7, 2020.   However at that deposition Brady made objections and refused to answer a number of oral questions, mainly on the grounds that they went beyond the scope permitted by the Court:

C.   Question:   "[D]id Dr. Grossman do anything in response to that meeting or say anything at the meeting?"[1]   9:08-10.[2]

D.   Question:   "What did you do in response to the meeting?"   10:11.

E.   Question:   "What did you first enter into any kind of contract or relationship with any of the Aluminaid companies?"   10:15-17.

F.   Question:   "What was the actual name of the first company that you entered into a relationship with, the first Aluminaid company?"   10:25-11:02.

---

[1] The meeting referenced occurred in 2013 when a company called Aluminaid approached Dr. Grossman and made a presentation to him.   Dr. Grossman asked Brady to be present.   It was his first awareness of the existence of the product.

[2] Numbers are referenced the page and line number of the deposition of Brady February 7, 2020.

G.  Question:  "Were you a member of any of the companies' governing board?" 11:12-13. "Were you a member of the advisory board of any of the companies?" 11:17-18.

H.  Question:  "Were you a member of the management of Aluminaid PTE, Limited?"  11:22-23.

I.  Question:  "Were you aware that you were listed there as management?"  12:04-05.

J.  Question:  "When did you first become aware that you were listed by Aluminaid PTE, Limited as … part of the management of Aluminaid PTE, Limited in this document?"  12:08-12.  "When did you first see this document?"[3]  12:17.

K.  Question:  "Were you in fact a member of the advisory board of Aluminaid PTE?"  14:03-04.

L.  Question:  "Were you in fact a member of the management Aluminaid PTE?"  14:06-07.

M.  Question:  "When did you first become aware of anybody saying you were a member of the management of advisory board of Aluminaid PTE?"  14:11-13.

N.  Question:  "Do you remember giving an affidavit in support of West Hills Research and Development Opposition to a Motion to Strike in California State Court litigation?"  14:23-25.

O.  Questions requiring Brady to authenticate the document identified as Exhibit 2 and state whether he had signed it.  See, p.15; Exhibit 2.[4]

P.  Question:  "Are the statements that you made in Exhibit 2 accurate?"

---

[3] The document referenced is Exhibit 1:  Aluminaid Fast Acting Burn Relief Information Memorandum ("business plan").

[4] The document identified as Exhibit 2 is a declaration purportedly by Brady that was filed as part of the underlying litigation in Los Angeles Superior Court.

1  16:23-24.  "Are there statements in Exhibit 2 that are not accurate?"  17:04-05.

2     Q.   Question:  "When you gave a declaration in the California State Court
3  case, Exhibit 2, it was in support of West Hills Research and Development, Inc..
4  When you did that, did you have an understanding that that was a company you
5  were affiliated with?"  23:25-24:04.

6     R.   Question:  "When you gave your declaration, Exhibit 2, …. And
7  stated that was in support of West Hills Research and Development, did you have an
8  understanding as to whether that was a company that Mr. Hunt was affiliated with?"
9  24:14-18.

10    S.   Question:  "Did you tell Mr. Hunt about a company called Blu Dane?"
11 25:18-19.

12    T.   Question:  "You're saying somebody else other than Mr. Hunt sent
13 you do Lobe and Lobe [sic]?"  Answer:  "I did not say that."  "Well who sent
14 you to Lobe and Lobe [sic]?"  27:02-05.

15    U.   Question:  "Are you aware of working on a sunburn relief product
16 called SiMTech?"  28:13-14.

17    V.   Question:  "Is it possible that if Mr. Hunt testified that he discussed
18 Blu Dane with you that he was correct?"  Answer:  "I've already refused to
19 answer the question that I discussed anything with Mr. Hunt."  Question:
20 "You're refusing to answer a question about whether you discussed anything with
21 Mr. Hunt?"  30:03-09

22    W.   Question:  "Were you and Mr. Hunt included on any e-mails
23 regarding Mr. Wyles?"  30:10-11.

24    X.   Question:  "What e-mails did you receive regarding Mr. Wyles that
25 may have also been shared with Mr. Hunt?"  31:06-07.

26    Y.   Question:  "Did you include Mr. Hunt on any e-mails you sent
27 regarding Mr. Wyles?"  31:20-21. "So, you're refusing to answer whether you sent
28 any e-mails to Mr. Hunt about Mr. Wyles?"  31:25-32:01.

1. Z. Question: "Did any of the information you received and testified about in your declaration regarding Blu Dane come from Mr. Hunt?  32:13-15.

2. AA. Question regarding whether Brady had access to e-mails with Mr. Hunt, specifically at the address FIREACTX7777@yahoo.com was not responded to by Brady since the deposition when he said he would check.  35:04-21.

3. BB. Question: "So, other than the possible statements from Mr. Sandoval … or Mr. Montagnac, or Mr. Antico what other information did you receive regarding Mr. Wyles' participation in any plan to ship to another company or allowing patents to expire?"  55:05-09.

4. CC. Question: "Did you go to Singapore on behalf of any of the Aluminaid companies?"  65:02-03.

5. DD. Question: "Did you do anything while in Singapore … on behalf of Aluminaid?"  68:10-11.

6. EE. Question: "Did Aluminaid compensate you for either trip to Singapore or Malaysia?"  68:20-21.

**As to the first set of Requests for Admission:**

Brady failed to respond to the following Requests for Admission:

1. Admit that on February 3, 2014, you executed a Declaration on behalf of Aluminaid PTE Ltd. (a/k/a "Advanced First Aid Research PTE Ltd.") and West Hills Research and Development, Inc. (f/k/s "Aluminaid, Inc.") in California Civil Case No. BC516417, in which you declared under penalty of perjury under the laws of California that your statements in the Declaration were "true and correct."

2. Admit that you consulted with attorneys at the law firm Loeb & Loeb LLP to create the Declaration referenced in Request for Admission #1 above.

3. Admit that you consulted with Allen Z. Sussman to create the Declaration referenced in Request for Admission #1 above.

4. Admit that you acted as an Advisor on the Aluminaid Advisory Board

**DRAFT**

along with Dr. A. Richard Grossman, a world-renowned burn specialist, and that you provided such advisory services for the Aluminaid corporations.

5. Admit that you allowed and approved of your identity, likeness, and biographical background to be used in various Aluminaid entites' websites, business plans, and marketing materials.

6. Admit that in some portion of 2013 or 2014 you appeared in Aluminaid entities' websites, business plans, presentations, and marketing materials as Aluminaid's "Executive Vice President of Governmental Affairs."

7. Admit that you have appeared in Aluminaid entities' websites, business plans, presentations, and marketing materials as a Member of Aluminaid's Advisory Board.

8. Admit that you negotiated any contracts between yourself and one or more Aluminaid corporate entities.

9. Admit that you negotiated any contracts with Allen Z. Sussman.

10. Admit that you negotiated with any Defendants to be compensated by way of salaries, bonuses, stock shares, travel expenses, or future ownership.

11. Admit that you traveled on Aluminaid business to Singapore or Malaysia.

12. Admit that you have made public appearances on behalf of one or more Aluminaid entities, and have been written about regarding your affiliation with the Aluminaid entities in media publications.

13. Admit that you have never been telephoned by Plaintiff, Terrence M. Wyles.

14. Admit that on April 9, 2013, you initiated a telephone call to Plaintiff Terrence M. Wyles at Mr. Wyles' Colorado location (phone number 303-880-0884).

15. Admit that Mr. Wyles indicated in clear terms that the U.S. Aluminaid entity had been looted by persons whose name appear as Defendants in the caption of this lawsuit.

**DRAFT**

16. Admit that Mr. Wyles indicated that he (Mr. Wyles) was trying to figure out a way to save the Aluminaid corporations from insolvency.

17. Admit that during your April 9, 2013 phone call with Mr. Wyles, Mr. Wyles suggested that you notify Dr. A. Richard Grossman of the financial improprieties going on with the Aluminaid entities in order to potentially get the Grossmans, as influential stockholders, to take some action to save the Aluminaid companies.

18. Admit that Mr. Wyles never suggested to you that he (Mr. Wyles) was personally trying to take-over control of the Aluminaid companies and the associated intellectual-property assets.

19. Admit that during the April 9, 2013 phone call, Mr. Wyles did not discuss with you any sort of conspiracy with Patrick Joseph Sandoval (a/k/a Joseph De Wolf).

20. Admit that Mr. Wyles never discussed with you any theft or misappropriation of trade secrets or other intellectual-property assets belonging to the Aluminaid entities.

21. Admit that your Declaration references an allegedly competing company called Blue Dane LLC supposedly formed by Messrs. John DeMontagnac and Mr. Patrick Joseph Sandoval.

22. Admit that you have no evidence that Mr. Terrence M. Wyles was associated with any entity named Blue Dan LLC.

23. Admit that in a January 14, 2014 email from Allen Sussman to you, Mr. Sussman told you that he (Mr. Sussman) did not know of any tie between Mr. Wyles and Blue Dane LLC.

24. Admit that in your February 3, 2014 Declaration, you stated that Mr. Sandoval was placed on a "list of banned persons" to prevent Mr. Sandoval from meeting with you at your LA County Fire Station.

25. Referring to a May 27, 2014 Letter from the County of Los Angeles

Fire Department, signed by Division Chief Michael Kranther, admit that the Los Angeles County Fire Department does not have a policy that addresses "banning" a citizen from entering a fire station.

26. Referring to a May 27, 2014 Letter from the County of Los Angeles Fire Department, signed by Division Chief Michael Kranther, admit that Mr. Patrick Joseph Sandoval was not ever placed on any "list of banned persons."

27. Admit that when you created your February 3, 2014 Declaration, you strategized with Loeb & Loeb LLP and/or Allen Z. Sussman to make your Declaration damaging to Mr. Wyles.

28. Admit that when you created your February 3, 2014 Declaration you were unaware that Mr. Wyles had recorded the April. 9, 2013 phone call that you initiated with him.

29. Admit that you were unaware that Mr. Sandoval initiated a California Public Records Request to challenge your assertions that he (Mr. Sandoval) had been placed on a "list of banned persons" at Los Angeles County Fire Stations.

30. Admit that you met with Joseph Mathew Marten a/k/a Joe Marten in California on at least one occasion.

31. Admit that, during the time of the West Hills Research & Development lawsuit against Mr. Wyles, you discussed the situation involving Mr. Wyles with Joseph Mathew Marten a/k/a Joe Marten.

32. Admit that, during the time of the West Hills Research & Development lawsuit against Mr. Wyles, you discussed the situation involving Mr. Wyles with James John Hunt.

**As to the second set of Requests for Admission as to Hunt:**

Brady failed to respond to the following Requests for Admission:

1. Admit that on February 3, 2014, you executed a Declaration on behalf of Aluminaid PTE Ltd. (a/k/a "Advanced First Aid Research PTE Ltd.") and West

**DRAFT**

Hills Research and Development, Inc. (f/k/s "Aluminaid, Inc.") in California Civil Case No. BC516417, at the prompting of James John Hunt.

2. Admit that James John Hunt consulted with attorneys at the law firm Loeb & Loeb LLP to create the Declaration referenced in Request #1 above.

3. Admit that you consulted with James John Hunt to create the Declaration referenced in Request #1 above.

4. Admit that Dr. A. Richard Grossman, a world-renowned burn specialist, acted as an Advisor on the Aluminaid Advisory Board at the invitation of James John Hunt.

5. Admit that you acted as an Advisor on the Aluminaid Advisory Board at the invitation of James John Hunt.

6. Admit that James John Hunt requested the use of your identity, likeness, and biographical background to be used in various Aluminaid entites' websites, business plans, and marketing materials.

7. Admit that James John Hunt was involved in websites, business plans, presentations, and marketing materials of Aluminaid's Advisory Board for Aluminaid entities' including the entity known as "West Hills".

8. Admit that you negotiated any contracts between yourself and one or more Aluminaid corporate entities for which James John Hunt was involved.

9. Admit that you negotiated any contracts with James John Hunt.

10. Admit that you negotiated with James John Hunt to be compensated by way of salaries, bonuses, stock shares, travel expenses, or future ownership.

11. Admit that you traveled to Singapore or Malaysia to do further business involving James John Hunt.

12. Admit that James John Hunt prompted you to make public appearances on behalf of one or more Aluminaid entities, and write about your affiliation with the Aluminaid entities in media publications.

13. Admit that you have never been telephoned by Terrence M. Wyles.

**DRAFT**

14. Admit that on April 9, 2013, you initiated a telephone call to Plaintiff Terrence M. Wyles at Mr. Wyles' Colorado phone (number 303-880-0884).

15. Admit that Mr. Wyles indicated in clear terms that the U.S. Aluminaid entity had been looted by James John Hunt.

16. Admit that Mr. Wyles never suggested to you that he (Mr. Wyles) was personally trying to take-over control of the Aluminaid companies and the associated intellectual-property assets.

17. Admit that during the April 9, 2013 phone call, Mr. Wyles did not discuss with you any sort of conspiracy with Patrick Joseph Sandoval (a/k/a Joseph De Wolf).

18. Admit that Mr. Wyles never discussed with you any theft or misappropriation of trade secrets or other intellectual-property assets belonging to the Aluminaid entities.

19. Admit that your Declaration references an allegedly competing company called Blue Dane LLC supposedly formed by Messrs. John DeMontagnac and Mr. Patrick Joseph Sandoval.

20. Admit that James John Hunt told you that Mr. Terrence M. Wyles was associated with any entity named Blue Dane LLC.

21. Admit that in a January 14, 2014 email from Allen Sussman to you, Mr. Sussman told you that he (Mr. Sussman) did not know of any tie between Mr. Wyles and Blue Dane LLC.

22. Admit that in your February 3, 2014 Declaration, you stated that Mr. Sandoval was placed on a "list of banned persons" to prevent Mr. Sandoval from meeting with you at your LA County Fire Station.

23. Referring to a May 27, 2014 Letter from the County of Los Angeles Fire Department, signed by Division Chief Michael Kranther, admit that the Los Angeles County Fire Department does not have a policy that addresses "banning" a citizen from entering a fire station.

24. Referring to a May 27, 2014 Letter from the County of Los Angeles Fire Department, signed by Division Chief Michael Kranther, admit that Mr. Patrick Joseph Sandoval was not ever placed on any "list of banned persons."

25. Admit that you were unaware that Mr. Sandoval initiated a California Public Records Request to challenge your assertions that he (Mr. Sandoval) had been placed on a "list of banned persons" at Los Angeles County Fire Stations.

26. Admit that when you created your February 3, 2014 Declaration, you strategized with James John Hunt's designated lawyers to make your Declaration damaging to Mr. Wyles.

27. Admit that you met with James John Hunt in California on at least one occasion.

28. Admit that you spoke with James John Hunt on at least one occasion.

29. Admit that, during the time of the West Hills Research & Development lawsuit against Mr. Wyles, you discussed the situation involving Mr. Wyles with James John Hunt.

DATED: _____                    DEFENDANT, THOMAS D. BRADY

By: _____
Thomas D. Brady, *pro se*

DATED: <u>April 1, 2020</u>                    LAW OFFICES OF THOMAS SCULLY

By: _____
Thomas Scully, Attorney for Plaintiff
TERRENCE M. WYLES

**DRAFT**

**DECLARATION CONCERNING CONCURRENCE**

I, Thomas Scully, am the CM/ECF User whose identification and password are being used to file this Stipulation. In compliance with L.R. 5-4.3.4(a)(2)(i), I hereby attest that _____ has concurred in this filing's content and has authorized this filing.

Dated: March _, 2020                   /s/   Thomas Scully
                                       Thomas Scully

**CERTIFICATION OF ELECTRONIC SERVICE**

I, Thomas Scully, hereby certify that all counsel of record that have consented to electronic service and are being served with a copy of this document via the Court's CM/ECF system per Local Rule 5-3.2.1 on March _____, 2020.

Dated: March _, 2020                   /s/   Thomas Scully
                                       Thomas Scully