Thomas H. Scully (Cal. SBN: 305790)
Thomas@ThomasScullyLaw.com
Attorney for Plaintiff:
Terrence M. Wyles
Business Address:
10736 Jefferson Blvd., #117
Culver City, CA  90230
Telephone: (310) 439-1140
Facsimile: (509) 756-6952

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TERRENCE M. WYLES,<br>                    Plaintiff<br><br>                    v.<br><br>ALLEN ZACHARY SUSSMAN;<br>LOEB & LOEB L.L.P;<br>ALUMINAID INTERNATIONAL, A.G.;<br>WEST HILLS RESEARCH &<br>DEVELOPMENT, INC. (f/k/a Aluminaid,<br>Inc.); ALUMINAID PTE LTD., aka<br>ADVANCED FIRST AID RESEARCH<br>PTE LTD.; CARL JOHAN FREER;<br>JAMES JOHN HUNT, aka JAMES HUNT;<br>ADAM FREER, aka ADAM AGERSTAM,<br>aka ADAM<br>CARL-JOHAN AGERSTAM; JULIA<br>FREER-AGERSTAM, aka JULIA FREER,<br>aka JULIA AGERSTAM; DAVID<br>ANDREW WARNOCK, aka DAVID<br>WARNOCK; ALEX ARENDT; JOSEPH<br>MATHEW MARTEN, aka JOE MARTEN;<br>and THOMAS D. BRADY, aka TOM<br>BRADY.<br><br>                    Defendants. | CASE NUMBER:<br><br>2:17-cv-07722-DMG-SK<br><br><br>**PLAINTIFF'S NOTICE OF MOTION AND RENEWED MOTION FOR DEFAULT JUDGMENT AGAINST DEFENDANT JAMES JOHN HUNT**<br><br><br>Date:  **September 25, 2020**<br><br>Time:  **9:30 AM**<br><br>Courtroom:  **8C** |

**TO ALL COUNSEL OF RECORD, PARTIES APPEARING *PRO SE*, AND THIS HONORABLE COURT:**

PLEASE TAKE NOTICE THAT on September 25, 2020 at 9:30 a.m. or whenever the Court designates as soon as practical thereafter, at the District Court of the Central District of California located at 350 West 1st Street, Los Angeles, California  90012, Courtroom 8C, Plaintiff, Terrence M. Wyles, will and hereby does renew his Motion for a Default Judgment (MDJ) against Defendant JAMES JOHN HUNT in the amount of six hundred and six thousand, four hundred fifty-nine dollars and eleven cents ($606,459.11) plus General Damages and Punitive Damages according to affidavit (*See also,* Doc. #253-2) and all the evidence from exhibits and court filings available to the Court, pursuant to FRCP, Rule 55(b)(2) and Local Rule 55-2.

James John Hunt, having been deemed to have been served since the end of 2019 and having failed to file a proper pleading with this Court (Doc. #259), has had a default entered against him on Plaintiff's First Amended Complaint as of August 3, 2020 (Doc. #260).  Mr. Hunt has not made any apparent attempt to file a response before his final opportunity expired August 24, 2020 (Doc. #258 p.1).

This motion will be based on this notice, the memorandum of points and authorities, declarations and exhibits attached, oral arguments, the entire court file, and any other matters the Court finds appropriate to consider.

DATED:  August 28, 2020

Respectfully submitted,
**Law Offices of Thomas Scully**

*Thomas Scully, Esq.,*
*Attorney for Plaintiff Terrence M. Wyles*

2
**PLAINTIFF'S NOTICE OF RENEWED MOTION FOR DEFAULT JUDGMENT TO BE ENTERED AGAINST DEFENDANT JAMES JOHN HUNT**

# **Table of Contents**

I.   STATEMENT OF PROCEDURAL FACTS .................................................2

II.   STATEMENT OF UNDERLYING FACTS..............................................4

III.   DEFAULT IS APPROPRIATE IN THIS SITUATION PURSUANT TO

THE EITEL FACTORS...............................................................................6

1.   The Possibility of Prejudice to Plaintiff.............................................6

2.   Substantive Merits and Sufficiency of the Claims in Plaintiff's First

Amended Complaint..................................................................................7

   a)   The Underlying Lawsuit was Commenced By or at the Direction of

Hunt and Pursued to a Legal Termination in Wyles' Favor.........................8

   b)   Hunt Brought the Underlying Action Without Probable Cause ...........9

   c)   Hunt Brought the Underlying Action with Malice ...............................12

3.   Sum of Money in Dispute.....................................................................14

4.   Possibility of Dispute Concerning Material Facts.....................................15

5.   Excusable Neglect of the Party Against Whom Default is Entered.........16

6.   Strong Policy Favoring Decisions on the Merits .................................16

IV.   Plaintiff Suffered Damages as Set Forth in his Affidavit .......................17

1.   Plaintiff Has Provided Evidence of Special Damages.............................18

2.   Plaintiff Has Testified to His General Damages from Extreme Emotional

Distress .......................................................................................................19

3.   Plaintiff Requests Punitive Damages from James John Hunt .................19

V.   CONCLUSION AND PRAYER..............................................................20

PLAINTIFF'S NOTICE OF RENEWED MOTION FOR DEFAULT JUDGMENT TO BE
ENTERED AGAINST DEFENDANT JAMES JOHN HUNT

Thomas H. Scully (Cal. SBN: 305790)
Thomas@ThomasScullyLaw.com
Attorney for Plaintiff:
Terrence M. Wyles
Business Address:
10736 Jefferson Blvd., #117
Culver City, CA  90230
Telephone: (310) 439-1140
Facsimile: (509) 756-6952

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TERRENCE M. WYLES,<br>Plaintiff<br><br>v.<br><br>ALLEN ZACHARY SUSSMAN;<br>LOEB & LOEB L.L.P;<br>ALUMINAID INTERNATIONAL, A.G.;<br>WEST HILLS RESEARCH &<br>DEVELOPMENT, INC. (f/k/a Aluminaid,<br>Inc.); ALUMINAID PTE LTD., aka<br>ADVANCED FIRST AID RESEARCH<br>PTE LTD.; CARL JOHAN FREER;<br>JAMES JOHN HUNT, aka JAMES HUNT;<br>ADAM FREER, aka ADAM AGERSTAM,<br>aka ADAM<br>CARL-JOHAN AGERSTAM; JULIA<br>FREER-AGERSTAM, aka JULIA FREER,<br>aka JULIA AGERSTAM; DAVID<br>ANDREW WARNOCK, aka DAVID<br>WARNOCK; ALEX ARENDT; JOSEPH<br>MATHEW MARTEN, aka JOE MARTEN;<br>and THOMAS D. BRADY, aka TOM<br>BRADY.<br><br>Defendants. | CASE NUMBER:<br><br>2:17-cv-07722-DMG-SK<br><br><br>**PLAINTIFF'S RENEWED MOTION FOR DEFAULT JUDGMENT TO BE ENTERED AGAINST DEFENDANT JAMES JOHN HUNT**<br><br><br>Date:  **September 25, 2020**<br><br>Time:  **9:30 AM**<br><br>Courtroom:  **8C** |

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. <u>STATEMENT OF PROCEDURAL FACTS</u>

1.      Plaintiff filed a First Amended Complaint on January 21, 2019, the operative complaint, against thirteen (13) defendants including one identified as JAMES JOHN HUNT aka JAMES HUNT.  Plaintiff's claims were subsequently narrowed to Malicious Prosecution of an underlying action that had been filed by West Hills Research & Development against him in California.  Doc. #142, #156.

2.      Plaintiff's counsel attempted to serve James John Hunt in the United Kingdom.  *See*, Doc.#78, #97.  The address either was not correct or James John Hunt was successful in refusing the mail.  Regardless, the Court did not find service of process to be complete.  Doc. #136, #157.

3.      A few months later, Mr. Joseph Marten, at that time a co-defendant, filed a motion with a declaration of James Hunt attached.  That declaration was signed October 23, 2019 in London.  Doc. #206.  In that declaration Hunt discussed the matter of Marten's involvement and the history of the case in a way that showed he was knowledgeable about the current litigation.

4.      Mr. Marten also noticed to all parties the deposition of Mr. Hunt, by videoconference from London, which in fact took place December 4, 2019.  In that deposition Mr. Hunt admitted that he was one of the principal decision-makers in filing the underlying lawsuit against Terrence Wyles.  **Ex. 4,** Selected Pages from Hunt Deposition Transcript.

5.      Plaintiff moved for Mr. Hunt to be reinstated as defendant, and served by electronic mail at his email address of <u>jameshuntermay@gmail.com</u>, which the Court granted November 27, 2019 provided service was accomplished no later than December 13, 2019.  Doc. #212, #217.

6.      Pursuant to the Court's orders of November 27, 2019 the counsel for

Mr. Marten filed a proof of service on Hunt December 6 and counsel for Plaintiff filed a proof of service on Hunt December 10, both of which indicated that a copy of the First Amended Complaint together with a recently issued Summons were in fact conveyed to Mr. Hunt by email in London on December 3 local time which was December 4 in the U.K.  Doc. #222, #225.

7.     A few weeks later, Mr. Hunt mailed a document to Plaintiff's counsel by way of Marten's counsel entitled "James John Hunt Answer to First Amended Complaint; Statement of Facts, First Claim for Relief; Second Claim for Relief" mailed December 23, 2019 but it was not signed, did not include any address, nor was it filed with the Court electronically or otherwise.  Upon inquiry by Plaintiff's counsel, the Court ruled this to be a non-appearance.  Doc. #230-231.  These filings and a copy the Court's orders were emailed to Mr. Hunt in January of 2020 at his email address of jameshuntermay@gmail.com.  Doc. #233-234.

8.     Mr. Hunt then emailed a longer document to the Court, dated February 4, 2020 from his email address, jameshuntermay@gmail.com forwarded through Marten's counsel as before.  The Court rejected this document pursuant to Local Rule 83-2.5 "No letters to the judge".  Doc. #235.

9.     On April 14, 2020, Plaintiff requested the Clerk of this Court to enter default against James John Hunt (Doc. #242) and the Deputy Clerk placed the matter on calendar for July 17, 2020 at 9:30 AM in Department 8C (Doc#243).

10.    This was followed by the Plaintiff's Notice of Hearing on Default Judgment set for July 17, 2020 at 9:30AM (Doc. #244-1) which was again emailed to jameshuntermay@gmail.com as permitted (Doc. #244-2).

11.    The Court instructed Plaintiff to resubmit a renewed Motion for Default Judgment (MDJ) engaging with the *Eitel* factors (Doc. #249) and directed the Clerk to enter default against Defendant James Hunt (Doc. #260), but not a judgment, pending this new motion.

**PLAINTIFF'S RENEWED MOTION FOR DEFAULT JUDGMENT TO BE ENTERED AGAINST DEFENDANT JAMES JOHN HUNT**

12.     Mr. Hunt has failed to attempt to file any pleadings prior to the deadline for his last opportunity to do so, set August 24, 2020 (Doc. #258 p.1).

## II. <u>STATEMENT OF UNDERLYING FACTS</u>

13.     Terrence Wyles was hired as in-house counsel for the Aluminaid business, to help secure patents on a new type of burn bandages.  He was engaged by Carl Freer (FAC para. 20) who later worked with James John Hunt as two of the heads of corporate entities promoting and controlling the burn patents.

14.     During a Skype telephone call initiated by Wyles on or about March 1, 2013 during the time that he worked on Aluminaid business, Wyles blew the whistle on very serious financial malfeasance within the companies carried on by corporate officers who are listed as co-defendants in this lawsuit.  Thereafter, Hunt knew about the allegations that Mr. Wyles made regarding corporate malfeasance, for large amounts of money (FAC para. 27).

15.     Among other things, Wyles alleged that there were unexplained bank-wire transfers to Defendant James John Hunt in the amount of $108,100.00 (FAC para. 22).

16.     Wyles requested that Hunt investigate the malfeasance and take action, but Hunt apparently turned on Wyles in order to obfuscate the corporate malfeasance that Wyles had uncovered.  For example, Hunt promulgated an email April 1, 2013 to other corporate officers and employees claiming that Wyles had wrongly accused the Aluminaid business (FAC para. 28.e.).

17.     One email obtained from one of the cc: recipients shows an email from Hunt (james@aluminaid.com) to Allen Sussman (asussman@loeb.com) showing intention of getting rid of Terrence Wyles (Terry.Wyles@aluminaid.com) with the statement:  "Below you will see an email from Terry which I believe gives us cause for termination.  He has lost the support of the Board as he makes

**PLAINTIFF'S RENEWED MOTION FOR DEFAULT JUDGMENT TO BE ENTERED AGAINST DEFENDANT JAMES JOHN HUNT**

outrageous allegations against the company."  Below is a lengthy email from Mr. Wyles alluding to his concerns about financial improprieties and the breakdown of the corporate governance of Aluminaid.  **Ex 3**.

18.     Mr. Hunt was to later accuse Wyles of a whole range of misconduct (FAC para. 28.f.).  Mr. Hunt claimed in a letter of April 5, 2013 that Wyles had committed unspecified sexual harassment and other unspecified misconduct with other employees, misappropriation, and/or destruction of Aluminaid property, alleged breach of confidentiality of Defendants' information for personal advantage, various alleged material representations to Defendants, unauthorized practice of law in California, and various violations of Colorado Rules of Professional Conduct (FAC para. 73.e.).

19.     Mr. Hunt claimed that Wyles wrongfully caused himself to be listed in patent filings as an inventor (FAC para. 73.f.).  This is despite the fact that Wyles is an actual Co-Inventor of the inventions captured in the patent applications, in addition to being the in-house patent expert who was required to fill out the forms to the patent office (FAC para. 19-20), as there is a legal requirement to list all Co-Inventors in any patent application.

20.     Plaintiff alleged that Hunt, together with other defendants, "instituted a deliberate program to intimidate, harass, and defame Plaintiff" (FAC para. 28) and caused a summons and complaint to be issued against Plaintiff in Superior Court, State of California, County of Los Angeles (Case No. BC516417) and also filed a request for investigation with the Colorado Supreme Court to threaten Plaintiff's ability to earn a living as a licensed attorney (FAC para. 34).

21.     On July 26, 2013, Defendants named here, using as the plaintiff a corporate shell named "West Hills Research and Development, Inc." (which was renamed from the defunct Aluminaid, Inc.), filed a civil action against Terrence Wyles in Los Angeles Superior Court (Case No. BC516417), alleging various

**PLAINTIFF'S RENEWED MOTION FOR DEFAULT JUDGMENT TO BE ENTERED AGAINST DEFENDANT JAMES JOHN HUNT**

frauds and trade-secret misappropriation connected with the Aluminaid business (Doc. #104-2), and continued to prosecute that underlying action against Plaintiff until October 27, 2016, when the Defendants' civil action against Plaintiff was dismissed. (FAC para. 17, 34.)

22.    There is no material dispute that Mr. Hunt participated in the direction of the underlying litigation of the entity known as "West Hills" against Terrence M. Wyles. **Ex. 4**.

23.    Terrence M. Wyles suffered extreme emotional distress as a result of the litigation against him, including suicidal thoughts that have continued to haunt him.  **Ex. 5**.

## III.    <u>DEFAULT IS APPROPRIATE IN THIS SITUATION PURSUANT TO THE EITEL FACTORS</u>

Analyzing the *Eitel* factors, as instructed by the Court (Doc. #259) in *Eitel v. McCool*, 782 F.2d 1470, 1472 (9th Cir. 1986), Plaintiff can demonstrate with admissible evidence and the record before this Court, that the factors militate for a default judgment on the Malicious Prosecution claim as set forth in Plaintiff's First Amended Complaint.

### 1. <u>The Possibility of Prejudice to Plaintiff</u>

The first factor is "the possibility of prejudice to the plaintiff" *Eitel v. McCool* (9th Cir. 1986) 782 F.2d 1470, 1471.  "A plaintiff is prejudiced if the plaintiff would be 'without other recourse for recovery' because the defendant failed to appear or defend against the suit." *JL Audio*, *Inc*. *v*. *Kazi*, 2017 WL 4179875, at *3 (C.D. Cal. Sept. 18, 2017).  *Bd. of Trs. v. Delucchi Elec., Inc.* (N.D. Cal., June 1, 2020, No. 5:19-cv-06456-EJD) [pp. 3].

Here, the facts are undisputed that James Hunt has been aware of the

**PLAINTIFF'S RENEWED MOTION FOR DEFAULT JUDGMENT TO BE ENTERED AGAINST DEFENDANT JAMES JOHN HUNT**

litigation since at least October 23, 2019 when he joined his sworn statement in with a co-defendant's motion (Doc. #206), if not before, and that James Hunt has repeatedly declined to retain counsel or file his own proper pleadings in this Court, despite having numerous chances. (*See*, Doc. # 235, #244, #253, #255, #258.)

Plaintiff has no way of obtaining any remedy from Hunt without the participation of this party. Plaintiff cannot conduct any discovery against Hunt, or confront him in court, if he refuses to participate. Therefore, this *Eitel* factor weighs especially strongly in favor of a default judgment.

## 2. <u>Substantive Merits and Sufficiency of the Claims in Plaintiff's First Amended Complaint</u>

The next two factors are "(2) the merits of plaintiff's substantive claim," and "(3) the sufficiency of the complaint," which are here considered together. *Eitel v. McCool* (9th Cir. 1986) 782 F.2d 1470, 1471. This is appropriate, because, upon an entry of default by the Clerk, the factual allegations of the complaint with regards to liability are taken as true. See, *Derek Andrew, Inc. v. Poof Apparel Corp.*, 528 F.3d 696, 702 (9th Cir. 2008). Here the electronic docket shows that the Clerk entered a default August 3, 2020 on the First Amended Complaint (FAC). Doc. #260.

The first and only claim remaining in the First Amended Complaint is Malicious Prosecution (FAC para. 33-69). This is a diversity jurisdiction case, pursuant to 28 U.S.C. § 1332 following the substantive law of the State of California for Malicious Prosecution. The California Supreme Court has described the elements of that tort as follows.

> "To establish a cause of action for the malicious prosecution of a civil proceeding, a plaintiff must plead and prove that the prior action (1) was commenced by or at the direction of the defendant and was pursued to a legal termination in his, plaintiff's, favor [citations]; (2)

7

**PLAINTIFF'S RENEWED MOTION FOR DEFAULT JUDGMENT TO BE ENTERED AGAINST DEFENDANT JAMES JOHN HUNT**

was brought without probable cause [citations]; and (3) was initiated with malice [citations]. (*Bertero v. National General Corp.* (1974) 13 Cal.3d 43, 50." (*Crowley v. Katleman* (1994) 8 Cal.4th 666, 676 (*Crowley*). *Zamos v. Stroud* (2004) 32 Cal.4th 958, 965-66

Plaintiff can demonstrate that each of these elements is pleaded in his First Amended Complaint.  For discussion purposes these elements are divided into three parts below: (a) the procedural aspects of the underlying action; (b) the "probable cause" for Mr. Hunt to bring the underlying action; and (c) presence of "malice" or an improper purpose.

### a)  The Underlying Lawsuit was Commenced By or at the Direction of Hunt and Pursued to a Legal Termination in Wyles' Favor

On July 26, 2013, Defendants, using the fraudulent corporate entity shell "West Hills Research and Development, Inc." as the plaintiff, filed a civil action against Plaintiff Terrence Wyles in Los Angeles Superior Court (Case No. BC516417), alleging various frauds and trade-secret misappropriation connected with the Aluminaid business, and West Hills continued to prosecute that lawsuit against Plaintiff until October 27, 2016, when it was dismissed.  (The original complaint in the underlying action also listed "Aluminaid International, AG" as a plaintiff but a request to remove that plaintiff was granted by the California court.)

Plaintiff's First Amended Complaint ("FAC", Doc. #142) names James John Hunt as an officer and a director of the corporations that filed the underlying litigation of *West Hills v. Wyles*, that forms the basis of the Malicious Prosecution claim.  Defendant James John Hunt "is, or has been during the period of time complained about herein, an officer and a director of the Defendant Corporations." (FAC para. 5.)  The phrase "Defendant Corporations" in Plaintiff's FAC means "Aluminaid International, AG" (a Swiss corporation) and its wholly owned subsidiary "West Hills Research & Development, Inc.", formerly "Aluminaid,

**PLAINTIFF'S RENEWED MOTION FOR DEFAULT JUDGMENT TO BE ENTERED AGAINST DEFENDANT JAMES JOHN HUNT**

Inc.", and now known as "Advanced First Aid Research PTE Ltd." referred to as AFAR (FAC para. 1-3).  Mr. Hunt himself declared that he and co-defendant Carl Freer had the decision-making power to proceed with the litigation and that he went ahead with the litigation.  (**Ex. 4.**)

Regarding the prong of termination in favor of defendant in the underlying action – Mr. Wyles, the Plaintiff in the present case – that question has been somewhat fleshed out in previous filings in this litigation.  In short, the First Amended Complaint which shall be taken as true, alleges that the underlying lawsuit was dismissed October 27, 2016 when the corporate entities and officers, having gone through multiple legal counsel and having been granted multiple extensions of time to cure the defaulted corporate status of West Hills, made a conscious decision to not file the required tax returns and pay the outstanding taxes and fees due to the State of California.  (FAC para. 56.)  Wyles alleges that this failure to prosecute was due to the knowledge on the part of the corporate officers of the lack of merit of their claims asserted, and was a strategic choice, not a mere technicality or incident of excusable neglect.  (FAC para. 57, 67.)  As set out in greater detail in previous filings, West Hills never had its own assets, which are believed to have been transferred to, or controlled by, other corporate iterations of the Aluminaid entities and defendants named in this litigation, who were the real parties in interest behind the underlying action, and could have continued to prosecute Mr. Wyles, had they wanted to (Doc. #117, 10:13-11:10).

In summary, Defendant Hunt cannot show that either that the underlying litigation was not commenced and his discretion, nor can he show that the underlying lawsuit was not terminated in favor of Mr. Wyles.

**b) Hunt Brought the Underlying Action Without Probable Cause**

The California Supreme Court has explained Probable Cause as follows:

**PLAINTIFF'S RENEWED MOTION FOR DEFAULT JUDGMENT TO BE ENTERED AGAINST DEFENDANT JAMES JOHN HUNT**

Whereas the malice element is directly concerned with the *subjective* mental state of the defendant in instituting the prior action, the probable cause element calls on the trial court to make an objective determination of the "reasonableness" of the defendant's conduct, i.e., to determine whether, on the basis of the facts known to the defendant, the institution of the prior action was legally tenable. *Sheldon Appel Co. v. Albert Oliker* (1989) 47 Cal.3d 863, 878

The same court in 2004 found a continuing obligation, quoting the Restatement approvingly as follows:

Restatement Second of Torts (Restatement) stated that "one who continues a civil proceeding that has properly been begun or one who takes an active part in its continuation for an improper purpose after he has learned that there is no probable cause for the proceeding becomes liable as if he had then initiated the proceeding." (Rest., § 674, com. c, p. 453.)[1] *Zamos v. Stroud*, 32 Cal.4th 958, 966-67 (Cal. 2004)

Showing that Hunt prosecuted the underlying action without probable cause goes to the question of whether a reasonable person would have done so, knowing what he did about the situation that was going on in the Aluminaid business at that time.  Note that it will not save Hunt to argue that *some* of the causes of action could have been objectively reasonable – though Plaintiff emphatically asserts that none of the causes of action were objectively reasonable – since California courts have held that *all causes of action must be supported by probable cause*.

[I]t is not necessary that the whole proceeding be utterly groundless, for, if groundless charges are maliciously and without probable cause, coupled with others which are well founded, they are not on that account less injurious, and, therefore, constitute a valid cause of action.  [Citations.] *Crowley v. Katleman* (1994) 8 Cal.4th 666, 677-78.

---

[1] Section 674 of the Restatement provides:
"One who takes an active part in the initiation, *continuation* or procurement of civil proceedings against another is subject to liability to the other for wrongful civil proceedings if
"(a) he acts without probable cause, and primarily for a purpose other than that of securing the proper adjudication of the claim in which the proceedings are based, and
"(b) except when they are ex parte, the proceedings have terminated in favor of the person against whom they are brought." (Italics added in original footnoting.)

**PLAINTIFF'S RENEWED MOTION FOR DEFAULT JUDGMENT TO BE ENTERED AGAINST DEFENDANT JAMES JOHN HUNT**

In his FAC, Wyles alleges that Hunt fraudulently claimed that Wyles "wrongfully caused himself to be listed in patent filings as an inventor." (FAC para. 73.f.) The fact that Hunt made such an allegation is a particularly clumsy misrepresentation since Mr. Wyles is a Co-Inventor in the inventions at issue, and was legally required to list all Co-Inventors in the patent applications. Mr. Wyles was also the in-house patent attorney who was required to fill out the forms to the patent office, and the designated person to sign them. Hunt, in his position at Aluminaid, certainly knew what Wyles role and responsibility was regarding the patents, and therefore must have known that his attacks on Wyles were baseless. All these facts alleged by Wyles go to the lack of probable cause that Hunt had in making such absurd attacks on Wyles, immediately after Wyles attempted to blow the whistle on the corporate officers.

Most of the causes of action made by West Hills in the underlying action raise issues of breach of confidentiality, interference with economic advantage, trade secrets, or misuse of computers – essentially intellectual property matters. But none of these were raised by Hunt as the *cause* to terminate Wyles in his email of April 1, 2013. **Ex. 3**. Mr. Hunt's statement "Below you will see an email from Terry which I believe gives us cause for termination" ought to match up with at least some causes of action pleaded later by West Hills. But instead, the email thread preserved between Wyles and "David" (David Warnock), that Hunt seems to be referring to, raised entirely different concerns. Mr. Wyles voices concern as to whether Aluminaid's officers are raiding the company financially, whether Aluminaid will hold onto its patents, and comply with other regulations and legal requirements for the benefit of the corporation. In other words, the email reflects the whistle blower activities alleged in Wyles's FAC, not the trumped up causes of actions West Hills used to go after him in the underlying action. The fact that Mr. Hunt failed to mention intellectual property, trade secrets, economic advantage, or

**PLAINTIFF'S RENEWED MOTION FOR DEFAULT JUDGMENT TO BE ENTERED AGAINST DEFENDANT JAMES JOHN HUNT**

any of the other charges that West Hills used, tends to show that they were not the real cause for termination, thus they lacked Probable Cause as genuine claims.

### c) Hunt Brought the Underlying Action with Malice

The element "initiated with malice" [in contrast with Probably Cause] is concerned with the "subjective intent or purpose with which the defendant acted in initiating the prior action." *Sheldon Appel Co. v. Albert Oliker* (1989) 47 Cal.3d 863, 874.

> The malice element is based on the subjective intent with which the defendant acted in initiating the prior action. (*Sheldon Appel Co.* v. *Albert Oliker, supra,* 47 Cal.3d at p. 874.) … "The malice required in an action for malicious prosecution is not limited to actual hostility or ill will toward plaintiff but exists when the proceedings are instituted primarily for an improper purpose. [Citations.]" (*Albertson* v. *Raboff* (1956) 46 Cal.2d 375, 383, superseded on other grounds by Civ. Code, § 47, subd. (b).) "It has been pointed out that the `principal situations in which the civil proceedings are initiated for an improper purpose are those in which (1) the person initiating them does not believe that his claim may be held valid; (2) the proceedings are begun primarily because of hostility or ill will; (3) the proceedings are initiated solely for the purpose of depriving the person against whom they are initiated of a beneficial use of his property; (4) the proceedings are initiated for the purpose of forcing a settlement which has no relation to the merits of the claim.'" (46 Cal.2d at p. 383, quoting Rest., Torts, § 676, com. b.) *Axline v. Saint John's Hospital Health Center* (1998) 63 Cal.App.4th 907, 917-18.

Showing that Hunt initiated the underlying action with malice requires that Hunt knew that he did not have good cause to sue Wyles, and did it anyway, or did it with improper motive, or continued with the prosecution after he knew that at least some of the allegations were without merit.

Wyles alleges that there were unexplained bank-wire transfers to Defendant James John Hunt in the amount of $108,100.00 (FAC para. 22), among other

**PLAINTIFF'S RENEWED MOTION FOR DEFAULT JUDGMENT TO BE ENTERED AGAINST DEFENDANT JAMES JOHN HUNT**

apparent major financial improprieties discovered by Wyles, which is one material reason Hunt had a purpose in attacking Wyles.

The FAC describes various corporate malfeasance that Hunt knew about, from at least a Skype telephone call on or about March 1, 2013 (FAC para. 27) but Hunt chose to cover up the malfeasance, rather than investigate it, as Wyles had requested. Wyles alleged that Hunt turned on him aggressively soon after he was put on notice of the malfeasance, for example, promulgating an email April 1, 2013 to other corporate officers and employees falsely claiming that Wyles had wrongly accused the Aluminaid business (FAC para. 28.e.; see also Ex. 3). Hunt fraudulently claimed Wyles had committed other unspecified misconduct (FAC para. 28.f.; 73.e.) that greatly damages Wyles.

These allegations as set forth in the FAC indicates that Hunt was personally invested in damaging Wyles's reputation in a wide variety of attacks, of which the underlying lawsuit by West Hills was simply one tool of retaliation.

Plaintiff alleges that Hunt, together with other defendants, "instituted a deliberate program to intimidate, harass, and defame Plaintiff" (FAC para. 28) and "caused a summons and complaint to be issued against Plaintiff in Superior Court, State of California, County of Los Angeles (Case No. BC516417)" (FAC para. 34). Mr. Hunt admitted in his deposition that he had the "decision-making power at that time that the lawsuit was filed to proceed with the litigation" along with Carl Freer, a co-defendant, and that at his direction they "went ahead with litigation against Mr. Wyles." **Ex. 4**.

Moreover, because Wyles was a shareholder (1%) in the defendant corporations, Hunt was motivated to try and divest Wyles' shares so that Wyles could not bring any derivative actions against the defendants. FAC para. 25-26, 71. This deprived Wyles of a beneficial use of his property.

Mr. Hunt knew well that Wyles was a Co-Inventor on the patents so the

**PLAINTIFF'S RENEWED MOTION FOR DEFAULT JUDGMENT TO BE ENTERED AGAINST DEFENDANT JAMES JOHN HUNT**

baseless accusations that Wyles was doing something improper are strong evidence of Hunt's malicious motives in promulgating such falsehoods.

In summary, Plaintiff's First Amended Complaint which must be taken as factually true, sufficiently pleads facts that establish each of the elements of the claim of Malicious Prosecution.  The underlying action by West Hills against Terrence Wyles was commenced and continued by Mr. Hunt and at his direction, but was terminated in Wyles' favor in 2016 based on a strategic decision on the part of the corporate officers that was based on the lack of merit of their claims.  Mr. Hunt had reason to know that Wyles accused him personally of corporate malfeasance in the amount of at least $108,100.00 and generally of covering up or supporting the financial malfeasance of other corporate officers, totaling multiple millions of dollars – giving Hunt simultaneously the knowledge that Wyles was a whistleblower and the incentive to silence him.  The attacks that Hunt made on Wyles, both in the underlying California Superior Court action and otherwise were known to be without probable cause, and instituted for an improper purpose.

### 3. <u>Sum of Money in Dispute</u>

The Court is next to evaluate "the sum of money at stake in the action". *Eitel v. McCool* (9th Cir. 1986) 782 F.2d 1470, 1471.  In that case the amount demanded on default was $2.9 million dollars.  Several other opinions have cited that an amount in the three-million dollars range seems to be excessive.  See, *Solis v. Cardiografix, Inc.* (N.D. Cal., Aug. 22, 2012, No. 5:12-cv-01485 EJD) (actual losses of $120,795.01 granted, not $2,900,000.00); *Valvanis v. Milgroom* (D. Haw., June 1, 2009, CIVIL No. 06-00144 JMS-KSC) (punitive damages in the amount of $250,000 but not the multi-million in damages sought).

Here (as discussed more completely in the last section) the special damages demanded by this motion is not excessive, and can be supported by documentation.

**PLAINTIFF'S RENEWED MOTION FOR DEFAULT JUDGMENT TO BE ENTERED AGAINST DEFENDANT JAMES JOHN HUNT**

The special damages are actual fees and costs spent defending the malicious prosecution action in California which added up to $180,060.86 paid to Mr. Wohl plus at least $12,000 in expenses; and the business loss caused by the retaliatory firing and resultant drop in earning ability, calculated at $83,882.05 per year based on comparing the earnings before and after that event.  Plaintiff is entitled to request General Damages, which for him is emotional distress damages, but he does not request more than the Special Damages.  Plaintiff is entitled to request Punitive Damages, but again does not demand more than the combined damages.

Taking all the damages into consideration, the total sum of money in dispute does not weigh against an award of a default judgment.

### 4.  <u>Possibility of Dispute Concerning Material Facts</u>

The next factor of "the possibility of a dispute concerning material facts" is particularly relevant here.  See, *Eitel v. McCool* (9th Cir. 1986) 782 F.2d 1470, 1471-72.  In the *Eitel* case, the parties disputed material facts in the pleadings, unlike here, where defendant James Hunt has not filed any pleadings whatsoever.

Defendant's improper and informal self-serving letters have been deemed to be non-answers and therefore should be viewed as a nullity by this Court.

Even if we view those letters as some hint of the viewpoint of James Hunt, if he were to appear, his comments do not sufficiently raise an issue of a disputed fact as required by California law.  Mr. Hunt has confirmed some of Wyles' allegations, rather than dispute them.  For example, Hunt testified in his declaration and in his deposition that he was one of the decision-makers for the underlying lawsuit against Wyles, and he admits that he advocated for a complaint with the Colorado State Bar Association that also damaged Wyles professionally.

Unless and until there *is* a good faith dispute concerning material facts, this factor does not weigh against a default judgment.

**PLAINTIFF'S RENEWED MOTION FOR DEFAULT JUDGMENT TO BE ENTERED AGAINST DEFENDANT JAMES JOHN HUNT**

### 5. <u>Excusable Neglect of the Party Against Whom Default is Entered</u>

The next *Eitel* factor is "whether the default was due to excusable neglect". *Eitel v. McCool* (9th Cir. 1986) 782 F.2d 1470, 1472. In the *Eitel* case, the failure to answer appears to have been excusable neglect because they engaged in earnest settlement negotiation whereby McCool did not answer, at least not until some days after the deadline, thinking that a settlement was imminent, but McCool answered very soon after the anticipated settlement agreement dissolved.

The focus is on the party against whom default is entered, namely James John Hunt. Here, the party did not delay answering for merely a few days in expectation of a settlement, as in *Eitel*, but for the better part of a year, during which time Hunt was sent several reminders, and had ample opportunity to consult the record and local counsel. Mr. Hunt styles himself as a sophisticated international businessman, yet he has not bothered to retain local counsel to represent his position properly – a failure that cannot be an oversight, but can only be seen as a strategic decision on his part. The fact that Hunt purportedly made an attempt to engage the Court through informal letters shows rather that his neglect was *not* "excusable," because the Court explicitly informed him that his letters were not acceptable, and instructed him to follow the rules of civil procedure.

Finally, no one, least of all Hunt, has come forward to argue that there exists some excusable neglect. Since there is no excusable neglect suggested, this factor does not weigh against a default judgment.

### 6. <u>Strong Policy Favoring Decisions on the Merits</u>

Finally the court may consider "the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits." *Eitel v. McCool* (9th Cir. 1986) 782 F.2d 1470, 1472. When a failure to appear has made a decision on

**PLAINTIFF'S RENEWED MOTION FOR DEFAULT JUDGMENT TO BE ENTERED AGAINST DEFENDANT JAMES JOHN HUNT**

the merits impossible, the factor weighs in favor of default judgment. *See*, *Heifetz v. Breed Props.* (N.D. Cal., Feb. 23, 2017, No. C 16-1490 CRB) [pp. 7]. This formulation depends on the factual situation of whether a decision on the merits might be *possible* at all.

Here, Hunt has failed to retain local counsel or do the necessary legwork to represent himself. This means that in practical terms, a decision on the merits is impossible. A fair analysis of this last factor essentially dovetails with factor 1 – the prejudice to the Plaintiff – because without a *bona fide* appearance of some kind from the opposing party, Plaintiff may not proceed to a decision on the merits. Therefore, this *Eitel* factor weighs strongly in favor of a default judgment.

### IV.   <u>Plaintiff Suffered Damages as Set Forth in his Affidavit</u>

The California Supreme Court describes the measure of damages for Malicious Prosecution, the substantive law under which the First Amended Complaint is pleaded, in this way.

> In recognition of the wrong done the victim of such a tort, settled law permits him to recover the cost of defending the prior action including reasonable attorney's fees (*Stevens* v. *Chisholm* (1919) 179 Cal. 557, 564 [178 P. 128]; *Eastin* v. *Bank of Stockton* (1884) 66 Cal. 123, 125-126 [4 P. 1106]), compensation for injury to his reputation or impairment of his social and business standing in the community (*Ray Wong* v. *Earle C. Anthony, Inc.* (1926) 199 Cal. 15, 18 [247 P. 894]; *Lerner* v. *Glickfeld* (1960) 187 Cal. App. 2d 514, 526 [9 Cal. Rptr. 686]), and for mental or emotional distress (*Singleton* v. *Perry* (1955) 45 Cal.2d 489, 495 [289 P.2d 794]). *Bertero v. National General Corp.* (1974) 13 Cal.3d 43, 51.

In addition, a claim for punitive damages is recognized by the Supreme Court of California:

> When the defendant is found to be guilty of express or implied malice, the jury may award damages against a defendant "for the sake of example and by way of punishing" him. (Civ. Code, § 3294) It follows that the wealthier the wrongdoing defendant, the larger the award of exemplary damages

17

1   need be in order to accomplish the statutory objective.  *Bertero v. National*
2   *General Corp.* (1974) 13 Cal.3d 43, 65

3       Plaintiff has submitted an affidavit pursuant to the FRCP Rule 55 part (b)(2)
4   and Local Rule 55-2 which provides in part:  "If the amount claimed in a judgment
5   by default is unliquidated, the applicant may submit evidence of the amount of
6   damages by declarations."  In addition, Plaintiff's attorney submits exhibits to
7   support the damages claimed.

8
9   **1.  Plaintiff Has Provided Evidence of Special Damages**

10      Plaintiff suffered substantial special financial damages as a direct result of
11  the Malicious Prosecution against him, including attorney fees actually paid to
12  defend himself and his own travel expenses going to Los Angeles.  Terrence Wyles
13  sets these amounts in his affidavit as $180,048.86 in attorney's fees and costs
14  actually paid defending the California action, and $12,000 in travel costs for seven
15  trips to Los Angeles, which is not his residence, relating to defending the
16  California lawsuit.  Declaration of Terrence M. Wyles, para. 2.

17      In addition, Terrence Wyles, who makes his living then, as now, as a patent
18  attorney in Colorado, relies on his reputation for clients and jobs, which reputation
19  was severely tarnished by the lawsuit which was of public record, along with
20  related derogatory communications that Hunt caused to be published.  As a result,
21  Wyles calculates that he lost $414,410.25 in income which was "the difference
22  between what I was making before the false statements made in the California
23  action against me were published, $188,677.71 per year, and my average annual
24  earnings over the next five years since the California action (2015 – 2019), of
25  $105,795.66, or an average (decreased) difference of $82,882.05 per year..."
26  Wyles Declaration, *Id*.  In other words, Plaintiff was making an average of
27  $188,677.71 per year before the Malicious Prosecution, and then suffered a drop to
28  an average of $105.795.66 per year afterwards.  See, **Ex. 2**; Wyles Decl.

**PLAINTIFF'S RENEWED MOTION FOR DEFAULT JUDGMENT TO BE ENTERED
AGAINST DEFENDANT JAMES JOHN HUNT**

### **2.  Plaintiff Has Testified to His General Damages from Extreme Emotional Distress**

A recent California opinion found that emotional distress damages were applicable to malicious prosecution and they need not be established by expert medical testimony, but simply "shown through the plaintiff's testimony." *Garcia v. S & J Farms, LLC* (June 19, 2018, F072818) ___ Cal.App.5th ___ [pp. 18).

In responding to a line of questioning in the deposition that Mr. Marten's attorney took of Mr. Wyles, he testified that he had suffered severe emotional distress as a result of the litigation.  Plaintiff had thoughts of suicide that haunted him to that day.  Mr. Hunt himself seems to be aware of the emotional distress that his underlying action have caused Plaintiff, because he mentions it in his self-styled "Answer" un-signed and un-dated, that was not accepted by this Court.

Finding a measure of emotional distress damages is notoriously subjective, but $100 per day while thinking of suicide once per day would not be unreasonable.  It has been approximately 7 years since the underlying action commenced up to the present, and multiplying those approximately 2,555 days by $100 yields an emotional distress award of $255,500 which provides for General Damages which are less than half of the claimed Special Damages.

### **3.  Plaintiff Requests Punitive Damages from James John Hunt**

"Damages recoverable in a malicious prosecution include… requesting punitive damages."  *Mirabel v. Bailey* (May 26, 2015, G049766) ___ Cal.App.4th ___ [pp. 12] (collecting cases).  Mindful of the U.S. Supreme Court's limits on excessive punitive damages, a recent California case found that "a five-to-one ratio is within constitutional limits" *Kell v. Autozone, Inc.* (Feb. 24, 2014, C064839) ___ Cal.App.3d ___ [pp. 64].  In the AutoZone case, the court had upheld $36,827 for economic damages and $100,000 for mental suffering.

**PLAINTIFF'S RENEWED MOTION FOR DEFAULT JUDGMENT TO BE ENTERED AGAINST DEFENDANT JAMES JOHN HUNT**

The California Supreme Court requires some "evidence of the defendant's financial condition" *Adams v. Murakami* (1991) 54 Cal.3d 105, 115.  But here, the defendant avoided any Discovery, including any measure of his net wealth.  What the Court does know is that Mr. Hunt claimed in his last declaration filed in this court, that he had the positions of Chairman of Aluminaid PTE, Ltd., Co-Chairman of the West Hills, and Chief Information Officer of Aluminaid International AG. (Doc. #206 Hunt Decl. para. 2-4.)  It may be surmised that he is a businessman who only accepts the highest positions in companies, and that he has the resources to speculate in new products or unproven markets, as he did in this very instance.  Mr. Hunt states on his business website of Huntermay.net that he has offices in San Francisco, New York City, and within the UK[2], and his website advertises that he can provide high level service to corporations that face a threat or risk.[3]

Plaintiff proposes that the amount of one million ($1,000,000) would punish Mr. Hunt but not drive him to bankruptcy, and not overstep Constitutional limits.

## V. CONCLUSION AND PRAYER

Pursuant to an analysis of the *Eitel* factors, Plaintiff moves the Court enter a default judgment as to defendant James John Hunt in the amount of $606,459.11 for Special Damages, $255,500 in General Damages caused by Emotional Distress, and one million ($1,000,000) in Punitive Damages.

DATED:   August 28, 2020

Respectfully submitted,
**Law Offices of Thomas Scully**

*Thomas Scully, Esq., Attorney for Wyles*

---

[2] https://www.huntermay.net/contact-huntermay.php
[3] https://www.huntermay.net/about.php  "HunterMay discreetly specialize in the effective discovery, isolation and resolving of corporate risk, litigation mitigation, due diligence, crisis management and asset recovery so that within the corporate environment confidence is maintained."

20

**PLAINTIFF'S RENEWED MOTION FOR DEFAULT JUDGMENT TO BE ENTERED AGAINST DEFENDANT JAMES JOHN HUNT**

<u>CERTIFICATE OF SERVICE</u>

I am over the age of 18 and not a party to this action.  I hereby certify that all counsel of record, and Thomas D. Brady, *pro se*, have consented to electronic service and are being served with a copy of this document

**PLAINTIFF'S RENEWED MOTION FOR DEFAULT JUDGMENT TO BE ENTERED AGAINST DEFENDANT JAMES JOHN HUNT; DECLARATIONS AND EXHIBITS 1-5**

via the Court's CM/ECF system per Local Rule 5-3.2.1 on <u>August 21, 2020</u> and that pursuant to F.R.Civ.P. 55(b)(2) this same document is being emailed to [jameshuntermay@gmail.com](mailto:jameshuntermay@gmail.com) on <u>August 29, 2020</u>.

Mandatory Chambers Copies will not be provided, pursuant to the COVID-19 Notice effective March 23, 2020.

<u>/s/ Thomas Scully</u>
Thomas Scully

**DECLARATION**