1  Thomas H. Scully (Cal. SBN: 305790)
2  Thomas@ThomasScullyLaw.com
3  Attorney for Plaintiff:
4  Terrence M. Wyles
5  Business Address:
6  10736 Jefferson Blvd., #117
7  Culver City, CA  90230
8  Telephone: (310) 439-1140
9  Facsimile: (509) 756-6952
10

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TERRENCE M. WYLES,<br>Plaintiff<br><br>v.<br><br>ALLEN ZACHARY SUSSMAN;<br>LOEB & LOEB L.L.P;<br>ALUMINAID INTERNATIONAL, A.G.;<br>WEST HILLS RESEARCH &<br>DEVELOPMENT, INC. (f/k/a Aluminaid,<br>Inc.); ALUMINAID PTE LTD., aka<br>ADVANCED FIRST AID RESEARCH<br>PTE LTD.; CARL JOHAN FREER;<br>JAMES JOHN HUNT, aka JAMES HUNT;<br>ADAM FREER, aka ADAM AGERSTAM,<br>aka ADAM<br>CARL-JOHAN AGERSTAM; JULIA<br>FREER-AGERSTAM, aka JULIA FREER,<br>aka JULIA AGERSTAM; DAVID<br>ANDREW WARNOCK, aka DAVID<br>WARNOCK; ALEX ARENDT; JOSEPH<br>MATHEW MARTEN, aka JOE MARTEN;<br>and THOMAS D. BRADY, aka TOM<br>BRADY.<br><br>Defendants. | CASE NUMBER:<br><br>2:17-cv-07722-DMG-SK<br><br><br>**DECLARATION OF THOMAS SCULLY IN SUPPORT OF PLAINTIFF'S RENEWED MOTION FOR DEFAULT JUDGMENT AGAINST DEFENDANT JAMES JOHN HUNT WITH EXHIBITS**<br><br>Date:  **September 25, 2020**<br><br>Time:  **9:30 AM**<br><br>Courtroom: **8C** |

*//*

---

**DECLARATION**

**<u>Declaration of Thomas Scully</u>**

**<u>In Support of Plaintiff's Renewed Motion for Default Judgment</u>**

I, <u>Thomas Scully</u>, do hereby declare and state:

1.    I have personal knowledge of the matters stated in this Declaration and if called as a witness could and would competently testify to the following.

2.    I am an attorney licensed in the State of California (State Bar Number 305790) and the Central District Court of California, and maintain a law practice with the business address of 10736 Jefferson Blvd., #117, Culver City, CA  90230.

3.    I am the California counsel representing Plaintiff Terrence Wyles in his civil claims in this case, number 2:17-cv-07722-DMG styled *Wyles v. Sussman*.

4.    A true and correct copy of the invoices generated by James P. Wohl, Attorney at Law for Terrence Wyles in the underlying action, showing the amounts paid by Plaintiff for attorney fees, are attached as **Exhibit 1**.

5.    A true and correct copy of the report generated by harperHofer & Associates, LLC for the purpose of providing a measure of Plaintiff's damages to his professional income is attached as **Exhibit 2**.  It applies to the time period analyzed up to May 7, 2018 and does not count losses during the two years since.

6.    A true and correct copy of an email thread involving Hunt and Wyles, as forwarded to Plaintiff by one of its cc: recipients, is attached as **Exhibit 3**.

7.    A true and correct copy of selected pages from the deposition of Mr. Hunt December 4, 2019 is attached as **Exhibit 4**.  During that deposition, I witnessed Hunt express freely his enmity for Wyles and admit that he pressed for the Colorado State Bar to investigate him, in addition to the West Hills litigation.

8.    A true and correct copy of selected pages from the deposition of Mr. Wyles December 9, 2019 is attached as **Exhibit 5**.  What does not come across in print is that Mr. Wyles was overcome by emotion when describing how distressing it was to be attacked by Defendants, which necessitated that we take a break.

9. I personally researched all of the defendants, including Mr. Hunt, using publicly available sources. I searched for, and explored, several of his website pages, including the ones for his consulting company, which I last accessed 08/28/2020 and quoted accurately therefrom in the moving papers.

10. Except for a purported response by Hunt that was mailed through Marten's counsel of Haight, Brown and Bonesteel, and the letter Hunt addressed to the Court, I have not received any other form of communication from him.

11. On information and belief, the Defendant is not an infant, minor or incompetent person, and the Servicemembers Civil Relief Act (50 U.S.C. App. § 521) does not apply.

I declare under penalty of perjury that the foregoing is true and correct. Executed <u>August 28, 2020</u> in Culver City, California.

*Thomas Scully, Esq.*

---

**DECLARATION**

# EXHIBIT 1

Invoices from James P. Wohl, Attorney at Law for Terrence Wyles

# EXHIBIT 1

JAMES P. WOHL, ATTORNEY AT LAW
1925 Century Park East
Suite 2140
Los Angeles, CA  90067

Invoice submitted to:
Terrence Wyles

August 30, 2013

Invoice #11025

Professional Services

| | | Hrs/Rate | Amount |
|---|---|---|---|
| 8/7/2013 JPW | Review complaint; research venue/jurisdiction/removal; review Wyles accounting of money taken | 2.10 475.00/hr | 997.50 |
| 8/14/2013 JPW | Review email; review file; conference with client; review complaint | 3.60 475.00/hr | 1,710.00 |
| 8/15/2013 JPW | Draft anti-SLAPP motion | 3.90 475.00/hr | 1,852.50 |
| 8/16/2013 JPW | Research; draft anti-SLAPP motion | 5.70 475.00/hr | 2,707.50 |
| 8/18/2013 JPW | Research; draft anti-SLAPP motion | 4.60 475.00/hr | 2,185.00 |
| 8/21/2013 JPW | Research; draft anti SLAPP; conference with client; review evidence | 7.30 475.00/hr | 3,467.50 |
| 8/22/2013 JPW | Preparation and research of bond motion | 1.80 475.00/hr | 855.00 |
| JPW | Preparation and research re anti-SLAPP; review Joseph declaration | 4.30 475.00/hr | 2,042.50 |
| 8/23/2013 JPW | Research; review evidence | 2.70 475.00/hr | 1,282.50 |
| 8/27/2013 JPW | Continue development of anti-SLAPP motion | 6.10 475.00/hr | 2,897.50 |

Terrence Wyles                                                                          Page      2

|  |  |  | Hrs/Rate | Amount |
|---|---|---|---|---|
| 8/27/2013 | JPW | Preparation of motion for out of state bond | 3.20 475.00/hr | 1,520.00 |
| 8/29/2013 | JPW | Preparation of anti-SLAPP; continue research | 3.30 475.00/hr | 1,567.50 |
|  |  | For professional services rendered | 48.60 | $23,085.00 |
| 8/30/2013 |  | Payment from account |  | ($10,000.00) |
|  |  | Total payments and adjustments |  | ($10,000.00) |
|  |  | Please replenish Client funds with |  | $10,000.00 |
|  |  | Balance due |  | $23,085.00 |
|  |  | Discount if paid by 9/29/2013 |  | ($4,617.00) |
|  |  | Amount due if paid by 9/29/2013 |  | $18,468.00 |
|  |  | Amount due if paid after 9/29/2013 |  | $23,085.00 |
|  |  | Previous balance of Retainer |  | $10,000.00 |
| 8/30/2013 |  | Payment from account |  | ($10,000.00) |
|  |  | New balance of Retainer |  | $0.00 |

JAMES P. WOHL, ATTORNEY AT LAW
1925 Century Park East
Suite 2140
Los Angeles, CA  90067


Invoice submitted to:
Terrence Wyles




October 14, 2013


Invoice #11037


Professional Services

| | | | Hrs/Rate | Amount |
|---|---|---|---|---|
| 8/7/2013 JPW | Review complaint; research venue/jurisication/remova; review Wyles accounting of money taken | | 2.10 380.00/hr | 798.00 |
| 8/14/2013 JPW | Review email; review file; conference with client; review complaint | | 3.60 380.00/hr | 1,368.00 |
| 8/15/2013 JPW | Draft anti-SLAPP motion | | 3.90 380.00/hr | 1,482.00 |
| 8/16/2013 JPW | Research; draft anti-SLAPP motion | | 5.70 380.00/hr | 2,166.00 |
| 8/18/2013 JPW | Research; draft anti-SLAPP motion | | 4.60 380.00/hr | 1,748.00 |
| 8/21/2013 JPW | Research; draft anti SLAPP; conference with client; review evidence | | 7.30 380.00/hr | 2,774.00 |
| 8/22/2013 JPW | Preparation and research re anti-SLAPP; review Joseph declaration | | 4.30 380.00/hr | 1,634.00 |
| JPW | Preparation and research of bond motion | | 1.80 380.00/hr | 684.00 |
| 8/23/2013 JPW | Research; review evidence | | 2.70 380.00/hr | 1,026.00 |
| 8/27/2013 JPW | Continue development of anti-SLAPP motion | | 6.10 380.00/hr | 2,318.00 |

Terrence Wyles                                                                          Page     2

|  |  | | Hrs/Rate | Amount |
|---|---|---|---|---|
| 8/27/2013 | JPW | Preparation of motion for out of state bond | 3.20<br>380.00/hr | 1,216.00 |
| 8/29/2013 | JPW | Preparation of anti-SLAPP; continue research | 3.30<br>380.00/hr | 1,254.00 |
| 9/4/2013 | JPW | Review file; reivew notice re: documents | 0.60<br>380.00/hr | 228.00 |
| 9/5/2013 | JPW | Continue research; draft anti-SLAPP motion | 3.70<br>380.00/hr | 1,406.00 |
| 9/9/2013 | JPW | Meeting with client | 2.50<br>380.00/hr | 950.00 |
| 9/11/2013 | JPW | Preparation of motion; research | 3.70<br>380.00/hr | 1,406.00 |
| 9/14/2013 | JPW | Preparation of anti-SLAPP | 5.50<br>380.00/hr | 2,090.00 |
| 9/15/2013 | JPW | Preparation of anti-SLAPP | 11.00<br>380.00/hr | 4,180.00 |
|  | JPW | Emails re: State Bar | 1.70<br>380.00/hr | 646.00 |
| 9/16/2013 | JPW | Finalize Preparation of anti-SLAPP and prepare declarations | 6.50<br>380.00/hr | 2,470.00 |
| 9/17/2013 | JPW | Draft response to STate Bar; review complaint | 2.20<br>380.00/hr | 836.00 |
| 9/26/2013 | JPW | Research re: ex parte for discovery; conference; letter to Verizon | 2.30<br>380.00/hr | 874.00 |
| 9/27/2013 | JPW | Court Preparation and Appearance; phone call with Silvesky | 3.70<br>380.00/hr | 1,406.00 |
|  |  | For professional services rendered | 92.00 | $34,960.00 |
|  |  | Additional Charges : | | |
| 9/1/2013-<br>9/30/2013 | JPW | Westlaw | | 299.24 |
| 9/15/2013 | JPW | After hours A/C charge | | 570.17 |
| 9/17/2013 | JPW | Filing Fee for anti-SLAPP and first appearance fee | | 495.00 |
| 9/19/2013 | JPW | Filing Fees | | 11.25 |

Terrence Wyles                                                                     Page      3

                                                                                  Amount

10/4/2013  JPW    Filing re: Opposition to Motion for Relief from Discovery Stay            24.00

           Total costs                                                              $1,399.66

           Total amount of this bill                                               $36,359.66


10/14/2013  Payment from account                                                 ($10,000.00)


           Please replenish Client funds with                                     $10,000.00

           Balance due                                                            $26,359.66


           Payment to account                                                     $10,000.00
           Payment from account                                                 ($10,000.00)

           New balance of Retainer                                                     $0.00

JAMES P. WOHL, ATTORNEY AT LAW
1925 Century Park East
Suite 2140
Los Angeles, CA  90067

Invoice submitted to:
Terrence Wyles

January 07, 2014

Invoice #11052

Professional Services

| | | | Hrs/Rate | Amount |
|---|---|---|---|---|
| 10/2/2013 | JPW | Draft opposition to motion for relief from limited discovery stay | 2.00 380.00/hr | 760.00 |
| 10/3/2013 | JPW | Finalize opposition to motion for limited relief from discovery stay | 0.75 380.00/hr | 285.00 |
| 10/16/2013 | JPW | Preparation of discovery; review FAC and research | 1.30 380.00/hr | 494.00 |
| 10/17/2013 | JPW | Court Preparation and Appearance | 2.33 380.00/hr | 885.40 |
| 10/18/2013 | JPW | Preparation for response to ex parte and Plaintiff's ex parte for Wyles ex parte for Bond | 2.30 380.00/hr | 874.00 |
| 10/21/2013 | JPW | Preparation of ex parte applciation for an order shortening time to hear motion for bond | 1.50 380.00/hr | 570.00 |
| 10/22/2013 | JPW | Court Preparation and Appearance at ex parte to shorten time  for hearing motion to enforce bond | 2.15 380.00/hr | 817.00 |
| 10/30/2013 | JPW | Conference with Sam Ventola | 0.20 380.00/hr | 76.00 |
| 11/4/2013 | JPW | Draft motion to enforce bond | 2.00 380.00/hr | 760.00 |
| | JPW | Draft counter notice of ruling | 0.50 380.00/hr | NO CHARGE |

Terrence Wyles                                                                      Page     2

|  |  | Hrs/Rate | Amount |
|---|---|---|---|
| 11/6/2013-JPW 11/7/2013 | Revise motion to enforce bond | 2.25 380.00/hr | 855.00 |
| 11/8/2013 JPW | Finalize Motion to Enforce Bond | 0.75 380.00/hr | 285.00 |
| 11/15/2013 JPW | Draft Motion to Strike First Amended Complaint | 1.75 380.00/hr | 665.00 |
| 11/18/2013 JPW | Revise motion to strike First Amended Complaint; draft demurrer to First Amended Complaint | 1.75 380.00/hr | 665.00 |
| 11/19/2013 JPW | Revise and finalize motion to strike and demurrer to First Amended Complaint | 1.25 380.00/hr | 475.00 |
| JPW | Review and prepare emails | 0.40 380.00/hr | 152.00 |
| 11/26/2013 JPW | Review opposition; draft reply | 0.75 380.00/hr | 285.00 |
| 12/9/2013 JPW | Preparation for hearing | 1.20 380.00/hr | 456.00 |
| 12/10/2013 JPW | Court Preparation and Appearance | 2.30 380.00/hr | 874.00 |
| 12/13/2013 JPW | Draft letter | 0.70 380.00/hr | 266.00 |
| | For professional services rendered | 28.13 | $10,499.40 |
| | Additional Charges : | | |
| 9/17/2013 JPW | Messenger to file documents | | 74.75 |
| 10/3/2013 JPW | FedEx to Loeb & Loeb | | 17.34 |
| 10/17/2013 JPW | Parking | | 7.00 |
| JPW | Travel Exp | | 37.50 |
| 10/22/2013 JPW | Filing Fee | | 60.00 |
| 11/8/2013 JPW | Filing Fee for Bond Motion | | 60.00 |
| 11/19/2013 JPW | Filing Fee for Demurrer and Motion to Strike First Amended Complaint | | 120.00 |
| 12/3/2013 JPW | Filing Reply to Opposition to Motion for Bond | | 14.25 |
| 12/10/2013 JPW | Travel Exp | | 30.00 |

Terrence Wyles                                                                    Page     3

|  | Amount |
|---|---|
| 12/10/2013 JPW   Parking | 18.00 |
| Total costs | $438.84 |
| Total amount of this bill | $10,938.24 |
| Previous balance | $16,359.66 |
| 11/1/2013 Payment - thank you | ($16,359.66) |
| Please replenish Client funds with | $10,000.00 |
| Balance due | $10,938.24 |

JAMES P. WOHL, ATTORNEY AT LAW
1925 Century Park East
Suite 2140
Los Angeles, CA  90067


Invoice submitted to:
Terrence Wyles




January 03, 2014


Invoice #11051


Professional Services

| | | | Hrs/Rate | Amount |
|---|---|---|---|---|
| 10/2/2013 | JPW | Draft opposition to motion for relief from limited discovery stay | 2.00 380.00/hr | 760.00 |
| 10/3/2013 | JPW | Finalize opposition to motion for limited relief from discovery stay | 0.75 380.00/hr | 285.00 |
| 10/16/2013 | JPW | Preparation of discovery; review FAC and research | 1.30 380.00/hr | 494.00 |
| 10/17/2013 | JPW | Court Preparation and Appearance | 2.33 380.00/hr | 885.40 |
| 10/18/2013 | JPW | Preparation for response to ex parte and Plaintiff's ex parte for Wyles ex parte for Bond | 2.30 380.00/hr | 874.00 |
| 10/21/2013 | JPW | Preparation of ex parte applciation for an order shortening time to hear motion for bond | 1.50 380.00/hr | 570.00 |
| 10/22/2013 | JPW | Court Preparation and Appearance at ex parte to shorten time  for hearing motion to enforce bond | 2.15 380.00/hr | 817.00 |
| 10/30/2013 | JPW | Conference with Sam Ventola | 0.20 380.00/hr | 76.00 |
| 11/4/2013 | JPW | Draft motion to enforce bond | 2.00 380.00/hr | 760.00 |
| | JPW | Draft counter notice of ruling | 0.50 380.00/hr | NO CHARGE |

Terrence Wyles                                                                                    Page    2

|  |  | Hrs/Rate | Amount |
|---|---|---|---|
| 11/6/2013-JPW 11/7/2013 | Revise motion to enforce bond | 2.25 380.00/hr | 855.00 |
| 11/8/2013 JPW | Finalize Motion to Enforce Bond | 0.75 380.00/hr | 285.00 |
| 11/15/2013 JPW | Draft Motion to Strike First Amended Complaint | 1.75 380.00/hr | 665.00 |
| 11/18/2013 JPW | Revise motion to strike First Amended Complaint; draft demurrer to First Amended Complaint | 1.75 380.00/hr | 665.00 |
| 11/19/2013 JPW | Revise and finalize motion to strike and demurrer to First Amended Complaint | 1.25 380.00/hr | 475.00 |
| JPW | Review and prepare emails | 0.40 380.00/hr | 152.00 |
| 11/26/2013 JPW | Review opposition; draft reply | 0.75 380.00/hr | 285.00 |
| 12/9/2013 JPW | Preparation for hearing | 1.20 380.00/hr | 456.00 |
| 12/10/2013 JPW | Court Preparation and Appearance | 2.30 380.00/hr | 874.00 |
| 12/13/2013 JPW | Draft letter | 0.70 380.00/hr | 266.00 |
| | For professional services rendered | 28.13 | $10,499.40 |

Additional Charges :

| | | |
|---|---|---|
| 9/17/2013 JPW | Messenger to file documents | 74.75 |
| 10/3/2013 JPW | FedEx to Loeb & Loeb | 17.34 |
| 10/17/2013 JPW | Parking | 7.00 |
| JPW | Travel Exp | 37.50 |
| 10/22/2013 JPW | Filing Fee | 60.00 |
| 11/8/2013 JPW | Filing Fee for Bond Motion | 60.00 |
| 11/19/2013 JPW | Filing Fee for Demurrer and Motion to Strike First Amended Complaint | 120.00 |
| 12/3/2013 JPW | Filing Reply to Opposition to Motion for Bond | 14.25 |
| 12/10/2013 JPW | Travel Exp | 30.00 |

Terrence Wyles                                                        Page      3

|  |  | Amount |
|---|---|---|
| 12/10/2013 JPW   Parking |  | 18.00 |
|  | Total costs | $438.84 |
|  | Total amount of this bill | $10,938.24 |
|  | Previous balance | $16,359.66 |
| 10/16/2013 Payment - thank you |  | ($10,000.00) |
|  | Total payments and adjustments | ($10,000.00) |
|  | Please replenish Client funds with | $10,000.00 |
|  | Balance due | $27,297.90 |

JAMES P. WOHL, ATTORNEY AT LAW
1925 Century Park East
Suite 2140
Los Angeles, CA  90067

Invoice submitted to:
Terrence Wyles

February 12, 2014

Invoice #11065

Professional Services

|  |  | Hrs/Rate | Amount |
|---|---|---|---|
| 1/3/2014 JPW | Review new complaint; conference with Colorado counsel | 2.10 380.00/hr | 798.00 |
| 1/14/2014 JPW | Preparation of discovery | 0.60 380.00/hr | 228.00 |
| | For professional services rendered | 2.70 | $1,026.00 |

Additional Charges :

| | | |
|---|---|---|
| 11/8/2013 JPW | Messenger to Court | 49.75 |
| 11/19/2013 JPW | Messenger to Court | 74.25 |
| 12/3/2013 JPW | FedEx to Loeb & Loeb | 16.76 |
| 12/16/2013 JPW | FedEx from SilverSky | 32.75 |
| 1/6/2014 JPW | Filing Case Management Statement | 9.75 |
| 1/7/2014 JPW | FedEx from Silversky | 65.53 |
| 1/9/2014 JPW | FedEx to Wyles | 36.55 |
| 2/7/2014 JPW | Drop Box Upgrade | 99.00 |
| 2/10/2014 JPW | Filing Fee for Application to File Under Seal | 60.00 |
| | Total costs | $444.34 |

Terrence Wyles                                                          Page    2

                                                                    Amount

       Total amount of this bill                                    $1,470.34

       Previous balance                                            $938.24

2/12/2014 Payment from account                                      ($1,470.34)

       Total payments and adjustments                              ($1,470.34)

       Please replenish Client funds with                          $1,470.34

       Balance due                                                 $2,408.58


       Previous balance of Retainer                                  $0.00
1/16/2014 Payment to account                                       $10,000.00
2/12/2014 Payment from account                                      ($1,470.34)

       New balance of Retainer                                     $8,529.66

JAMES P. WOHL, ATTORNEY AT LAW
1925 Century Park East
Suite 2140
Los Angeles, CA  90067

Invoice submitted to:
Terrence Wyles

May 05, 2014

Invoice #11077

Professional Services

| | | | Hrs/Rate | Amount |
|---|---|---|---|---|
| 2/6/2014 | JPW | Preparation of reply to opposition | 2.10 380.00/hr | 798.00 |
| 2/7/2014 | JPW | Preparation of pleadings | 6.70 380.00/hr | 2,546.00 |
| 2/8/2014 | JPW | Preparation of pleadings | 3.10 380.00/hr | 1,178.00 |
| 2/9/2014 | JPW | Preparation of pleadings | 11.30 380.00/hr | 4,294.00 |
| 2/10/2014 | JPW | Preparation of pleadings | 8.20 380.00/hr | 3,116.00 |
| 2/19/2014 | JPW | Court Preparation and Appearance | 3.00 380.00/hr | 1,140.00 |
| 4/28/2014 | JPW | Court Preparation and Appearance | 1.80 380.00/hr | 684.00 |
| | | For professional services rendered | 36.20 | $13,756.00 |

Additional Charges :

| | | | | |
|---|---|---|---|---|
| 1/15/2014 | JPW | Messenger to deliver to Loeb | | 16.75 |
| 2/10/2014 | JPW | FedEx to Platt | | 23.94 |

Terrence Wyles                                                                                      Page     2

|            |     |                                                                              | Amount |
|------------|-----|------------------------------------------------------------------------------|-------:|
| 2/11/2014  | JPW | Messenger to deliver courtesy copy of documents to department                |  47.50 |
|            | JPW | Messenger to file reply brief and objections to declarations of Brady, Sussman, etc. | 192.50 |
| 2/18/2014  | JPW | Filing Fee for Objections                                                    |   7.50 |
| 2/19/2014  | JPW | Parking                                                                      |  18.00 |
|            | JPW | Travel Exp                                                                   |  30.00 |
| 3/13/2014  | JPW | Filing Fee                                                                   |   8.25 |
| 4/17/2014  | JPW | Filing Fee for to State Court for Appeal                                     | 100.00 |
|            | JPW | Filing Fee to Court of Appeal                                                | 775.00 |
| 4/28/2014  | JPW | Parking                                                                      |  12.00 |
|            | JPW | Travel Exp                                                                   |  30.00 |

|                                             |              |
|---------------------------------------------|-------------:|
| Total costs                                 |   $1,261.44  |
| Total amount of this bill                   |  $15,017.44  |
| Previous balance                            |     $938.24  |
| 2/25/2014 Payment - thank you               | ($10,000.00) |
| 5/5/2014 Payment from account               |  ($5,955.68) |
| Total payments and adjustments              | ($15,955.68) |
| Please replenish Client funds with          |   $7,426.02  |
| Balance due                                 |   $7,426.02  |

|                                             |              |
|---------------------------------------------|-------------:|
| Previous balance of Retainer                |   $8,529.66  |
| 5/5/2014 Payment from account               |  ($5,955.68) |
| New balance of Retainer                     |   $2,573.98  |

JAMES P. WOHL, ATTORNEY AT LAW
1875 Century Park East
Suite 1000
Los Angeles, CA  90067

Invoice submitted to:
Terrence Wyles

August 13, 2014

Invoice #11095

Professional Services

|  |  |  | Hrs/Rate | Amount |
|---|---|---|---|---|
| 7/7/2014 | JPW | Conference with Platt | 0.60 380.00/hr | 228.00 |
| 8/11/2014 | JPW | Draft and revise declaration of Joseph Sandoval | 1.25 380.00/hr | 475.00 |
|  | JPW | Research and revise opposition to motion for attorney fees | 5.50 380.00/hr | 2,090.00 |
|  |  | For professional services rendered | 7.35 | $2,793.00 |
| 8/13/2014 |  | Payment from account |  | ($2,793.00) |
|  |  | Total payments and adjustments |  | ($2,793.00) |
|  |  | Please replenish Client funds with |  | $5,219.02 |
|  |  | Balance due |  | $5,219.02 |

|  |  | Amount |
|---|---|---|
|  | Previous balance of Retainer | $2,573.98 |
| 7/1/2014 | Payment to account | $5,000.00 |
| 8/13/2014 | Payment from account | ($2,793.00) |
|  | New balance of Retainer | $4,780.98 |

JAMES P. WOHL, ATTORNEY AT LAW
1875 Century Park East
Suite 1000
Los Angeles, CA  90067

Invoice submitted to:
Terrence Wyles

September 30, 2014

Invoice #11102

Professional Services

| | | | Hrs/Rate | Amount |
|---|---|---|---|---|
| 8/6/2014 | NAF | Research for opposition to motion for attorney fees | 2.50 325.00/hr | 812.50 |
| 8/7/2014 | NAF | Commence Draft of opposition to motion for attorney fees | 8.50 325.00/hr | 2,762.50 |
| 8/8/2014 | NAF | Draft opposition to motion for attorney fees | 6.50 325.00/hr | 2,112.50 |
| | NAF | Review client documents for opposition to motion for attorney fees | 0.50 325.00/hr | 162.50 |
| 8/19/2014 | NAF | Research and begin preparation for appeal on anti-SLAPP motion | 1.50 325.00/hr | 487.50 |
| 8/20/2014 | NAF | Research for appeal on SLAPP | 2.70 325.00/hr | 877.50 |
| 8/21/2014 | NAF | Preparation for hearing on motion for attorney fees | 1.50 325.00/hr | 487.50 |
| | NAF | Continue research for appeal | 2.50 325.00/hr | 812.50 |
| | JPW | Review file and resopnd to email inquiries | 0.70 380.00/hr | 266.00 |
| 8/22/2014 | NAF | Preparation for hearing on motion for attorney fees | 2.50 325.00/hr | 812.50 |

Terrence Wyles                                                                      Page    2

|            |     |                                                                                      | Hrs/Rate        | Amount    |
|------------|-----|--------------------------------------------------------------------------------------|-----------------|-----------|
| 8/22/2014  | NAF | Review objections to declarations                                                    | 0.60 325.00/hr  | 195.00    |
|            | JPW | Review and respond to emails; review file                                            | 1.10 380.00/hr  | 418.00    |
| 8/25/2014  | NAF | Review anti-SLAPP for hearing strategy                                                | 0.60 325.00/hr  | 195.00    |
| 8/26/2014  | NAF | Preparation for hearing on motion for attorney fees                                   | 2.00 325.00/hr  | NO CHARGE |
|            | NAF | Preparation for appeal, research case law                                             | 2.00 325.00/hr  | 650.00    |
| 8/27/2014  | NAF | Final preparation for hearing on motion for attorney fees; review case law; prepare outline | 2.10 325.00/hr  | NO CHARGE |
|            | NAF | Research case law and continue preparation for appeal brief                           | 1.90 325.00/hr  | 617.50    |
|            | JPW | Review file; research re: oral argument                                               | 3.40 380.00/hr  | 1,292.00  |
| 8/28/2014  | NAF | Strategize re: oral argument in opposition to motion for attorney fees                | 0.50 325.00/hr  | 162.50    |
|            | JPW | Court preparation and appearance - hearing continued                                  | 2.10 380.00/hr  | 798.00    |
| 8/29/2014  | NAF | Research re: appeal of anti-SLAPP                                                      | 1.50 325.00/hr  | 487.50    |
| 9/4/2014   | NAF | Begin preparing record for appeal                                                     | 1.50 325.00/hr  | 487.50    |
| 9/5/2014   | NAF | Continue preparation for appeal                                                       | 1.60 325.00/hr  | 520.00    |
| 9/8/2014   | NAF | Continue research re: Appeal; Prepare for attorney fees motion, on-going              | 4.40 325.00/hr  | 1,430.00  |
| 9/9/2014   | JPW | Court Preparation and Appearance                                                      | 4.20 380.00/hr  | 1,596.00  |
|            | NAF | Research - other jurisdictions for fees motion and appeal; Draft legal and factual arguments for fees motion | 3.10 325.00/hr  | 1,007.50  |
| 9/10/2014  | NAF | Round trip travel, Los Angeles Superior Court, Department 42 for attorney fees hearing; Attend oral argument, Los Angeles Superior Court, Department 42, attorney fees motion | 3.40 325.00/hr  | 1,105.00  |

Terrence Wyles

Page    3

| Date | | Description | Hrs/Rate | Amount |
|---|---|---|---|---|
| 9/11/2014 | NAF | Continue Appellate Research, case law and record review; begin draft of appellate brief | 3.60 325.00/hr | 1,170.00 |
| 9/12/2014 | NAF | Research appellate briefs on SLAPP issue; continue to draft appellate brief on anti SLAPP | 3.80 325.00/hr | 1,235.00 |
| 9/16/2014 | NAF | Draft appellate brief; research legal standards; draft legal argument in support of opposition | 4.10 325.00/hr | 1,332.50 |
| 9/17/2014 | NAF | Continue to draft appellate brief | 4.10 325.00/hr | 1,332.50 |
| 9/18/2014 | NAF | Continue drafting appeal and research | 3.60 325.00/hr | 1,170.00 |
| 9/19/2014 | NAF | Review record for background for appellate brief | 1.50 325.00/hr | 487.50 |
| 9/22/2014 | NAF | Anayluze Chodes and cited cases for application to appeal | 2.10 325.00/hr | 682.50 |
| 9/23/2014 | NAF | Review exemplar briefs for application to appellate brief | 2.00 325.00/hr | 650.00 |
| 9/24/2014 | NAF | Continue review of appellate record for brief; continue to draft appellate opening brief | 3.50 325.00/hr | 1,137.50 |
| 9/25/2014 | NAF | Continue draft of opening brief and reearch; continue review and selection of record and appendix | 3.10 325.00/hr | 1,007.50 |

For professional services rendered        96.80     $30,760.00

Additional Charges :

| Date | | Description | Amount |
|---|---|---|---|
| 8/15/2014 | JPW | FedEx to Loeb & Loeb | 21.54 |
| 8/22/2014 | JPW | Filing Fee | 10.50 |
| 8/28/2014 | JPW | Parking | 14.50 |
| | JPW | Travel Exp | 21.00 |
| | JPW | Transcript Cost for 8/28/14 Hearing | 250.00 |
| 9/8/2014 | JPW | Transcript Cost for Reporter at Hearing | 375.00 |
| 9/9/2014 | NAF | Parking | 18.00 |
| | NAF | Travel Exp | 28.50 |

Terrence Wyles                                                          Page    4

|  |  |  | Amount |
|---|---|---|---:|
| 9/10/2014 | JPW | Parking | 11.00 |
|  | JPW | Travel Exp | 18.75 |
|  |  | Total costs | $768.79 |
|  |  | Total amount of this bill | $31,528.79 |
| 9/30/2014 |  | Payment from account | ($14,780.98) |
|  |  | Total payments and adjustments | ($14,780.98) |
|  |  | Please replenish Client funds with | $10,000.00 |
|  |  | Balance due | $26,747.81 |

|  |  | Amount |
|---|---|---:|
|  | Previous balance of Retainer | $4,780.98 |
| 8/15/2014 | Payment to account | $5,000.00 |
| 9/26/2014 | Payment to account | $5,000.00 |
| 9/30/2014 | Payment from account | ($14,780.98) |
|  | New balance of Retainer | $0.00 |

JAMES P. WOHL, ATTORNEY AT LAW
1875 Century Park East
Suite 1000
Los Angeles, CA  90067

Invoice submitted to:
Terrence Wyles

November 06, 2014

Invoice #11117

Professional Services

|  |  |  | Hrs/Rate | Amount |
|---|---|---|---|---|
| 9/26/2014 | NAF | Continue research and drafting of appeal | 2.10<br>325.00/hr | 682.50 |
| 9/29/2014 | JPW | Review, revise draft | 1.10<br>380.00/hr | 418.00 |
| 9/30/2014 | JPW | Review, revise draft | 1.70<br>380.00/hr | 646.00 |
|  | JPW | Appeal | 2.30<br>380.00/hr | 874.00 |
|  | NAF | Continue research, drafting of appellate brief | 1.40<br>325.00/hr | 455.00 |
| 10/1/2014 | JPW | Review, revise appeal | 2.10<br>380.00/hr | 798.00 |
|  | NAF | Edits, additions, revisions to brief | 1.50<br>325.00/hr | 487.50 |
| 10/2/2014 | NAF | Continue draft appeal | 2.50<br>325.00/hr | 812.50 |
| 10/6/2014 | NAF | Continue research and draft appeal, review appendix | 1.60<br>325.00/hr | 520.00 |
| 10/7/2014 | JPW | Appeal | 3.10<br>380.00/hr | 1,178.00 |

Terrence Wyles

| | | | Hrs/Rate | Amount |
|---|---|---|---|---|
| 10/7/2014 | NAF | Continue draft of opening brief | 0.70<br>325.00/hr | 227.50 |
| 10/8/2014 | JPW | Appeal | 4.50<br>380.00/hr | 1,710.00 |
| | NAF | Review record and research case law, Kajima, Chodos et al for brief; continue draft of brief | 7.10<br>325.00/hr | 2,307.50 |
| 10/9/2014 | NAF | Review client comments and edit/revise brief | 1.30<br>325.00/hr | 422.50 |
| 10/10/2014 | NAF | Further revisions to brief | 0.80<br>325.00/hr | 260.00 |
| 10/13/2014 | NAF | Continue appendix review for appeal | 1.10<br>325.00/hr | 357.50 |
| 10/14/2014 | NAF | Appeal, draft and record review | 0.80<br>325.00/hr | 260.00 |
| 10/15/2014 | NAF | Continue edits and review of appellate appendix | 0.70<br>325.00/hr | 227.50 |
| 10/17/2014 | NAF | Continue review, research and draft of appellate brief | 2.10<br>325.00/hr | 682.50 |
| | | For professional services rendered | 38.50 | $13,326.50 |

Additional Charges :

| | | | Amount |
|---|---|---|---|
| 8/18/2014 | JPW | Messenger to File at LASC and deliver courtesy copy to department | 60.00 |
| | JPW | Messenger to LASC and filing fee/Fax Filing Fees | 380.20 |
| 8/22/2014 | JPW | Messenger to Loeb & Loeb | 20.00 |
| 8/28/2014 | JPW | Transcript Cost | 250.00 |
| | | Total costs | $710.20 |

| | | Amount |
|---|---|---|
| | Total amount of this bill | $14,036.70 |
| | Previous balance | $16,747.81 |
| 10/17/2014 | Payment from account | ($5,000.00) |
| 10/24/2014 | Payment - thank you | ($7,733.94) |
| | Total payments and adjustments | ($12,733.94) |

Terrence Wyles                                                                Page      3

|                                  | Amount       |
|----------------------------------|--------------|
| Please replenish Client funds with | $10,000.00 |
| Balance due                      | $28,050.57   |

JAMES P. WOHL, ATTORNEY AT LAW
1875 Century Park East
Suite 1000
Los Angeles, CA  90067


Invoice submitted to:
Terrence Wyles



December 02, 2014


Invoice #11124


Professional Services

| | | | Hrs/Rate | Amount |
|---|---|---|---|---|
| 10/20/2014 | NAF | Continue research and drafting of appellate brief | 3.10 325.00/hr | 1,007.50 |
| 10/21/2014 | NAF | Continue Appellant Opening Brief adn Appendix | 0.80 325.00/hr | 260.00 |
| 10/22/2014 | JPW | Appeal Brief | 4.70 380.00/hr | 1,786.00 |
| | NAF | Continue drafting, research for opening appellate brief | 3.10 325.00/hr | 1,007.50 |
| 10/23/2014 | JPW | Finalize Appeal brief | 6.20 380.00/hr | 2,356.00 |
| | NAF | Prepare appendix for opening brief; continue edits, additions, revisions to opening brief | 8.00 325.00/hr | 2,600.00 |
| 10/24/2014 | NAF | Finalize preparation of appendix and opening brief | 3.20 325.00/hr | 1,040.00 |
| 10/28/2014 | NAF | Research and draft application to augment record | 2.10 325.00/hr | 682.50 |
| 10/29/2014 | NAF | Draft, revise appeal to augment record, memorandum, declaration | 0.90 325.00/hr | 292.50 |
| | NAF | Communicate with Becky, Court of Appeal, re: record on appeal | 0.50 325.00/hr | 162.50 |

Terrence Wyles                                                                    Page      2

|            |     |                                                      | Hrs/Rate | Amount |
|------------|-----|------------------------------------------------------|----------|--------|
| 11/19/2014 | JPW | Conference with opposing counsel regarding appeal    | 0.30<br>380.00/hr | 114.00 |
|            |     | For professional services rendered                   | 32.90 | $11,308.50 |

Additional Charges :

|            |     |                                          |          |
|------------|-----|------------------------------------------|----------|
| 11/25/2014 | NAF | Copying costs - Brief and Appendix       | 1,851.21 |
|            | NAF | FedEx                                    | 106.44   |
| 11/26/2014 | JPW | Messenger Fees - October 2014            | 85.00    |
|            | JPW | Messenger Fees - November 2014           | 65.00    |

Total costs                                                            $2,107.65

Total amount of this bill                                              $13,416.15

Previous balance                                                      $18,050.57

Please replenish Client funds with                                    $10,000.00

Balance due                                                           $41,466.72

JAMES P. WOHL, ATTORNEY AT LAW
1875 Century Park East
Suite 1000
Los Angeles, CA  90067


Invoice submitted to:
Terrence Wyles




October 02, 2015


Invoice #11167


Professional Services

|  |  |  | Hrs/Rate | Amount |
|---|---|---|---|---|
| **Time** | | | | |
| 1/15/2015 | NAF | Review order from court of appeal | 0.20<br>325.00/hr | 65.00 |
| 2/4/2015 | JPW | Appellate notice and email client | 0.20<br>380.00/hr | 76.00 |
| 4/13/2015-<br>4/15/2015 | SW | Review case file, pleadings | 3.74<br>220.00/hr | 822.80 |
| 4/16/2015 | SW | Reply to Plaintiffs' Brief (SLAPP) | 3.70<br>220.00/hr | 814.00 |
| 4/20/2015-<br>4/24/2015 | SW | Reply to Respondent's Brief | 6.20<br>220.00/hr | 1,364.00 |
| 4/21/2015 | SW | Reply to Respondent's Brief; Office Conference with JPW; Legal Research re: Corp. Code Section 2105, 2106, 2203, and 2204, and R&T Code 19719 | 6.00<br>220.00/hr | 1,320.00 |
| | JPW | Preparation of reply brief | 5.60<br>380.00/hr | 2,128.00 |
| | JPW | Preparation of Reply Brief | 2.00<br>380.00/hr | 760.00 |
| 4/22/2015 | SW | Reply to Respondent's Brief; Office conference with JPW | 5.12<br>220.00/hr | 1,126.40 |

Terrence Wyles                                                                                      Page    2

| | | | Hrs/Rate | Amount |
|---|---|---|---|---|
| 4/22/2015 | JPW | Review reply and declaration | 0.60 380.00/hr | 228.00 |
| 4/23/2015 | SW | Finalize Reply to Respondent's Opposition; Finalize JPW's Declaration | 5.90 220.00/hr | 1,298.00 |
| | JPW | Finalize reply brief | 1.20 380.00/hr | 456.00 |
| 5/11/2015 | SW | Appellant's Reply Brief and e-filing | 1.10 220.00/hr | 242.00 |
| | SW | Instructions to Christine McCain prior to e-filing; office conference with JPW re: revisions | 0.20 220.00/hr | 44.00 |
| 5/19/2015 | SW | Conference with Marcos Gonzales re: SDT to LA County Fire Department HR Department re: recorded conversation with Dep. County Counsel, Stacey Lee; review SDT and Notice to Consumer and Attachment with Document Categories | 0.40 220.00/hr | 88.00 |
| | JPW | Investigate: proper Los ANgeles Fire Department faciiltt/division to serve Tom Brady with a Civil Subpoena (Duces Tecum) and Notice to Consumer or Employee and Objection. Discuss with Stever Watkins regarding same. | 1.20 380.00/hr | 456.00 |
| | JPW | Draft and finalize Civil Subpoena (Duces Tecum), Notice to Consumer and attachment regarding Tom Brady | 1.30 380.00/hr | 494.00 |
| 5/20/2015 | SW | Conference with Marcos Gonzales re: SDT and Notice to Consumer re: LAFD Captain Tom Brady; assist in locating Service Address of Tom Brady | 0.50 220.00/hr | 110.00 |
| 6/24/2015 | JPW | Preparation for appellate argument | 4.70 380.00/hr | 1,786.00 |
| 6/25/2015 | JPW | Court Preparation and Appearance at appellate argument | 4.50 380.00/hr | 1,710.00 |
| 7/30/2015 | JPW | Conference with Vintola; review file | 0.80 380.00/hr | 304.00 |
| 9/25/2015 | SW | Office conference re: Demurrer and Motion to Strike, strategies | 0.20 220.00/hr | 44.00 |
| | SW | Review Notice of Remittitur from the Court of Appeal; discusion with JPW | 0.20 220.00/hr | 44.00 |
| | SW | Review prior demurrer; Appellate Brief | 1.10 220.00/hr | 242.00 |

Terrence Wyles                                                                    Page        3

|  |  |  | Hrs/Rate | Amount |
|---|---|---|---|---|
| | SUBTOTAL: | | [     56.66 | 16,022.20] |
| | For professional services rendered | | 56.66 | $16,022.20 |

Additional Charges :

Expense

|  |  |  | Amount |
|---|---|---|---|
| 10/28/2014 | JPW | Janney & Janney court services | 35.00 |
| | JPW | Janney & Janney pick up | 50.00 |
| 12/30/2014 | JPW | | 35.00 |
| 4/23/2015 | JPW | Interpreter service to translate Swiss Webpage | 100.00 |
| 4/28/2015 | JPW | Corporate Search re: Aluminaid | 110.00 |
| 5/11/2015 | JPW | Copying cost | 41.97 |
| | JPW | FedEx to Platt | 19.42 |
| 5/27/2015 | JPW | Janney & Janney: Notice to Consumer or Employee and Objection; Civil Subpoena - Duces Tecum | 76.50 |
| 6/1/2015 | JPW | Janney & Janney - Notice to Consumer or Employee and Objection; Civil Subpoena for Personal Appearance at Trial or Hearing | 60.00 |
| 6/11/2015 | JPW | Ronsin Base Fee - Subpoena re: LA County Fire Department | 48.00 |
| | JPW | Service Fee/Subpoena to LA County Fire Department | 48.00 |
| 6/25/2015 | JPW | Parking | 8.00 |
| | JPW | Travel Exp | 21.00 |

|  |  |  |  |
|---|---|---|---|
| | SUBTOTAL: | [ | 652.89] |
| | Total costs | | $652.89 |
| | Total amount of this bill | | $16,675.09 |
| | Previous balance | | $31,466.72 |
| 11/24/2014 | Payment - thank you | | ($5,000.00) |
| 2/26/2015 | Payment - thank you | | ($5,000.00) |
| 4/24/2015 | Payment - thank you | | ($5,000.00) |



Terrence Wyles

Page    4

|                                  | Amount        |
| -------------------------------- | ------------- |
| Total payments and adjustments   | ($15,000.00)  |
| Please replenish Client funds with | $10,000.00  |
| Balance due                      | $43,141.81    |

Controller - none

JAMES P. WOHL, ATTORNEY AT LAW
1875 Century Park East
Suite 1000
Los Angeles, CA  90067


Invoice submitted to:
Terrence Wyles



October 02, 2015


Invoice #11167


Professional Services

|  | | | Hrs/Rate | Amount |
|---|---|---|---|---|
| **Time** | | | | |
| 1/15/2015 | NAF | Review order from court of appeal | 0.20<br>325.00/hr | 65.00 |
| 2/4/2015 | JPW | Appellate notice and email client | 0.20<br>380.00/hr | 76.00 |
| 4/13/2015-<br>4/15/2015 | SW | Review case file, pleadings | 3.74<br>220.00/hr | 822.80 |
| 4/16/2015 | SW | Reply to Plaintiffs' Brief (SLAPP) | 3.70<br>220.00/hr | 814.00 |
| 4/20/2015-<br>4/24/2015 | SW | Reply to Respondent's Brief | 6.20<br>220.00/hr | 1,364.00 |
| 4/21/2015 | SW | Reply to Respondent's Brief; Office Conference with JPW; Legal Research re: Corp. Code Section 2105, 2106, 2203, and 2204, and R&T Code 19719 | 6.00<br>220.00/hr | 1,320.00 |
|  | JPW | Preparation of reply brief | 5.60<br>380.00/hr | 2,128.00 |
|  | JPW | Preparation of Reply Brief | 2.00<br>380.00/hr | 760.00 |
| 4/22/2015 | SW | Reply to Respondent's Brief; Office conference with JPW | 5.12<br>220.00/hr | 1,126.40 |

Terrence Wyles                                                                            Page    2

| | | | Hrs/Rate | Amount |
|---|---|---|---|---|
| 4/22/2015 | JPW | Review reply and declaration | 0.60<br>380.00/hr | 228.00 |
| 4/23/2015 | SW | Finalize Reply to Respondent's Opposition; Finalize JPW's Declaration | 5.90<br>220.00/hr | 1,298.00 |
| | JPW | Finalize reply brief | 1.20<br>380.00/hr | 456.00 |
| 5/11/2015 | SW | Appellant's Reply Brief and e-filing | 1.10<br>220.00/hr | 242.00 |
| | SW | Instructions to Christine McCain prior to e-filing; office conference with JPW re: revisions | 0.20<br>220.00/hr | 44.00 |
| 5/19/2015 | SW | Conference with Marcos Gonzales re: SDT to LA County Fire Department HR Department re: recorded conversation with Dep. County Counsel, Stacey Lee; review SDT and Notice to Consumer and Attachment with Document Categories | 0.40<br>220.00/hr | 88.00 |
| | JPW | Investigate: proper Los ANgeles Fire Department faciiltt/division to serve Tom Brady with a Civil Subpoena (Duces Tecum) and Notice to Consumer or Employee and Objection. Discuss with Stever Watkins regarding same. | 1.20<br>380.00/hr | 456.00 |
| | JPW | Draft and finalize Civil Subpoena (Duces Tecum), Notice to Consumer and attachment regarding Tom Brady | 1.30<br>380.00/hr | 494.00 |
| 5/20/2015 | SW | Conference with Marcos Gonzales re: SDT and Notice to Consumer re: LAFD Captain Tom Brady; assist in locating Service Address of Tom Brady | 0.50<br>220.00/hr | 110.00 |
| 6/24/2015 | JPW | Preparation for appellate argument | 4.70<br>380.00/hr | 1,786.00 |
| 6/25/2015 | JPW | Court Preparation and Appearance at appellate argument | 4.50<br>380.00/hr | 1,710.00 |
| 7/30/2015 | JPW | Conference with Vintola; review file | 0.80<br>380.00/hr | 304.00 |
| 9/25/2015 | SW | Office conference re: Demurrer and Motion to Strike, strategies | 0.20<br>220.00/hr | 44.00 |
| | SW | Review Notice of Remittitur from the Court of Appeal; discusion with JPW | 0.20<br>220.00/hr | 44.00 |
| | SW | Review prior demurrer; Appellate Brief | 1.10<br>220.00/hr | 242.00 |

Terrence Wyles                                                                          Page      3

|  |  | Hrs/Rate | Amount |
|---|---|---|---|
| SUBTOTAL: | | [ 56.66 | 16,022.20] |
| For professional services rendered | | 56.66 | $16,022.20 |

Additional Charges :

Expense

| Date | | Description | Amount |
|---|---|---|---|
| 10/28/2014 | JPW | Janney & Janney court services | 35.00 |
| | JPW | Janney & Janney pick up | 50.00 |
| 12/30/2014 | JPW | | 35.00 |
| 4/23/2015 | JPW | Interpreter service to translate Swiss Webpage | 100.00 |
| 4/28/2015 | JPW | Corporate Search re: Aluminaid | 110.00 |
| 5/11/2015 | JPW | Copying cost | 41.97 |
| | JPW | FedEx to Platt | 19.42 |
| 5/27/2015 | JPW | Janney & Janney: Notice to Consumer or Employee and Objection; Civil Subpoena - Duces Tecum | 76.50 |
| 6/1/2015 | JPW | Janney & Janney - Notice to Consumer or Employee and Objection; Civil Subpoena for Personal Appearance at Trial or Hearing | 60.00 |
| 6/11/2015 | JPW | Ronsin Base Fee - Subpoena re: LA County Fire Department | 48.00 |
| | JPW | Service Fee/Subpoena to LA County Fire Department | 48.00 |
| 6/25/2015 | JPW | Parking | 8.00 |
| | JPW | Travel Exp | 21.00 |

|  |  |  |  |
|---|---|---|---|
| SUBTOTAL: | | [ | 652.89] |
| Total costs | | | $652.89 |
| Total amount of this bill | | | $16,675.09 |
| Previous balance | | | $31,466.72 |
| 11/24/2014 | Payment - thank you | | ($5,000.00) |
| 2/26/2015 | Payment - thank you | | ($5,000.00) |
| 4/24/2015 | Payment - thank you | | ($5,000.00) |



Terrence Wyles                                                                                    Page    4

|  | Amount |
| --- | --- |
| Total payments and adjustments | ($15,000.00) |
| Please replenish Client funds with | $10,000.00 |
| Balance due | $43,141.81 |

Controller - none

JAMES P. WOHL, ATTORNEY AT LAW
1875 Century Park East
Suite 1000
Los Angeles, CA  90067

Invoice submitted to:
Terrence Wyles

November 25, 2015

Invoice #11185

Professional Services

|  |  |  | Hrs/Rate | Amount |
|---|---|---|---|---|
| **Time** | | | | |
| 9/25/2015 | SW | Office conference with JPW re: Demurrer and Motion to Strike, strategies | 0.20<br>220.00/hr | 44.00 |
|  | SW | Review/analyze Notice of Remittitur from the Court of Appeal; discussion w/ JPW | 0.20<br>220.00/hr | 44.00 |
|  | SW | Review prior demurrer; Appellate Brief | 1.10<br>220.00/hr | 242.00 |
|  | JPW | Research re: Forfeiture of corporation | 0.30<br>380.00/hr | 114.00 |
| 10/2/2015 | SW | Researching law for demurrer v. Motion for Judgment on the Pleadings | 2.70<br>220.00/hr | 594.00 |
|  | SW | Draft Motion for Judgment on the Pleadings; Request for Judicial Notice | 7.10<br>220.00/hr | 1,562.00 |
| 10/9/2015 | SW | Draft/revise Demurrer to FAC | 6.90<br>220.00/hr | 1,518.00 |
|  | SW | Conference with JPW re: strategies re: Request for Sanctions | 0.40<br>220.00/hr | 88.00 |
| 10/13/2015 | SW | Review emails from client re: measure of damages to date | 0.20<br>220.00/hr | 44.00 |

Terrence Wyles                                                                                        Page     2

|  |  |  | Hrs/Rate | Amount |
|---|---|---|---|---|
| 10/14/2015 | SW | Email to client from JPW re: measure of damages | 0.40<br>220.00/hr | 88.00 |
| 10/16/2015 | SW | Review/analyze Quantification of Damages | 1.90<br>220.00/hr | 418.00 |
|  | SW | Draft/revise Demand Letter for review by client; Office Conference with JPW | 2.30<br>220.00/hr | 506.00 |
| 10/20/2015 | SW | Finalize Settlement Demand letter to Daniel Platt/LOEB & LOEB | 1.40<br>220.00/hr | 308.00 |
|  | JPW | Letter to Platt | 0.30<br>380.00/hr | 114.00 |
| 10/28/2015 | SW | Office conference with JPW re: Judge's decision dismissing Colorado case; review and analyze the e-mails between Colorado counsel, Sam Ventola, and JPW | 0.40<br>220.00/hr | 88.00 |
| 11/9/2015 | JPW | Court Preparation; review documents | 0.70<br>380.00/hr | 266.00 |

|  |  | Hrs | Amount |
|---|---|---|---|
| SUBTOTAL: | [ | 26.50 | 6,038.00] |
| For professional services rendered |  | 26.50 | $6,038.00 |

Additional Charges :

Expense

| 8/27/2015 | JPW | Secretary of State Certification re: West Hills Research and Development, Inc. | 45.00 |
|---|---|---|---|
| 10/23/2015 | JPW | Filing Fee | 9.75 |

| SUBTOTAL: | [ | 54.75] |
|---|---|---|
| Total costs |  | $54.75 |

| Total amount of this bill | $6,092.75 |
|---|---|
| Previous balance | $33,141.81 |
| 10/12/2015 Payment - thank you | ($5,000.00) |
| Total payments and adjustments | ($5,000.00) |
| Please replenish Client funds with | $10,000.00 |

Terrence Wyles

| | Amount |
|---|---|
| Balance due | $44,234.56 |

JAMES P. WOHL, ATTORNEY AT LAW
1875 Century Park East
Suite 1000
Los Angeles, CA  90067


Invoice submitted to:
Terrence Wyles



February 19, 2016



|  |  | Amount |
|---|---|---|
| | Previous balance | $34,234.56 |
| 12/15/2015 | Payment - thank you | ($5,000.00) |
| | Total payments and adjustments | ($5,000.00) |
| | Please replenish Client funds with | $10,000.00 |
| | Balance due | $39,234.56 |

# EXHIBIT 2

HarperHofer & Associates, LLC
Report of May 7, 2018

# EXHIBIT 2



SERVED ONLY: May 7, 2018 8:50 PM
FILING ID: E0AFC3EFFA95E
CASE NUMBER: 2014CV30600

May 7, 2018


Samuel M. Ventola, Esq.
Ventola Law
1775 Sherman St., Suite 1650
Denver, CO 80203

Delivered via email: sam@samventola.com

Re:   Plaintiff: Terrence M. Wyles
      v.
      Defendants: Aluminaid International, A.G; West Hills Research & Development,
      Inc. (f/k/a/ Aluminaid, Inc.); Aluminaid PTE Ltd; AJA Reynolds aka AJA Fasanella;
      Zuperfoods, Inc.; Carl Freer; Ericka Freer, aka Ericka LaPresle aka Ericka Suzanne
      LaPresle aka Ericka LaPresle Freer; James Hunt; Allen Sussman, Esq.; Loeb &
      Loeb LLP; Adam Freer; Julia Freer-Agerstam; David Warnock; Alex Arendt.

Dear Mr. Ventola:

You asked us to assist you with your preparation for litigation in the above-
referenced proceeding, Case Number 2014CV030600, District Court, Arapahoe
County, State of Colorado. This report presents our analysis of Terrence Wyles'
damages as a result of Defendants' actions.


## Procedures Performed

The specific procedures performed to date are summarized below.

1.  Obtained background data from counsel, Mr. Wyles, and the case pleadings.
2.  Interviewed Mr. Wyles and Connie Bechtolt (Mr. Wyles' wife and
    bookkeeper for Startup IP Law, LLC, Mr. Wyles' law firm).
3.  Read and applied information obtained from the interviews and documents
    listed in Attachment I to our analysis.
4.  Performed independent research listed in footnotes in this report and in
    Attachment I to our analysis.



**Exhibit**

**1**

**14CV30600**



5. Analyzed the available information in light of the facts and circumstances.
6. Summarized the findings and conclusions in this report and its related schedules.

## Approach

In this report, we present our analysis of Mr. Wyles' damages due to the Defendants' actions during and after his employment by Aluminaid International, AG (Aluminaid AG). Specifically, we evaluated the nature and effect of Defendants' cash transfers in to and out of Aluminaid bank accounts, Mr. Wyles' lost personal earnings due to Defendants' actions, the value of Mr. Wyles' 1% ownership interest in Aluminaid AG as represented by Mr. Wyles' stock certificate, the economic effect of Defendants' breach of its fiduciary duty to its shareholders, the interest lost on retirement fund accounts borrowed to fund the litigation costs, and legal fees and costs incurred in defending the California litigation.

Note: We refer to Aluminaid AG, First Hills Research & Development, Aluminaid PTE, and Advanced First Aid Research PTE collectively as "Aluminaid" or the "Company." Aluminaid AG and First Hills Research & Development are currently inactive and the assets of these companies were transferred to Advanced First Aid Research PTE, formerly known as Aluminaid PTE. The business purpose and activities within each of these companies have remained the same.

## Evaluation of Possible Frauds

### Application of Fraud Triangle in Evaluating Possible Indicia of Fraud

In evaluating the existence of possible indicia of fraud in connection with evaluating a possible fraud, it is helpful to be reminded of an overview of the elements of a typical fraud scheme from the viewpoint of the perpetrator. A well-recognized analytical framework for this process is the Fraud Triangle.[1] The three sides of the Fraud Triangle are: Motive, Opportunity, and Rationalization. A graphical

---

[1] The Fraud Triangle was conceptualized, developed and publicized by Donald R. Cressey, a well-known criminologist. His initial investigation and writings have been built on by others. The concepts are generally accepted by fraud examiners and others.



representation of the Fraud Triangle as conceptualized by Donald R. Cressey is shown below.



It is a generally accepted concept that all three elements or phases are present to some degree in virtually all frauds. The development of and concepts related to the Fraud Triangle are used by all fraud examiners. Fraud indicia identified as part of this investigation will be related to one or more of these three elements.

Motive, often referred to as "pressure," frequently is associated with financial problems due to a personal situation (financial problems, vices, etc.) or pressures from others to meet goals or provide resources. In the context of motive, in this situation Mr. Freer was motivated to convert funds received from investors to continue living the lifestyle to which he was accustomed.

Opportunity frequently comes about either through weaknesses inside an organization or total control of access to resources. Collusion among employees who are exploiting a weakness will generally make fraud more difficult to identify. In this situation, Mr. Freer had access to all the cash in the Aluminaid bank accounts and was in control of access to assets of Aluminaid AG and related entities and entities under common control. In addition, Mr. Freer told Aluminaid's accountant, Mark



Levine, not to share information regarding bank accounts or financials with Patrick Sandoval, Director of Regulatory Affairs of Aluminaid AG[2] and Defendants are continuing to withhold financial information from Mr. Wyles.

Rationalization arises from the individual's view of the world and their specific circumstances. An individual feeling badly treated, taken advantage of or not appreciated can rationalize that they are "owed," and therefore justified in "taking." In this situation, Mr. Freer appears to have believed that funds he received from investors were his to spend on personal expenses for himself and his family, as well as to pay expenses of unrelated companies that he owned.

Because it is the prerogative of the trier of fact to decide if the legal elements of fraud have been met, as forensic accountants, we assist the trier of fact by identifying "indicia" of fraud for consideration in the decision making. "Indicia" are defined as "signs; indications," and are commonly referred to as "red flags,"[3] denoting danger or a warning signal.

A "symptom" of fraud (the indicia or red flag of fraud) is a condition that is directly attributable to possible dishonest or fraudulent activity that may result from the fraud itself or from the attempts to conceal the fraud. Because every fraud is different, no fraud exhibits every common symptom, at least at first glance. However, specific (e.g. relevant) signs of fraud that are frequently observed include:[4]

- Possible conflicts of interest
- Ability to override control by one individual
- Secrecy or concealment of activities
- Lack of transparency
- Concealment
- Limiting access to books and record

Not every red flag is an indicator that a fraud exists; rather the red flag indicates an activity or event that is of a nature that suggests investigating it would be prudent.

---

[2] February 19, 2014 Declaration of Patrick Sandoval, page 9, paragraph 38
[3] www.legal-dictionary.thefreedictionary.com/red+flag
[4] http://internalaudit.wayne.edu/fraud.php#REDFLAGS



Other common symptoms of fraud include evidence of communications that are misleading or omit important information and transactions, especially with related parties, that have no obvious business purpose or that are concealed rather than made available for a reasonable level of review. Limiting legitimate access of appropriate personnel or professionals to relevant books and records is another red flag. The apparent type of fraud indicated by this situation is commonly described as a "confidence game." In a confidence game, the "confidence man"[5] (or "con man"), obtains "money from others through trick or swindle generally by gaining the victim's trust and confidence."[6]

## Background

Mr. Wyles had known Carl Freer as a client at his law firm. He was initially hired by Carl Freer in May 2012 to work for a company Mr. Freer founded called Serge Media. On October 12, 2012, Mr. Wyles began working as Chief In-House Legal Counsel with Aluminaid AG. Aluminaid AG is a medical device company that developed medical bandages used to instantly relieve pain from first and second degree burns. Aluminaid AG's office was in Colorado. Mr. Wyles' job duties at Aluminaid AG included drafting and prosecuting patent and copyright applications, as well as performing generalized legal services arising from business operations. An Aluminaid-related company owned by Mr. Freer called First Hills Research & Development (f/k/a Aluminaid, Inc.) was based in California.

In November 2012, Mr. Sandoval was able for the first time to review a few bank statements of Aluminaid and unrelated companies owned by Mr. Freer. He found that funds in each account had been commingled with the other accounts and also used to pay personal expenses of Mr. Freer and his family. He also noticed there were no payments to State or Federal agencies for withheld or the employer share of employment-related taxes. Mr. Sandoval brought this to Mr. Freer's attention, who told Mr. Sandoval that Allen Sussman, Esq. of Loeb and Loeb, corporate counsel for Aluminaid, was aware of the tax issues and the payment of personal expenses from business accounts and did not believe this was an issue.

---

[5] Source: www.thefreedictionary.com/confidence+man
[6] Source: http://legal-dictionary.thefreedictionary.com/confidence+game



Mr. Freer moved to Singapore in early 2013. Shortly after, he informed employees of Aluminaid AG and First Hills Research & Development that the companies would be shut down and their assets would be transferred to Aluminaid PTE Ltd (Aluminaid PTE), a newly formed Singapore-based company. In March 2013, Mr. Sandoval and Mr. Wyles expressed concern to the Aluminaid Board Members regarding the payment of personal expenses from the business accounts, as well as the possibility of initiating a Shareholder's derivative lawsuit that would allow a third party to restructure the management of the company. Shortly after this conversation took place, Mr. Sandoval and Mr. Wyles were suspended for one week. When they returned to work, most of Aluminaid AG's books and records and assets had been sent to Singapore.

On April 5, 2013, Mr. Wyles was terminated from Aluminaid AG. That same month he founded Startup IP Law, LLC, which specializes in prosecuting patents and handling business matters related to trademarks, copyrights, and trade secrets. In July 2013, Aluminaid filed a lawsuit against Mr. Wyles in California alleging he stole trade secrets from Aluminaid. The case was dismissed in October 2016 after several hearings and some prejudicial publicity.

## Analysis
### Introduction
Each of the transactions or events investigated as part of our engagement are described in this section. If the analysis resulted in a negative consequence or damage to Mr. Wyles, the event and related damage amounts are summarized on referenced supporting schedules.

### Evaluation of Defendants' Asset Transfers
#### Introduction
As part of our analysis we evaluated Defendants' asset transfers and assessed the possibility of the Aluminaid entities acting as alter egos of Mr. Freer. An alter ego is a person or entity vicariously liable for another (as an agent).[7]  State case law defines the tests that determine whether the acts of the parties have created an alter ego

---

[7] Defining 'Unreasonably Small Capital' in Fraudulent Conveyance Cases: Ratio Analysis May Provide an Answer," Garrick A. Hollander, *Business Lawyer*, May 1994.



situation. Examples of these Colorado based substantive tests that are based on actions and economic consequences follow:[8]

- Whether the corporation is operated as a distinct business entity;
- Whether funds and assets are commingled;
- Whether adequate corporate records are maintained;
- Whether transactions have rendered the entity insolvent;
- Whether the nature and form of the entity's ownership and control facilitate misuse by an insider; and
- Whether corporate funds or assets are used for non-corporate purposes.

The trier of fact evaluates the application of these activity and financial tests to the facts and circumstances of each case in making the legal decision whether to permit the piercing of the corporate veil. The corporate veil is the "legal fiction" that corporate assets and debts are owned and controlled by the corporate person, not by the owners and employees. The corporate veil can be pierced when shareholders have acted intentionally and illegally within the corporate shelter, when the corporation has neglected corporate formalities, or when the corporation is found to be a mere alter ego of the shareholders. There are many other circumstances in which attempting to pierce the corporate veil may be appropriate, including using the assets of a corporation for the benefit of an owner or officer, hiding fraudulent activity behind the corporate veil, preferring insiders over creditors in an insolvent or dissolving entity, and fraudulent transfers.

Analysis

During the beginning of 2013, the assets of Aluminaid AG and First Hills Research and Development, including bank accounts, intellectual property, computers and other office equipment were transferred to Aluminaid PTE. Business and financial records were also transferred. Mr. Freer controlled each of these companies and their bank accounts. Mr. Freer transferred funds back and forth between the bank accounts of Aluminaid as well as the bank accounts of other companies he owned that were unrelated to the Aluminaid entities. He also paid personal expenses of himself and his family from Aluminaid bank accounts.

---

[8] "Piercing the Corporate Veil," Frank L. Brunetti, Scarinci Hollenbeck.

Samuel M. Ventola, Esq.
May 7, 2018
Page 7 of 17



Mr. Wyles prepared summaries of transactions from February 2012 through January 2013 using monies in the Aluminaid bank accounts that were not used for legitimate business purposes or were used for unknown purposes. In order to prevent duplicative efforts, we tested a sample of Mr. Wyles' analysis for accuracy as opposed to re-creating it.  Specifically, we traced all individual transactions exceeding $1,000 to test the bank account number, transaction date, amount, and transaction type for accuracy. The transactions we tested were accurate in that the detail of each transaction we reviewed matched the bank statement it originated from. Note: we have Aluminaid bank account statements for the period from February 2012 through January 2013. Bank account activity before or after this period could not be tested.

Mr. Wyles classified the nature of each expense into categories such as grocery purchases, personal shopping, personal services, and restaurants and entertainment based on information on the check and bank statement. In a conservative approach, he excluded travel expenses unless he was certain the travel was not business-related (i.e. trips to Hawaii and Disneyland). A table summarizing Mr. Wyles' findings is presented below.

| Mr. Wyles' Analysis of Aluminaid Funds Used for Unknown Purposes or Personal Purposes | |
|---|---:|
| Unexplained Wire Transfers to Non-Aluminaid Entities/Persons | $ 881,639 |
| Unexplained Cash Withdrawals (i.e. ATM withdrawals, cashed checks) | 379,640 |
| Beverly Loan Company | 247,040 |
| Restaurants/Entertainment (i.e. concert tickets, Disneyland) | 112,883 |
| Vehicles/Transportation (i.e. limos, auto leases, gasoline) | 108,527 |
| Zuperfoods/Ericka Freer (Ericka Freer owns Zuperfoods) | 108,100 |
| James Hunt | 100,261 |
| Personal Shopping (i.e. retail stores in Beverly Hills) | 88,833 |
| Personal Services (i.e. spa treatments, personal legal expenses) | 70,441 |
| Aja Fasanella (payments in addition to her regular paycheck) | 37,883 |
| Grocery Shopping | 17,100 |
| Overdraft/Collection Charges | 12,183 |
| **Total  Funds Used for Unknown Purposes or Personal Purposes** | **$ 2,164,531** |



Mr. Freer did not take a salary from Aluminaid, so it is possible he was using Aluminaid accounts to pay for personal expenses in lieu of a salary. If this were the case, however, Mr. Freer should have disclosed this and it should have been included in wage reporting, along with the payment of withheld and matched payroll taxes. We do not see any document where this is disclosed or any related reporting. These actions are indicia of possible fraud.

Some transactions included in the table above occurred immediately after Aluminaid received funding deposits from investors. For example, on July 11, 2012, one day after Aluminaid received almost $400,000 from a shareholder, a $53,000 payment was made to O'Gara Coach Company, a high-end automobile dealership in Beverly Hills, California.[9] The purpose of this payment is unknown. The use of over 25% of investment funds to make a purchase at a luxury automotive dealership one day after receiving the funds is an indicia of fraud.

The Aluminaid bank account statement we reviewed also reflected transfers to and from the Aluminaid bank accounts and bank accounts of companies owned by Mr. Freer but unrelated to Aluminaid. We do not know the purposes of the transfers between accounts. It is possible that these monies are accounted for using inter-company due to/due from accounts, however the commingling of funds with unrelated companies under the same ownership is an indicia of fraud.

The comingling of funds among the Aluminaid entities, the transfers to and from the bank accounts of Mr. Freer's companies unrelated to Aluminaid, and the payment of Mr. Freer and his family's personal expenses using Aluminaid funds are each an indicia of possible fraud. These actions, whether or not they are actually fraudulent, are the types of events that meet the tests of disregarding the corporate entity, comingling assets, not maintaining corporate records, abusing control, using corporate assets for non-corporate purposes and possibly diverting assets in sufficient quantity to render the company insolvent. As a result, the Aluminaid entities are an alter ego of Mr. Freer and vice versa, and piercing one or more of the corporate veils or a reverse piercing to Mr. Freer may be appropriate.

---

[9] Aluminaid Inc. Community Banks of Colorado account ending x9496 July 2012 bank statement



## Mr. Wyles' Lost Personal Earnings

### Overview of Calculation of Wages Earned but Not Paid Due to Wrongful Termination of Mr. Wyles

Schedule 1 presents relevant dates and other background information. Schedule 2 presents Mr. Wyles' "As Planned/But For" earnings and benefits. Schedule 3 presents Mr. Wyles' "Actual and As Now Anticipated" earnings.

We evaluated Mr. Wyles' "Actual and As Now Anticipated" earnings and compared them to the earnings Mr. Wyles would have earned had he remained employed by Aluminaid. We compared Mr. Wyles' "Actual and As Now Anticipated" earnings through his expected retirement date to what he would have earned in the same period at Aluminaid. Schedule 4 is a summary of this calculation. Schedule 5 presents the details of the present value calculation of Mr. Wyles' past and future lost earnings and benefits. Schedule 5 Footnotes provides detailed descriptions of the assumptions used and calculations performed in our analysis.

Schedule 6 charts Startup IP Law, LLC's monthly and annual revenues and lists the events that impacted those revenues. Schedule 7 Presents Aluminaid's anticipated sales, cost of goods sold, expenses, and EBITDA according to its business plan. Schedule 8 provides the amount of back pay and penalties that Mr. Wyles earned while he was still employed by Aluminaid and related penalties due to the failure to timely pay Mr. Wyles' wages prior to his termination.[10]

### Analysis

In order to calculate Mr. Wyles' lost earnings and benefits, we compared the "Actual Plus As Now Anticipated" earnings and benefits to Mr. Wyles' "As Planned/But For" earnings and benefits to determine the amount of his lost earnings and benefits. We calculated prejudgment interest on past earnings, and discounted future lost earnings to September 7, 2018, the estimated last day of trial. Details of the calculations and explanatory information are included in the attached schedules, along with reference to supporting materials.

---

[10] The back amounts and penalties are in addition to the lost earnings amounts shown on Schedules 4 and 5 because they relate to the period of time before Mr. Wyles was terminated by Aluminaid.



## Mr. Wyles' 1% Ownership Interest in Aluminaid AG

<u>Introduction</u>

Pursuant to Mr. Wyle's Employment Agreement, he was entitled to a 1% ownership interest in Aluminaid.[11] On January 7, 2013, Mr. Wyles received an email from Mr. Sussman that attached Mr. Wyles' stock certificate for 100,000 shares in Aluminaid AG. Mr. Sussman noted that although the stock certificate is dated January 8, 2013, the award was made by the Board in 2012.[12] On January 25, 2013, Mr. Sussman forwarded the Aluminaid AG Shareholders Agreement to Mr. Wyles and other Aluminaid AG shareholders for each of them to sign.[13]

On March 3, 2013, Mr. Freer sent an email to Aluminaid Board Members and shareholders (excluding Mr. Wyles) informing them Aluminaid headquarters would be moving to Singapore and the new company, Aluminaid PTE, would purchase the old company's stock 1 for 1.[14] On March 13, 2013, a Directors' Resolution was passed allowing the Directors' to issue shares in Aluminaid PTE. [15] Loeb & Loeb LLC was issued 1,328 shares on behalf of Mr. Wyles. We cannot determine based on the documents available to us if Mr. Wyles received these shares as a replacement or in addition to the 100,000 shares he owned in Aluminaid AG. In subsequent Aluminaid PTE documents Mr. Wyles no longer appears as a shareholder.

As discussed above, activities of the Aluminaid entities appear to meet the test for possible determinations of alter egos status with of Mr. Freer and vice versa. If the trier of fact makes such a legal finding, the various entities would be able to reach the assets of the related entities and Mr. Freer. Therefore, Mr. Wyles would be entitled to his 1% ownership interest in First Aid Research PTE (formerly Aluminaid PTE), which is currently operating according to its website.[16] This argument appears to be strengthened by the stock certificate in Mr. Wyles' name, the clear

---

[11] Mr. Wyles' October 12, 2012 Aluminaid Employment Agreement, Section 7.
[12] January 17, 2013 email from Mr. Sussman to Mr. Wyles regarding Stock Certificate.
[13] January 25, 2013 email from Mr. Sussman to Mr. Wyles regarding Shareholders Agreement.
[14] March 3, 2013 email from Mr. Freer to Aluminaid Board Members and Shareholder regarding Singapore location.
[15] Directors Resolution Passed Pursuant to Article 104 of the Articles of Association of the Company (Aluminaid PTE Ltd. – 003568).
[16] http://www.advfar.com/



communications by Mr. Sussman that Mr. Wyles owned 100,000 shares of Aluminaid AG, and the Directors' Resolution issuing him shares in Aluminaid PTE.

Analysis

The Aluminaid financial information we have received to date is very limited. We reviewed Aluminaid's business plan, which included financial forecasts for the years 2013, 2014, and 2015. We also analyzed the First Aid Research PTE audited financial statements for the years 2013 and 2014. The financial forecasts in the business plan showed a positive outlook from 2013 through 2015, with revenue growing from approximately $38 million in 2013 to $246 million by 2015. The audited financial statements, however, showed minimal revenue earned in 2013 and 2014. In addition, the auditors disclaimed an opinion on the 2014 financial statements, citing the inability to obtain sufficient appropriate audit evidence to provide a basis for an audit opinion. Due to the lack of financial information provided to us, as well as the inconsistencies in the data we do have, we concluded we are currently unable to provide an opinion of the value of Mr. Wyles' 1% interest in First Aid Research PTE.

We also performed independent research and found limited financial information for the years 2013, 2014 and 2015 on the Accounting and Corporate Regulatory Authority of Singapore (ACRA) website. The information on this website revealed that from 2013 through 2015, First Aid Research PTE started generating revenue and limiting its losses. While losses are still reported, this is not uncommon with a company in the start-up phase. In addition, the Company continues to attract outside investment.  It secured additional financing of $2.5 million in 2013 and an additional $12.0 million in 2014 for a total of approximately $14.5 million in additional financing. In 2015, it appears the Company was able to absorb its losses without taking on additional outside financing.

The ACRA website showed the total number of shares First Aid Research PTE issued and the value of those shares as of January 31, 2013. We calculated the book value per share as of January 31, 2013 as $1.60 USD per share, summarized below. We do not have enough information available to determine the current value of these shares.



| Shareholder and Conversion Data on January 31, 2013 | | | | | | |
|---|---|---|---|---|---|---|
| Value ($SGD) | Shares | $SGD/Share | Conversion Rate | $USD Value | $USD/Share | |
| $  29,477,514 | 14,859,646 | $      1.98 | 0.8077656 | $   23,810,923 | $        1.60 | |

*Source: Business Profile of Advanced First Aid Aid Research PTE, LTD from the
Accounting and Corporate Regulatory Authority of Singapore.*

The value of the shares as of January 31, 2013, the increase in revenue from 2013 through 2015, the decrease in losses, and the additional financing of First Aid Research PTE all indicate the Company has value. However, as noted above, due to the sparse and inconsistent information currently available to us, we cannot opine as to the value of the company or Mr. Wyles' 1% interest in it. If we receive sufficient financial information related to First Aid Research PTE, to allow us to perform a valuation, we will supplement our report accordingly.

### Defendants' Breach of Fiduciary Duty

The online Legal Dictionary has a concise definition of a "fiduciary" as "An individual in whom another has placed the utmost trust and confidence to manage and protect property or money. The relationship wherein one person has an obligation to act for another's benefit."[17]

As the owner of Aluminaid with control over the Company's finances, Mr. Freer owed a fiduciary duty to the shareholders and creditors of Aluminaid. Examples of business behaviors that show Mr. Freer's failure to comply with his fiduciary duty follow.

1. Paying personal expenses of Mr. Freer and his family from Aluminaid bank accounts.
2. Transferring funds back and forth among the bank accounts of Aluminaid as well as the bank accounts of other companies Mr. Freer owned that were unrelated to the Aluminaid entities.
3. Exposing the Company to risk due to failure to comply with State or Federal tax regulations.

---

[17] Source: http://legal-dictionary.thefreedictionary.com/fiduciary+duty



4. Withholding key financial information from shareholders and key personnel.
5. Failing to fulfill his duty to arrange for reporting and submitting payroll withholding information and deposits.
6. Not informing Mr. Wyles in his role as a shareholder of corporate changes and transferring away his corporate asset without fair compensation.
7. Paying himself in preference to the Company's creditors.

Allen Sussman and Loeb & Loeb LLP participated in the breach of fiduciary duty by failing to prevent the Company's principals from violating the interests of the Company and its shareholders, failing to use their positions as legal counsel and corporate secretary to prevent the fraud, and approving a waiver of liability in favor of Mr. Freer.

## Other Matters
*Withdrawals from Retirement Lent to Wyles' Law Firm*
After his termination by Mr. Freer/Aluminaid, Mr. Wyles withdrew $44,016.51 from retirement accounts to start up and fund his law firm. Interest was accrued at 8% calculated at each balance change and totals $8,196.53 through the estimated last day of trial. The total balance with interest is now $53,113. Because the money was withdrawn from retirement accounts, a penalty was assessed at the time the tax returns were filed. Those penalties plus statutory interest will be added to the damages when we have received the penalty amounts.

*California Law Suit*
Mr. Wyles paid $163,294 in fees and costs to defend the California law suit and Colorado Supreme Court complaint filed by Aluminaid International, AG and Aluminaid, Inc. Statutory interest of $61,107 calculated at 8% compounded annually was added to the fees and costs, for a total damage of $224,401. See Schedule 9 for details of this calculation.

## Supplementation Requirement
This report is being supplied prior to the completion of discovery. Because economic analysis is dependent on the application of the appropriate connection of theory and causation to the relevant facts and circumstances, relevant material information may and frequently does become available even through the trial process that changes



the damages when the appropriate methodology is applied to the new facts and circumstances. Should such circumstances arise, and in compliance with our duty to update our opinions for new information received based on the concepts contained in Federal Rule 26(e)(1), and similar Colorado rules we will update this report or any deposition testimony or provide the additional or corrective information to the other party if it appears necessary to present a reliable opinion. We also note that any liability determination will have a direct effect on how the economic analysis should be performed.

## Conclusions

As a result of performing the procedures and analyses as described above, in addition to the specific opinions above, I have the following general opinions.

1. Actions of Defendants in not protecting the interests of the shareholders when they became aware of the fraudulent transfers of cash and others assets from Aluminaid harmed Mr. Wyles and other investors by reducing the value of Aluminaid. Note: as additional information becomes available through discovery, the amount of lost value will be evaluated.

2. Mr. Wyles' termination eliminated his agreed to compensation, including the contractual payments relating to patents recorded for the benefit of Aluminaid. See attached Schedules 1 - 7 for a summary of the damages.

3. Mr. Wyles' 1% interest in Aluminaid was transferred away from Mr. Wyles. Mr. Wyles is owed either the shares or compensation for the shares representing his interest in Aluminaid.

4. When Mr. Freer and other Defendants breached their fiduciary duty to Aluminaid's shareholders by reducing its value through fraudulent transfers of its assets and self-dealing. Note: as additional information becomes available through discovery, the amount of lost value will be evaluated.

5. After his termination by Mr. Freer/Aluminaid, Mr. Wyles withdrew $44,016.51 from retirement accounts to start up and fund his law firm. Interest was accrued at 8% calculated at each balance change and totals $8,196.53



through the estimated last day of trial. The total balance with interest is now $53,113. Because the money was withdrawn from retirement accounts, a penalty was assessed at the time the Federal income tax returns were filed. Those penalties plus statutory interest will be added to the damages when we have received the penalty amounts. See Schedules 1 through 7.

6. Mr. Wyles was not paid his agreed to compensation for 2013. We have calculated the backpay that is due to Mr. Wyles, along with the penalty. See Schedule 8.

7. Mr. Wyles paid $163,294 personally in fees and costs to defend the California law suit and Colorado Supreme Court complaint filed by Aluminaid International, AG and Aluminaid, Inc. Statutory interest of $61,107 calculated at 8% compounded annually was added to the fees and costs, for a total damage of $224,401. See Schedule 9 for details of this calculation.

8. Given the actions of Mr. Freer in failing to safeguard the assets of Aluminaid and failing to taking appropriate actions to protect the corporate shield, piercing the corporate veil and reverse piercing to Mr. Freer may be appropriate.

## Other Matters

This report may be used only in connection with the matter defined above and is not intended for, and may not be used for other purposes or by anyone not directly involved in this matter. It is based solely upon the information received to date, which is believed to be accurate and reliable. To the extent that additional information becomes available, revisions to this report may be appropriate.

I reserve the right to supplement or modify the opinions upon which I expect to testify, add to the bases and reasons for my opinions and supplement the schedules that I may use at trial for any of the following reasons: (1) in rebuttal, (2) in response to new information, (3) in response to Defendants' discovery responses, including depositions. Because discovery is on-going, it is possible that this report will be supplemented when additional information is produced or discovered in response to



production requests or via the deposition discovery process or answers to pending interrogatories.

I may use some or all of the documents referenced in this report and the attached Schedules as exhibits. I may also use copies of my resume and required disclosures as exhibits. Further, I reserve the right to use any of the Defendants' materials or documents as exhibits and may use additional documents or material to rebut any testimony of Defendants or Defendants' experts.

## Disclosures

In addition to the above referenced Schedules, included with this report are Attachments that provide the following information. Attachment I is a listing of all materials considered in preparing this report, which will be included with the file production. Attachment II is my current resume. Attachment III is a listing of all cases for which, within the prior four years, I have given sworn testimony. Attachment IV lists all articles that I have authored and had published in the prior ten years.

My current hourly rate is $390 per hour. All billings are based on hours incurred for analysis, preparation and testimony at trial at our normal and usual hourly rates. Our fee schedule is included in our file production. We have not prepared or submitted any billings to date. Unbilled time through May 4, 2015 is approximately $21,000.

**HARPER HOFER & ASSOCIATES, LLC**

Melinda M. Harper, CPA/ABV/CFF, CFE

Schedules
Attachments

# Lost Earnings

Terrence M. Wyles v. Aluminaid International, A.G., et al.                                          Schedule 1

## Key Dates and Information

| | | Date | Age |
|---|---|---|---|
| Mr. Wyles' Date of Birth | [1] | 11/18/1958 | |
| First started working for related companies (approx) | [1] | 5/1/2012 | 53.5 |
| Date of Employment Agreement | [2] | 10/12/2012 | 53.9 |
| Date Mr. Wyles terminated from Aluminaid | [3] | 4/5/2013 | 54.4 |
| Lost Earnings Damages start | | 4/6/2013 | 54.4 |
| Mr. Wyles establishes Startup IP Law, LLC | [1] | Apr-13 | |
| Lawsuit filed against Mr. Wyles | [1] | 7/26/2013 | 54.7 |
| First Patent Issued (8530720) | [1] | 9/10/2013 | 54.8 |
| Press releases published | [1] | Jul-15 | |
| Second Patent Issued (9271875) | [1] | 3/1/2016 | 57.3 |
| Lawsuit against Mr. Wyles Dismissed | [1] | 10/27/2016 | 57.9 |
| Mediation/Trial Date | | 9/7/2018 | 59.8 |
| End of Worklife Expectancy (WLE) per Table | [4] | 5/29/2028 | 69.5 |

*[1] Per Mr. Wyles.*

*[2] Source: Employment Agreement.*

*[3] Source: Termination Letter from Aluminaid, Inc.*

*[4] Mr. Wyles was approximately 54.4 years old when he was terminated by Aluminaid. The worklife expectancy for a 54.4 year old male with a Professional or PhD Degree:*

| | | | |
|---|---|---|---|
| *Mr. Wyles' age* | *54.4* | | |
| *Ages per Table:* | | *54.00* | *55.00* |
| *WLE Means per Table:* | | *15.46* | *14.64* |
| *Calculated Worklife Expectancy* | *15.15* | *years to age 69.5* | |

*Source: Journal of Forensic Economics Table 11: Characteristics for Initially Active Men with a Professional or PhD Degree.*

*Additionally, Mr. Wyles confirmed in an interview that he will likely work until approximately age 70.*

This analysis is for your use solely in connection with the above
referenced matter and may not be used for any other purpose.                    Harper Hofer & Associates, LLC

Terrence M. Wyles v. Aluminaid International, A.G., et al.

Schedule 2

## "But for" Earnings and Benefits Details

**WAGES [1]**

| | |
|---|---:|
| Annual Salary | $150,000 |
| Bonuses (paid if Aluminaid is profitable) | |
|   U.S. Patent Issued 9/10/2013 | $50,000 |
|   U.S. Patent Issued 3/1/2016 | $50,000 |
| **Total Wages** | 250,000 |

**COMMISSIONS ON EMPLOYER EARNINGS [1]**

| | |
|---|---:|
| $5,000,000 to $9,999,999 EBITDA | 0.5% |
| Equal or Greater to $10,000,000 | 1.0% |
| Maximum | 500,000 |

| | |
|---|---:|
| **Salary Growth Rate [2]** | 2.7% |
| **Benefits as a % of Salary + Benefits [3]** | 32.1% |

*[1] Source: Employment Agreement. Note: maximum annual wages of $350,000. Dates patents issued per Mr. Wyles.*

*[2] Source: Consumer Price Index for Denver Area, all items, average change from 1994-2013 (20 years).*

*[3] Source: Bureau of Labor Statistics Employer Costs for Employee Compensation benefits as a percent of total compensation equate to 32.1% of the employee's wages plus benefits (this is the average for 2015 through 2017).*

This analysis is for your use solely in connection with the above referenced matter and may not be used for any other purpose.

Harper Hofer & Associates, LLC

Terrence M. Wyles v. Aluminaid International, A.G., et al.   Schedule 3

**Actual and "As Now Anticipated" Earnings**

| | Actual Earnings History | | | | | | | | As Now Anticipcated | | | Growth Rate |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 2010 | 2011 | 2012 | 2013 | 2014 | 2015 | 2016 | 2017 | 2018 | 2019 | 2020 | |
| | [1] | [2] | [3] | [4] | [4] | [4] | [4] | [4] | [5] | [5] | [5] | [6] |
| **INCOME** | | | | | | | | | | | | |
| Salary - Leyendecker & Lemire | $64,627 | $89,572 | $26,330 | | | | | | | | | |
| Salary - Aluminaid | | | $95,469 | | | | | | | | | |
| Pre-Tax Income - Startup IP Law, LLC | | | | $66,958 | $79,286 | $53,707 | $34,060 | $44,942 | $59,721 | $74,499 | $89,278 | |
| **TOTAL INCOME** | $64,627 | $89,572 | $121,799 | $66,958 | $79,286 | $53,707 | $34,060 | $44,942 | $59,721 | $74,499 | $89,278 | 5.0% |

[1] Source: Social Security Earnings Record for Mr. Wyles.

[2] Source: Form W-2 from Leyendecker & Lemire, LLC.

[3] Source: Forms W-2 from Leyendecker & Lemire, LLC and Aluminaid.

[4] Source: Startup IP Law, LLC annual profit and loss statements 2013-2017. Litigation-related legal expenses were removed. According to Ms. Bechtolt (Mr. Wyles' wife), client-related expenses were reimburseable costs; therefore, we removed those expenses and related revenues from the pre-tax income amounts on this schedule.

[5] Annualized income for Startup IP Law, LLC in 2013 (April-December pre-tax income annualized to a full year) is $89,278. We made the assumption that given Startup IP Law, LLC's growth from 2016 to 2017, the company will likely reach 2013 annualized pre-tax income in three years (2020). Therefore, we incrementally increased the "As Now Anticipated" earnings so that they would reach 2013 annualized pre-tax income by 2020 (an increase of $14,779 each year).

[6] Source: Robert Half 2016 and 2017 Salary Guides for the Legal Field. 4.0% is the percent change of Salaries for Legal Professionals in the United States, Lawyers with 10+ years' experience in a small law firm between 2015 and 2016. 5.9% is the percent change of Salaries for Legal Professionals in the United States, Lawyers with 10+ years' experience in a small law firm between 2016 and 2017. The average of these two increases is 5%.

This analysis is for your use solely in connection with the above referenced matter and may not be used for any other purpose.

Harper Hofer & Associates, LLC

Terrence M. Wyles v. Aluminaid International, A.G., et al.
**Summary of Lost Earnings Damages**

| | |
|---|---:|
| ***Lost Earnings*** | |
| *Aluminaid Employment to Retirement* | |
| Earnings: As Planned | $12,630,544 |
| Earnings: As Now Anticipated | (1,318,217) |
| Lost Earnings | 11,312,327 |
| Interest | 799,184 |
| Discounting | (983,154) |
| **Net Lost Earnings** | **$11,128,356** |

This analysis is for your use solely in connection with the above referenced matter and may not be used for any other purpose.

Harper Hofer & Associates, LLC

Schedule 5

Terrence M. Wyles v. Aluminaid International, A.G., et al.
**Analysis of Lost Earnings**
**Aluminaid Employment to Retirement**

| Age | Date | Period | As Planned/But for | | | | | Actual & As Now Anticipated | | | | | Lost Earnings | Interest 8% | [7] Discount 2.96% | Lost Earnings with Interest and Discounting |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | [1] Salary | [2] Benefits | [3] Increase to Base Salary | [4] Commission | Total Earnings | [5] Income | [6] Benefits | [6] Increase to Base Salary | [6] Commission | Total Earnings | | | | |
| *Past Period Losses* | | | | | | | | | | | | | | | | |
| 54.4 | 4/5/2013 | | | | | | | | | | | | | | | |
| | 12/31/2013 | 0.7 | $150,000 | - | $15,342 | $169,976 | $335,318 | $66,958 | $ - | $ - | $ - | $66,958 | $268,360 | $127,593 | | $395,954 |
| | 12/31/2014 | 1.7 | 150,000 | - | 50,000 | 500,000 | 700,000 | 79,286 | - | - | - | 79,286 | 620,714 | 235,857 | | 856,571 |
| | 12/31/2015 | 2.7 | 154,045 | 72,686 | 50,000 | 500,000 | 776,731 | 53,707 | - | - | - | 53,707 | 723,024 | 200,873 | | 923,897 |
| | 12/31/2016 | 3.7 | 158,199 | 74,646 | 91,781 | 500,000 | 824,626 | 34,060 | - | - | - | 34,060 | 790,566 | 144,759 | | 935,325 |
| | 12/31/2017 | 4.7 | 162,464 | 76,659 | 100,000 | 500,000 | 839,123 | 44,942 | - | - | - | 44,942 | 794,181 | 75,775 | | 869,956 |
| | 9/7/2018 | 5.4 | 113,965 | 53,775 | 68,306 | 341,530 | 577,576 | 40,793 | - | - | - | 40,793 | 536,783 | 14,326 | | 551,109 |
| **Total Past Period Loss** | | | $888,673 | $277,766 | $375,429 | $2,511,506 | $4,053,374 | $319,746 | $ - | $ - | $ - | $319,746 | $3,733,629 | $799,184 | $ - | $4,532,812 |
| *Future Period Losses* | | | | | | | | | | | | | | | | |
| | 12/31/2018 | 5.7 | 52,880 | 24,951 | 31,694 | 158,470 | 267,995 | 18,928 | - | - | - | 18,928 | 249,067 | | (1,141) | 247,926 |
| | 12/31/2019 | 6.7 | 171,344 | 80,849 | 100,000 | 500,000 | 852,193 | 74,499 | - | - | - | 74,499 | 777,694 | | (18,260) | 759,434 |
| | 12/31/2020 | 7.7 | 175,965 | 83,029 | 100,000 | 500,000 | 858,994 | 89,278 | - | - | - | 89,278 | 769,716 | | (39,696) | 730,020 |
| | 12/31/2021 | 8.7 | 180,709 | 85,268 | 100,000 | 500,000 | 865,977 | 93,697 | - | - | - | 93,697 | 772,281 | | (60,900) | 711,381 |
| | 12/31/2022 | 9.7 | 185,582 | 87,567 | 100,000 | 500,000 | 873,149 | 98,335 | - | - | - | 98,335 | 774,815 | | (81,605) | 693,210 |
| | 12/31/2023 | 10.7 | 190,587 | 89,928 | 100,000 | 500,000 | 880,515 | 103,202 | - | - | - | 103,202 | 777,313 | | (101,847) | 675,465 |
| | 12/31/2024 | 11.7 | 195,726 | 92,353 | 100,000 | 500,000 | 888,079 | 108,311 | - | - | - | 108,311 | 779,768 | | (121,663) | 658,105 |
| | 12/31/2025 | 12.7 | 201,003 | 94,844 | 100,000 | 500,000 | 895,847 | 113,672 | - | - | - | 113,672 | 782,175 | | (141,029) | 641,146 |
| | 12/31/2026 | 13.7 | 206,424 | 97,401 | 100,000 | 500,000 | 903,825 | 119,299 | - | - | - | 119,299 | 784,526 | | (159,928) | 624,597 |
| | 12/31/2027 | 14.7 | 211,990 | 100,028 | 100,000 | 500,000 | 912,017 | 125,204 | - | - | - | 125,204 | 786,813 | | (178,391) | 608,422 |
| | 5/29/2028 | 15.2 [8] | 89,544 | 42,251 | 41,130 | 205,652 | 378,578 | 54,046 | - | - | - | 54,046 | 324,531 | | (78,693) | 245,838 |
| **Total Future Period Losses** | | | $1,861,753 | $878,470 | $972,824 | $4,864,122 | $8,577,170 | $998,472 | $ - | $ - | $ - | $998,472 | $7,578,698 | $ - | $ (983,154) | $6,595,544 |
| **Total Lost Earnings Damages** | | | $2,750,426 | $1,156,236 | $1,348,254 | $7,375,628 | $12,630,544 | $1,318,217 | $ - | $ - | $ - | $1,318,217 | $11,312,327 | $799,184 | $ (983,154) | $11,128,356 |

Rounded **$11,130,000**

This analysis is for your use solely in connection with the above referenced matter and may not be used for any other purpose.

Harper Hofer & Associates, LLC

Terrence M. Wyles v. Aluminaid International, A.G., et al.

**Analysis of Lost Earnings - Footnotes**

**Aluminaid Employment to Retirement**

Schedule 5
Footnotes

[1]   According to the Employment Agreement, Mr. Wyles' annual base salary was $150,000 per year. According to Mr. Wyles, there was an Initial Public Offering (IPO) in approximately 2015. He believes that at that time, Aluminaid would have started operating in post-startup mode and would have begun giving cost of living adjustments at that time. Therefore, starting in 2015, we grew the $150,000 "but for" base salary by 2.7% which is the Consumer Price Index for Denver Area, all items, average change from 1994-2013 (20 years).

[2]   As mentioned above, there was an IPO in approximately 2015. Mr. Wyles believes that the company would have started providing benefits to its employees at that time. According to the Bureau of Labor Statistics Employer Costs for Employee Compensation new release text dated March 20, 2018, benefits equate to 30.4% of the employee's wages plus benefits. Therefore, starting in 2015 we calculated "but for" benefits at 30.4% of Mr. Wyles' salary plus benefits.

[3]   According to Section 4.a. of Mr. Wyles' Employment Agreement, Aluminaid was to increase his base salary if he met certain performance objectives, including the issuance of U.S. patents. The issuance of U.S. patents was to increase his base salary by $50,000 per patent, up to $350,000 total base salary. We were informed that one U.S. patent was issued on September 10, 2013 and a second U.S. patent was issued on March 1, 2016. Therefore, we calculated Mr. Wyles' "but for" salary increases as $50,000 at the time each of these patents were issued. Note: we were informed by Mr. Wyles that additional patents could have been issued, but they were not pursued by Aluminaid. Had these patents been issued, Mr. Wyles would be owed additional monies; these possible additional amounts have not been calculated in this analysis.

[4]   Mr. Wyles' "but for" commission is based on Aluminaid's anticipated EBITDA (earnings before interest, taxes, depreciation, amortization) per its Business Plan. In each of the three projected years (2013-2015), Aluminaid anticipated EBITDA of more than $10,000,000. According to Mr. Wyles' Employment Agreement with Aluminaid, he was owed 1% of the company's EBITDA, capped at $500,000 annually. Mr. Wyles would have earned this capped amount in both 2014 and 2015 had the company's earnings been consistent with the business plan. We anticipate that Aluminaid's EBITDA would have grown into perpetuity, therefore owing Mr. Wyles $500,000 each year of his employment.

[5]   Mr. Wyles' actual income for 2013-2017 is based on the annual profit and loss statements of Startup IP Law, LLC for those years. Litigation fees were not included. Additionally, according to Ms. Bechtolt (Mr. Wyles' wife), client-related expenses were reimburseable costs; therefore, we removed those expenses and related revenues from the pre-tax income amounts for 2013-2017.  Mr. Wyles' "As Now Anticipated" 2018-2020 income is based on the assumption that Startup IP Law, LLC will reach 2013's annualized pre-tax income ($89,278) by 2020. Therefore, we incrementally increased the pre-tax income in these three years so that 2020's pre-tax income is $89,278. We then grew the "As Now Anticipated" 2020 earnings by 5%, which is the average salary increase for lawyers between 2015 and 2017. See Schedule 3 for more details.

**Terrence M. Wyles v. Aluminaid International, A.G., et al.**

## Analysis of Lost Earnings - Footnotes
## Aluminaid Employment to Retirement

Mr. Wyles' "Actual and As Now Anticipated" earnings have been affected by the lawsuit filed against him in July 2013 and the subsequent issuance of press releases starting in July 2015 that tarnished his name. These impacts can be seen on Schedule 6, which charts Startup IP Law, LLC's monthly and annual revenue and notes these dates.

[6]  Since Mr. Wyles operates as a single member LLC, he does not receive any firm paid benefits, salary, or commission. His earnings are his pre-tax profits.

[7]  The discount rate is the 20 Year Treasury constant maturity for April 2018 per the Federal Reserve Statistical Release.

[8]  *Mr. Wyles was approximately 54.4 years old when he was terminated by Aluminaid. The worklife expectancy (WLE) for a 54.4 year old male with a Professional or PhD Degree:*

| | | | |
|---|---|---|---|
| Mr. Wyles' age | 54.4 | | |
| Ages per Table: | | 54.00 | 55.00 |
| WLE Means per Table: | | 15.46 | 14.64 |
| Calculated Worklife Expectancy | 15.15 | | |

*Source: Journal of Forensic Economics Table 11: Characteristics for Initially Active Men with a Professional or PhD Degree.*

This analysis is for your use solely in connection with the above referenced matter and may not be used for any other purpose.

Harper Hofer & Associates, LLC

Terrence M. Wyles v. Aluminaid International, A.G., et al.                    Schedule 6

## Startup IP Law, LLC's Monthly and Annual Revenue



This analysis is for your use solely in connection with the above
referenced matter and may not be used for any other purpose.

Harper Hofer & Associates, LLC

Aluminaid International, A.G., et al.

**Schedule 7**

## Aluminaid EBITDA

| | 2013 | 2014 | 2015 |
|---|---|---|---|
| Sales | $37,995,822 | $202,668,300 | $246,024,000 |
| Cost of Goods Sold | 18,154,580 | 95,532,378 | 115,949,664 |
| Gross Margin | 19,841,242 | 107,135,922 | 130,074,336 |
| Operating Expenses | 3,123,472 | 6,184,884 | 6,837,657 |
| Profit Before Interest and Taxes | 16,717,770 | 100,951,038 | 123,236,679 |
| EBITDA | $16,997,595 | $101,423,538 | $123,709,179 |

*Source: Aluminaid Business Plan.*

**Commissions per Employment Agreement**

| | | 2013 | 2014 | 2015 |
|---|---|---|---|---|
| $5,000,000 to $9,999,999 EBITDA | 0.5% | | | |
| Equal or Greater to $10,000,000 | 1.0% | $169,976 | $1,014,235 | $1,237,092 |
| Maximum | 500,000 | | 500,000 | 500,000 |
| **"But for" Commissions** | | **$169,976** | **$500,000** | **$500,000** |

This analysis is for your use solely in connection with the above
referenced matter and may not be used for any other purpose.

Harper Hofer & Associates, LLC

Aluminaid International, A.G., et al.

**Analysis of Back Pay and Penalties**

Schedule 8

| | | | |
|---|---|---|---|
| [1] | Annual Base Salary | | $150,000 |
| | Divided by 365 Days per Year | | 365 |
| | Daily Amount | | $410.96 |
| | | | |
| [2] | Start Date | | 1/1/2013 |
| | End Date | | 4/5/2013 |
| | Number of Days | | 94 |
| | | | |
| [3] | Total Back Pay | | $38,630 |
| | **Penalties per Colorado Wage Act:** | | |
| [4] | 125% of wages up to $7,500 | | $9,375 |
| [4] | 50% of wages exceeding $7,500 | | $15,565 |
| | Total Penalties | | $24,940 |
| | | | |
| | Back Pay Plus Penalties | | $63,570 |
| | | | |
| [5] | **Statutory Interest** | | $32,627 |
| | | | |
| | **Back Pay + Penalties + Interest** | | **$96,197** |

[1] Base salary per Employment Agreement is $150,000.

[2] For purposes of this calculation, we assumed Aluminaid did not pay Mr. Wyles any monies in 2013. If we receive additional documentation showing amounts paid in 2013, we will update our analysis as appropriate.

[3] Calculated as daily salary amount times number of days.

[4] Per Colorado Wage Act, section 8-7-109(3)(b)

[5] Calculated at 8% compounded annually from May 20, 2013 (14 days after written demand) through September 7, 2018 (the expected last day of trial).

Note: Mr. Wyles made a written demand for pay on April 6, 2013 (Source: Email from Terrence Wyles to Allen Sussman, dated April 6, 2013). We reviewed the affidavit prepared by Mr. Wyles, but made our own indpendent calculations based upon documents and information we have received.

This analysis is for your use solely in connection with the above referenced matter and may not be used for any other purpose.

Aluminaid International, A.G., et al.                                                         Schedule 9
**Legal Fees Plus Interest**

| Date | Payment | Interest |
|------|---------|----------|
| 8/30/2013 | $10,000 | $4,717 |
| 8/30/2013 | $10,000 | $4,717 |
| 10/14/2013 | $13,085 | $5,991 |
| 10/14/2013 | $10,000 | $4,578 |
| 10/16/2013 | $10,000 | $4,572 |
| 11/1/2013 | $16,360 | $7,400 |
| 2/12/2014 | $1,470 | $619 |
| 2/25/2014 | $10,000 | $4,173 |
| 5/5/2014 | $5,956 | $2,363 |
| 8/13/2014 | $2,793 | $1,027 |
| 9/30/2014 | $14,781 | $5,231 |
| 10/17/2014 | $5,000 | $1,745 |
| 10/24/2014 | $7,734 | $2,684 |
| 11/24/2014 | $5,000 | $1,692 |
| 2/26/2015 | $5,000 | $1,560 |
| 4/24/2015 | $5,000 | $1,482 |
| 10/12/2015 | $5,000 | $1,253 |
| 12/15/2015 | $5,000 | $1,169 |
| 2/23/2016 | $5,000 | $1,079 |
| 3/4/2016 | $5,000 | $1,066 |
| 3/14/2016 | $5,000 | $1,053 |
| 5/27/2016 | $115 | $22 |
| 7/29/2016 | $2,000 | $352 |
| 10/13/2016 | $2,000 | $315 |
| 2/27/2017 | $1,000 | $125 |
| 3/10/2017 | $1,000 | $122 |
| Total | $163,294 | $61,107 | **$224,401** |

*Interest is calculated at 8% compounded annually
from date of payment through September 7, 2018 (the
expected last day of trial).*

This analysis is for your use solely in connection with the above
referenced matter and may not be used for any other purpose.                    Harper Hofer & Associates, LLC

Terrence M. Wyles v. Aluminaid International, A.G., et al.                    **Attachment I**

# Documents Received and Obtained through May 7, 2018

**Document Name**

| |
|---|
| 00. TABLE OF CONTENTS.PDF |
| 1. DECLARATION OF PATRICK JOSEPH SANDOVAL.PDF |
| 10. EMAIL FROM PETER ANTICO TO JONATHAN HODES, DATED 3-4-13.PDF |
| 11. EMAIL FROM ALLEN SUSSMAN TO TERRENCE WYLES, DATED 4-5-13.PDF |
| 12. EMAIL FROM TERRENCE WYLES TO ALLEN SUSSMAN, DATED 4-6-13.PDF |
| 13. LETTER FROM LOEB & LOEB TO TERRENCE WYLES, DATED 6-17-13.PDF |
| 14. DECLARATION OF TOM BRADY.PDF |
| 15. PLAINTIFF'S DISCOVERY REQUESTS TO DEFENDANT ALUMINAID, INC..PDF |
| 16. PLAINTIFF'S DISCOVERY REQUESTS TO DEFENDENT ALUMINAID INT'L A.G..PDF |
| 17. PLAINTIFF'S DISCOVERY REQUESTS TO DEFENDANT ALUMINAID PTE, LTD..PDF |
| 18. EMAIL FROM SAMUAL VENTOLA TO ROB ZAVAGLIA AND KATHARINE JENSEN, DATED 6-14-17.PDF |
| 180117 ORDER DEFAULT JUDGMENT.PDF |
| |
| 19. OBJECTIONS AND RESPONSES TO PLAINTIFF'S DISCOVERY REQUESTS TO DEFENDANT ALLEN SUSSMAN.PDF |
| 2. ALUMINAID BUSINESS PLAN.PDF |
| 20-YEAR TREASURY INFLATION-INDEXED SECURITY.XLS |
| |
| 20. OBJECTIONS AND RESPONSES TO PLAINTIFF'S DISCOVERY REQUESTS TO DEFENDANT LOEB & LOEB.PDF |
| 2002-2014_EXAMPLE_BIOTECH-INDUSTRY IPOS_001917.XLSX |
| 2012-ALUMINAID_INC_FINANCIAL_STMTS.PDF |
| 2012.12.12 EMAIL TO CHAREL ARENDT RE FUNDING.PDF |
| 20121012--TMWYLES-ALUMINAID_EMPLOYMENT_AGREEMENT.PDF |
| 20121206__ALUMINAID_BUSINESS_PLAN_FINAL_12_6.PDF |
| 2012_ALUMINAID_BALANCE_SHEET.PDF |
| 2012_ALUMINAID_P&L_STMT.PDF |
| 2012_ALUMINAID_STMT_OF_CASHFLOWS.PDF |
| 2012_ALUMINAID_W2_FORM_FOR_TMWYLES.PDF |
| 2012_COMM_BANKS_OF_COLO__ALUMINAID_45389496_.PDF |
| 2013-03-27----BIZFILE_REPORT_ON_201303161E_ALUMINAID PTE LTD.PDF |
| 2013.01.25 EMAIL RE ALUMINAID USERNAME AND PASSWORD.PDF |
| 2013.02.11 EMAIL RE GENERAL ASIA UPDATE.PDF |
| 2013.02.27 EMAIL RE SHAREHOLDER LIST.PDF |
| |
| 2013.03.03----FREER_EMAIL_DISCUSSING_SUSSMAN_FACILITATING_STOCK_SWAP_FOR_SINGAPORE.PDF |
| 2013.03.04----ANTICO-FWDED__E-MAIL_FROM_FREER_ON_VALUATION_REPRESENTATIONS.PDF |
| 2013.03.12 EMAIL RE ALUMINAID TRANSACTIONS.PDF |
| 2013.05.02 EMAIL RE OFFICE SPACE.PDF |
| 2013.05.22 EMAIL TO JOSEPH SANDOVAL.PDF |
| 20130101-20130401_MILESTONES_LIST_000982.XLSX |
| 20130125--WYLES_SIGNATURE_PAGE_FOR_ALUMINAID_SHAREHOLDER_AGMT.PDF |
| 20130130-20130220_SCHEDULE_000409.XLSX |
| 20130327----BIZFILE_REPORT_ON_201303161E_ALUMINAID PTE LTD.PDF |
| 20130327----SUSSMAN SHARES CERTIFICATE IN PTE.PDF |
| 20130729--TMWYLES-CREATED_FLAGS_OF_MISAPPROPRIATION_OF_ALUMINAID_FUNDS.PDF |
| |
| 20130905----PATENT_RIGHTS_ASMT_TO_HARRISBURG_BVI_LTD_BY_ADAM_FREER_AGERSTAM - COPY.PDF |

Terrence M. Wyles v. AluminAid International, A.G., et al.                                      Attachment I

## Documents Received and Obtained through May 7, 2018

| |
|---|
| 20130905----PATENT_RIGHTS_ASMT_TO_HARRISBURG_BVI_LTD_BY_ADAM_FREER_AGERSTAM.PDF |
| 20131024----P&L_PROJECTIONS_FOR_2014-2018__002517.XLSX |
| 20131230_ALUMINAID_PTE_LTD_TEAM_WEBPAGES.PDF |
| 2013_ORG_CHARTS.PDF |
| 2013_P&L_REPORT_AND_BALANCE_SHEET__002784.XLSX |
| 2014.11.04----FORWARDED_EMAIL_FROM_ANTICO----RE_20130313_HODES-TO-SUSSMAN_ALUMINAID_EMAIL.PDF |
| 20140210----ALUMINAID SUMMARY BP.PDF |
| 20140624----VARIOUS_PROEJCTED_P&L_SPREADSHEETS__002785.XLSX |
| 20140912----ALUMINAID_INTL_AG_DISSOLUTION_DOC.PDF |
| 2016.06.28 EMAIL RE LOEB FEES.PDF |
| 2017-03-23 21-29-04 170323 AMENDED COMPLAINT.PDF |
| 2017-09-29 19-12-54 170929 RESPONSES TO INTERROGATORIES - 1.PDF |
| 2017-12-12 15-22-39 171212 AFFIDAVIT SIGNED.PDF |
| 20171015_ADVFARDOTCOM_WEBSITE_SCREEN_CAPTURES.PDF |
| 2017_SALARY_GUIDE_ROBERTHALFLEGAL.PDF |
| 2018-04-24 16-55-10 2018.04.24 ALUMINAID PTE'S SUPPLEMENTAL RESPONSES TO WYLES' DISCOVERY REQUESTS- |
| 3. DEPOSITION OF ALLEN SUSSMAN DATE 7-10-2015.PDF |
| 4. OPTIMISCORP ET AL V. WAITE, ATKINS, SMITH AND HORNE, MEMORANDUM OPINION.PDF |
| 5. GENERAL WAIVER AND RELEASE FROM LIABILITY.PDF |
| 6. REINHART BOERNER VAN DUREN S.S. ET AL V FREER, DECISION AND ORDER.PDF |
| 7. EMAIL FROM ALLEN SUSSMAN TO TERRENCE WYLES, DATED 1-17-13 AND STOCK CERTIFICATE.PDF |
| 8. EMAIL FROM ALLEN SUSSMAN TO MULTIPLE PARTIES, DATED 1-25-13 AND SHAREHOLDER AGMT.PDF |
| 9. POWER OF ATTORNEY EXECUTED BY CARL FREER DATED 11.13.12.PDF |
| ADVANCED FIRST AID RESEARCH PTE LTD CIQREPORT.RTF |
| AFAR - M&A (NEW 1).PDF |
| ALUMINAID AG - WYLES STOCK CERT.PDF |
| ALUMINAID PTE LTD - ABOUT & COREINDEX.PDF |
| ALUMINAID PTE LTD. - 000001-000051.PDF |
| ALUMINAID PTE LTD. - 000052 2013 LEDGER - PROFIT & LOSS.PDF |
| ALUMINAID PTE LTD. - 000053 2013 LEDGER - BALANCE SHEET.PDF |
| ALUMINAID PTE LTD. - 000054-000075 2013 AUDIT REPORT.PDF |
| ALUMINAID PTE LTD. - 000076-000121 2014 AUDIT REPORT.PDF |
| ALUMINAID PTE LTD. - 003552-003593.PDF |
| ALUMINAID PTE LTD. -003194.XLSX |
| ALUMINAID PTE LTD. -003264.XLSX |
| ALUMINAID PTE LTD. -003540.XLSX |
| ALUMINAID PTE LTD. 000133-ALUMINAID PTE LTD. 000136--REDACTED_ACCOUNTING_INVOICE.PDF |
| ALUMINAID PTE LTD. 000278-ALUMINAID PTE LTD. 000285.PDF |
| ALUMINAID SEPT 26.PPT |
| ALUMINAID SHAREHOLDERS AGREEMENT(FINAL DTD 23 JAN 2013).PDF |
| ALUMINAID USA INC_STATUS.PDF |
| ALUMINAID USA, INC.PDF |
| ALUMINAID _2011_AND_2012_FINANCIAL_STMTS.PDF |
| ALUMINAID_ PROVIDING TECHNOLOGY-DRIVEN, WORLD-CLASS FIRST AID – ALUMINAID.PDF |

Terrence M. Wyles v. Aluminaid International, A.G., et al.                    Attachment I

## Documents Received and Obtained through May 7, 2018

| |
|---|
| ALUMINAID_BANK-WIRE-TRANSFER_REQUESTS.PDF |
| ALUMINAID_PTE_TEAM-02.PDF |
| ALUMINAID_PTE_TEAM.PDF |
| APR2012_COMM_BANKS_OF_COLO__ALUMINAID_453894.PDF |
| AUG2012_COMM_BANKS_OF_COLO__ALUMINAID_204.PDF |
| AUG2012_COMM_BANKS_OF_COLO__ALUMINAID_453894.PDF |
| A_R TRANSACTION LISTING.PDF |
| BOLD - KENDALL CV (1 PAGE) 2017-07-30(1).DOC |
| BOLD LEGAL - VENTOLA, SAM ENGAGEMENT LTR 2017-07-10(1).PDF |
| BUSINESS PROFILE - ADVANCED 15.12.15.PDF |
| CHATEAU FIDUCIAIRE 2 (002).PDF |
| CHATEAU FIDUCIAIRE S.A. CF PERSONAL DETAILS.DAT |
| CHATEAU FIDUCIAIRE SA TRUST SETTLOR-BENEFICIARY DETAILS.PDF |
| COLORADO WAGE ACT 8-16-16.PDF |
| COMMERCIAL-STOCK-PRODUCTION_PLAN_002202.XLSX |
| CONFIDENTIAL - 1099-R CB1.PDF |
| CONFIDENTIAL - 1099-R CB2.PDF |
| CONFIDENTIAL - 1099-R TW1.PDF |
| CONFIDENTIAL - 1099-R TW2.PDF |
| CONFIDENTIAL - 2013 K-1.PDF |
| CONFIDENTIAL - 2014 K-1.PDF |
| CONFIDENTIAL - 2015 K-1.PDF |
| CONFIDENTIAL - 2016 K-1.PDF |
| CONFIDENTIAL - 2017 K-1.PDF |
| CONFIDENTIAL - 20180502----TMWYLES_SOCIAL-SECURITY-STATEMENT----EARNINGS RECORD.PDF |
| CONFIDENTIAL - COPY OF 2013-2017 BALANCE SHEET.XLSX |
| CONFIDENTIAL - COPY OF 2013-2017 LOAN ACTIVITY.XLSX |
| CONFIDENTIAL - COPY OF CASH FLOW 2013-2017.XLSX |
| CONFIDENTIAL - COPY OF CASH FLOW BY YEAR.XLSX |
| CONFIDENTIAL - COPY OF P&L BY MONTH-1.XLSX |
| CONFIDENTIAL - TMW_2011-2012_W2_FORMS_FROM_LEYENDECKER&LEMIRE.PDF |
| CPI FROM BLS DENVER AREA ALL ITEMS.XLSX |
| CSB OBSERVATIONS ON 2014 AND 2013 PTE FINANCIAL STATEMENTS.DOCX |
| DEC2012_WELLSFARGO_ALUMINAID_BANK_STMT.PDF |
| DEFINITION OF CONFIDENCE GAME.PDF |
| DEFINITION OF CONFIDENCE MAN.PDF |
| DEFINITION OF FIDUCIARY DUTY.PDF |
| DEFINITION OF RED FLAG.PDF |
| DKSH_PROJECT_SPREADSHEET--DATE_UNKNOWN_001708.XLSX |
| EMPLOYER COSTS FOR EMPLOYEE COMPENSATION DATA TABLE.XLSX |
| EMPLOYER COSTS FOR EMPLOYEE COMPENSATION NEWS RELEASE TEXT.PDF |
| EMPTY_MEANINGLESS_SPREADSHEET_001564.XLS |
| EXPENDITURE SUMMARY.DOCX |
| FEB2012_COMM_BANKS_OF_COLO__ALUMINAID_453894.PDF |
| FEDERAL RESERVE STATISTICAL RELEASE.CSV |
| FRAUD RED FLAGS.PDF |
| FREER-TO-ARENDT_POWER_OF_ATTORNEY.PDF |

Case 2:17-cv-07722-DMG-SK   Document 265-1   Filed 08/28/20   Page 77 of 100   Page ID
#:12607
Terrence M. Wyles v. Aluminaid International, A.G., et al.                    Attachment I

# Documents Received and Obtained through May 7, 2018

| |
|---|
| HARRISBURG (BVI LTD)-01.PDF |
| HARRISBURG (BVI LTD)-02.PDF |
| I180228746.PDF |
| I180228749.PDF |
| I180228750.PDF |
| I180228751.PDF |
| INVOICE.WYLES 10.2.15.PDF |
| INVOICE.WYLES.AMENDED11.6.14.PDF |
| INVOICE.WYLES1.5.17.PDF |
| INVOICE.WYLES10.14.13.PDF |
| INVOICE.WYLES10.2.15.PDF |
| INVOICE.WYLES11.25.15.PDF |
| INVOICE.WYLES11.3.14.PDF |
| INVOICE.WYLES12.2.14.PDF |
| INVOICE.WYLES2.12.14.PDF |
| INVOICE.WYLES2.19.16.PDF |
| INVOICE.WYLES8.13.14.PDF |
| INVOICE.WYLES8.30.13.PDF |
| INVOICE.WYLES9.30.14.PDF |
| JAN2013-DEC2012_WELLSFARGO_ALUMINAID_BANK_STMT.PDF |
| JAN2013_WELLSFARGO_ALUMINAID_BANK_STMT.PDF |
| JUL2012_COMM_BANKS_OF_COLO__ALUMINAID_204.PDF |
| JUL2012_COMM_BANKS_OF_COLO__ALUMINAID_453894.PDF |
| JUN2012_COMM_BANKS_OF_COLO__ALUMINAID_453894.PDF |
| LONG-TERM SUSTAINABLE GROWTH RATE CALCULATION.XLSX |
| MAR2012_COMM_BANKS_OF_COLO__ALUMINAID_453894.PDF |
| MARKET VAL JUSTIFICATIONV8.PDF |
| MAY2012_COMM_BANKS_OF_COLO__ALUMINAID_453894.PDF |
| MEMORANDUM AND ARTICLES OF ASSOCIATION OF ADVANCED FIRST AID RESEARCH PTE.PDF |
| NOV2012_COMM_BANKS_OF_COLO__ALUMINAID_453894.PDF |
| NOV2012_WELLSFARGO_ALUMINAID_BANK_STMT.PDF |
| OCT2012_COMM_BANKS_OF_COLO__ALUMINAID_204.PDF |
| OCT2012_COMM_BANKS_OF_COLO__ALUMINAID_453894.PDF |
| OCT2012_PARTIAL_WELLSFARGO_ALUMINAID_BANK_STMT.PDF |
| OCT2012_WELLSFARGO_ALUMINAID_BANK_STMT.PDF |
| PROPOSED AMENDED CMO (002)__TAM EDITS.DOCX |
| PROTECTIVE ORDER.PDF |
| REAL GROSS DOMESTIC PRODUCT.XLS |
| RESUME 2014.PDF |
| ROBERT_HALF_LEGAL_2016_SALARY_GUIDE.PDF |
| SEP2012_COMM_BANKS_OF_COLO__ALUMINAID_204.PDF |
| SEP2012_COMM_BANKS_OF_COLO__ALUMINAID_453894.PDF |
| SIG PAGE.PDF |
| SINGAPORE_ALUMINAID_PRODUCT-DESCRIPTION_SPREADSHEET_001869.XLSX |
| STARTUP IP LAW - CONFIDENTIAL - P&L.XLSX |
| UNABLE_TO_OPEN----ALUMINAID PTE LTD. -002141.INDD |
| US TREASURY BONDS 20 YEAR MATURITY.XLS |

Terrence M. Wyles v. Alumjprints International, A.G., et al.        **Attachment I**

## Documents Received and Obtained through May 7, 2018

| |
|---|
| VENTOLA - KENDALL EXPERT REPORT 2017-07-30(1).DOCX |
| WEST_HILLS_RESEARCH_AND_DEVELOPMENT_INC__STATUS.PDF |
| WYLES INVOICE1.3.14.PDF |
| WYLES INVOICE5.5.14.PDF |
| WYLES.INVOICE1.7.14.PDF |



**Attachment II**
**MELINDA M. HARPER, CPA/ABV/CFF, CFE**
[harper@HarperHofer.com](mailto:harper@HarperHofer.com)
**(303) 486-0012**

**EMPLOYMENT**

Harper Hofer & Associates, LLC, 1580 Lincoln Street, Suite 1100, Denver, Colorado 80203. 2004 to present. Founding Member.

CBIZ Accounting, Tax & Advisory Services, Greenwood Village, Colorado. 1988 to 2004. Director, Litigation and Valuation Services.

KPMG Peat Marwick, Denver, Colorado. 1977 to 1988. Senior Manager.

U.S. Natural Resources, Inc., Menlo Park, California. 1973 to 1974. Assistant to Treasurer with responsibility for four bank transfer accounts, cash flow forecast data gathering and accounts payable.

K-T Textiles, Inc., Denver, Colorado. 1968 to 1971. Responsibilities included all accounting, including preliminary financial statements; accounts payable and receivable; inventory controls; sales; and customer relations.

The Bon Marche, Seattle, Washington. 1965 to 1968. Assistant Buyer in Girls' Wear, Department Manager for Sewing Notions and Trimmings.

**EXPERIENCE**

Project responsibility has included managing engagements ranging in size from 150 to 10,000 hours, including the completion of all documentation, work papers, and reporting.

Significant engagements include:

- Providing expert testimony and other dispute resolution services, investigatory services, and arbitration and mediation services for situations involving damages, analysis of fraud, business and economic valuations, joint venture and partnership disputes, business divorce, infringement damages and valuations, disciplinary actions relating to misuse of attorneys' trust funds, financial statements, opportunity cost of stay of foreclosure, litigation services standard of care, accounting procedures and practices, business processes and practices, etc.





**Page 2**

- Industry experience includes manufacturing, services, distribution, energy, real estate, environmental, retailing, telecommunications, health care, professional services, technology, gaming, and hospitality.

- Managing engagements assisting major banks and their Counsel relating to bankruptcy and reorganization evaluations in connection with non-performing loans.

- Performing due diligence reviews related to potential acquisitions or loans for potential buyers or lenders.  Industries involved include oil and gas exploration and production, retail office furniture sales and office design services, pipeline operation and design and refining and transportation of oil and related products.

- Tracking, categorizing and accumulating costs associated with the operation and clean-up of a Super Fund site from 1966 until the present.

- Analyzing economic losses relating to personal injury, wrongful death and wrongful termination claims.

- Assessing lost profits claimed in a lender's liability suit against a major savings and loan.

- Providing litigation support and expert testimony in an anti-trust case involving calculations of damages based on investigatory procedures and statistical sampling.

- Managing distributions of a class action settlement fund of $23 million to approximately 200,000 claimants.

- Analyzing impact on results of operations where equipment purchased and installed was alleged to be defective or inappropriately engineered and damages were claimed.  For all engagements, analysis included review of impact on overall operations as well as review of the alleged damages.

- Managing audit of federal and Indian oil and gas royalty settlements by an international oil and gas producer.

- Participating in an extensive study related to the feasibility of building a manufacturing facility to utilize a by-product.

- Managing the audit of a large specialty manufacturer and fabricator with multi-state operations.





- ■    Managing the audit of a small exploration and production company that encompassed all financial records since the company's inception five years earlier.

## EDUCATION

<u>West Virginia University</u>, Morgantown, West Virginia. Degree: Bachelor of Science in Business Administration. Major: Accounting. 1976 to 1977. GPA: 4.0/4.0.

<u>University of Arizona</u>, Tucson, Arizona. 1974 to 1976. GPA: 4.0/4.0. Working toward Bachelor of Science degree with major in Accounting.

<u>Tobe-Coburn School</u>, New York, New York. 1962 to 1965. Certificate with Honors in Merchandising.

<u>Colorado Women's College</u>, Denver, Colorado. 1961 to 1962. GPA: 3.6/4.0. Business courses.

## AWARDS

Elijah Watt Sells Award, Honorable Mention, November 1977 Certified Public Accountants Uniform Examination, given to 69 candidates for papers considered to be exceptional among the 49,000 candidates.

West Virginia's Annual Merit Award for highest grades at a first sitting of the Certified Public Accountants Uniform Exams for 1977.

West Virginia University, Dean's List each semester; Secretary, Beta Alpha Psi, West Virginia University accounting honorary.

1992 American Women's Society of CPA's Public Service Award.

1998 Colorado Society of CPAs Public Service Award.

1994 – 2005 Who's Who in Accounting in <u>The Denver Business Journal</u>.





Page 4

**PROFESSIONAL ACTIVITIES**

Licensed CPA in Colorado, 1978. Originally licensed in West Virginia.

Holder of two credentials granted by the American Institute of Certified Public Accountants; the Accredited in Business Valuation (ABV) designation, received in 1998; and the Certified in Financial Forensics (CFF) designation, received in September 2008.

Received Certified Fraud Examiner designation in 1997.

Author, *PPC's Guide to Litigation Support Services*, 2001 to present.

Member, Colorado Society of CPAs; Member of Professional Conduct Board, 2011-present; Chair of Litigation Support Services Committee, 1985 to 1987; Member of Continuing Education Board, 1987 to 1991; Member of Nominating Committee, 1988 to 1989; Chair of Upward Mobility of Women Committee, 1991 to 1992; Member of Board of Directors, 1992 to 1994.

Member, American Institute of CPAs; Member, Joint Trial Board, 2000 to 2006; Member, Litigation and Dispute Resolution Services Alternate Dispute Resolution Task Force, 1999 to 2001;  Member, Nominating Committee, 1997 to 1999;  Chair, Executive Committee of Management Consulting Services Division, 1995 to 1998; Member, Strategic Planning Advisory Council, 1996 to 1998;  Chair of Litigation and Dispute Resolution Services Subcommittee, 1993 to 1995;  Member of Litigation Services Subcommittee, 1990 to 1993;  Member Accounting Standards Board/Management Consulting Division Task Force on Standards, 1994 to 1995.

Editorial Adviser, *Journal of Accountancy*, 1994 to 1996.

Charter Member, Panel of Experts, *Dunn on Damages, The Economic Damages Report for Litigators and Experts*, 2011 to 2013*.*

**COMMUNITY ACTIVITIES**

Mentor, CFF Mentor Program, American Institute of CPAs, 2014 to present.

Member, Board of Trustees, Attorney's Fund for Client Protection, 2013 to present; Member Flat Fee and Practice Management Taskforces, 2015 to present; Member, Hearing Board, Colorado Supreme Court, State of Colorado, 2002 to the present.

Member, Denver Bar Association, Fee Dispute Committee, 2004 to present.

Member, International Women's Forum, 1991 to present.





**Page 5**

Member, Board of Directors, Colorado HealthOP, 2013 to 2015, Vice Chair, 2014 to 2015. Chair, Compliance and Audit Committee, 2013 to 2015.

Member, Treasurer, The Legal Aid Foundation of Colorado, Inc., 2006 to 2012.

Member, Board of Directors, The Colorado Health Foundation, 2000 to 2009;  Member, Chair, Audit Committee, 2003 to 2009;  Member, Chair, Philanthropy Committee, 2000 to 2007.

Member, Board of Governors, HCA-HealthONE LLC; Member, Audit Committee and Finance Committee, 2007 to 2009.

Board member, Colorado Judicial Institute, 1999 to 2008; Chair, Alternate Dispute Resolution Subcommittee, 1999 to 2001; Treasurer, 2000 to 2004; Member, Event, ADR and Development Committees, 2001 to 2008.

Founding President, The Alliance of Professional Women, 1984 to 1987; Executive Council, 1984 to 1988; Chair of Membership Committee, 1987 to 1989; Member of Outreach Committee, 1990 to 1991; Member of Board of Directors, 1984 to 1991; Member of Emeritus Board. Recipient of Athena Award for Leadership.

Board and Executive Committee member, Colorado I Have a Dream Foundation, 1989 to 1992; Chair of Friends Committee, 1988 to 1991; Mentor to two youths; Recipient of TEAM award in 1991 for mentoring activities.

Founding member, Colorado Women's Leadership Coalition, 1988; Co-Chair, Executive Committee, 1990 to 1993.

Member, Colorado Bar Association Alternative Dispute Resolution Committee, Colorado Pledge Subcommittee, 1990 to 1993.

Member, Commercial, Large Complex Case and Accounting and Related Services Professionals Arbitration Panels and Mediation Panel, American Arbitration Association, 1990 to present; Member, Advisory Council, Rocky Mountain Division, 1990 to 2000; Chair, Panels Subcommittee, 1992 to 1999.

Member, Advisory Board, dcb Construction Company Inc., 1992 to 1995.

Member, Leadership Denver Alumni Association. Member, Class of 1988.

Board member, Colorado Council on Economic Education, 1987 to 1989.



**In the Last Four Years, Melinda Harper has given testimony in the following matters:**

| Date | Jurisdiction | Case Name Plaintiff/Petitioner/Debtor | Defendant/Respondent/Creditor | Client | Deposition/ Hearing/Trial |
|---|---|---|---|---|---|
| Jun-14 | District Court, City and County of Denver, Case Number: 2011CV8565 | Pure Cycle Corporation and Rangeview Metropolitan District | State of Colorado and State Board of Land Commissioners | Plaintiff | D |
| Oct-14 | District Court, Pitkin County, Colorado, Case Number: 2010CV188 | Downtown Aspen Investments, LLC | Aspen Legacy Holdings, LLC | Defendant | T |
| Jan-15 | District Court, Douglas County, Colorado, Case Number: 2010CV2540 | Jacqueline Orr | John A. Millard, M.D. | Plaintiff | T |
| Mar-15 | U.S. District Court, District of Colorado, Case No. 12-cv-00750-WYD-CBS | Phillip W. Wyers and Wyers Products Group, Inc. | Greenberg Traurig, LLP, Mark L. Hogge, Laura M. Klaus and Robert P. Charrow | Plaintiff | H |
| Apr-15 | District Court, Douglas County, Colorado, Case Number: 14CV30453 | Walter A. Peters | Kathleen A. McClure-Orme | Plaintiff | D |
| Apr-15 | U.S. District Court, District of Colorado, Case No. 13-cv-00724-LTB | Ensign United States Drilling Inc. and Ensign United States Drilling (California) Inc. | B & H Rig and Tong Sales and Weatherford U.S. Limited Partnership | Defendant | D |
| Aug-15 | U.S. District Court, District of Colorado, Case No. 1:14-cv-00778-REB-MEH | United States Welding, Inc. | Tecsys, Inc. | Defendant | D |
| Aug-15 | Judicial Arbiter Group, Inc., Case No. 2013-1415A | Kloiber Holdings, LLC and Kloiber Real Estate Holdings, LLC (collectively "Kloiber") individually and as members of Grizzly Cattle, LLC and Grizzly Land, LLC | Kirk A. Shiner and Sopris, LLC | Plaintiff | D |
| Sep-15 | Judicial Arbiter Group, Inc., Case No. 2013-1415A | Kloiber Holdings, LLC and Kloiber Real Estate Holdings, LLC (collectively "Kloiber") individually and as members of Grizzly Cattle, LLC and Grizzly Land, LLC | Kirk A. Shiner and Sopris, LLC | Plaintiff | T |
| Oct-15 | Judicial Arbiter Group, Inc., Case No. 2013-1415A | Kloiber Holdings, LLC and Kloiber Real Estate Holdings, LLC (collectively "Kloiber") individually and as members of Grizzly Cattle, LLC and Grizzly Land, LLC | Kirk A. Shiner and Sopris, LLC | Plaintiff | T |
| Feb-16 | District Court, City and County of Denver, Case Number: 2015CV30777 | Peninsula Holdings, LLC and Baljit S. Nanda | K&G Petroleum, LLC, K&G Stores, Inc., Twin Star Energy, LLC and Preet Singh Puri | Defendant | T |
| Mar-16 | United States Bankruptcy Court, Case Number 09-34404 HRT | David E. Lewis, Chapter 7 Trustee, on behalf of HealthTrio, Inc., Debtor | Healthtrio LLC, Monument Systems LLC, Malik M. Hasan and Seeme Hasan | Plaintiff | T |
| Apr-16 | District Court, Douglas County, Colorado, Case No.: 15CV030006 | Vista FD, LLC | Douglas County Diesel, LLC | Defendant | D |
| Aug-16 | U.S. District Court, District of Colorado, Case No. 14-cv-00778-REB-MEH | United States Welding, Inc. | Tecsys, Inc. | Defendant | D |
| Sep-16 | U.S. District Court, District of Colorado, Case No. 14-cv-00778-REB-MEH | United States Welding, Inc. | Tecsys, Inc. | Defendant | D |
| Oct-16 | District Court, Boulder County, Colorado, Case No. 2015CV030148 | Public Service Company of Colorado | John M. Shaffer; Northern Colorado Water Conservancy District; City of Longmont and Paul Weissmann, in his official capacity as Treasurer of Boulder County, Colorado And Aspen Moon Farms, LLC | Defendant | D |
| Oct-16 | American Arbitration Association, City of Denver Colorado | Israel J. Salazar | MMJ AMERICA, INC., d/b/a BOULDER MMJ, a Colorado Corporation; MMJ AMERICA HOLDING COMPANY, LLC, f/k/a MMJ AMERICA, LLC, a Colorado Limited Liability Company; Mile High Medical, LLC, d/b/a MMJ AMERICA DOWNTOWN, a Colorado Limited Liability Company; 5280 WELLNESS, LLC, d/b/a MMJ AMERICA GOLDEN TRIANGLE, a Colorado Limited Liability Company; JACOB J. SALAZAR, an individual, and EISA Khoury, an individual | Plaintiff | T |
| Apr-17 | District Court, Arapahoe County, Colorado, Case No. 16-1224A | New Castle Properties, Inc. and Treasure Valley Investments, LLC | Kinnickinnic Realty Company | Defendant | D |
| May-17 | District Court, Arapahoe County, Colorado, Case No. 16-1224A | New Castle Properties, Inc. and Treasure Valley Investments, LLC | Kinnickinnic Realty Company | Defendant | T |
| Jun-17 | Judicial Arbiter Group, JAG Case No. 2016-1640A | Fish' N Farm, Inc. and EIO Farm Fresh Foods, LLC | Martin Marietta Materials, Inc. and HSMM, LLC | Plaintiff | D |
| Jun-17 | District Court, Boulder County, Colorado, Case No. 16CV31001 | Thomas J. Harvey | Mitchell Wiens and M.M.A. Design LLC | Plaintiff | T |
| Jul-17 | Judicial Arbiter Group, Case No. 16-1224A | New Castle Properties, Inc. and Treasure Valley Investments, LLC | Kinnickinnic Realty Company | Defendant | T |
| Oct-17 | Judicial Arbiter Group, JAG Case No. 2016-1640A | Fish' N Farm, Inc. and EIO Farm Fresh Foods, LLC | Martin Marietta Materials, Inc. and HSMM, LLC | Plaintiff | T |
| Oct-17 | District Court, Arapahoe County, Colorado, Case No. 17-PR-30044 | Keaton Skudneski, Palmer Skudneski, and Landon Skudneski, Through Kerry Stutzman, as Next Friend | David A. Skudneski, Trusteee and David A. Skudneski, in his individual capacity | Plaintiff | T |
| Feb-18 | FINRA | Bernard S. Black and Samuel H. Black, as Trustees of the Irrevocable Trust for the Benefit of the Issue of Renata Black | J. P. Morgan Chase Bank, N.A., and J.P. Morgan Securities, LLC | Plaintiff | H |

**Attachment IV**

**Articles authored or co-authored by Ms. Harper within the last ten years:**

"Emerging Issues in Electronic Discovery - An Alert for Appraisers", published
in the July 2007 issue of Business Valuation Update.  Author:  Melinda M. Harper.

PPC's Guide to Litigation Support Services, published annually.
Authors: Brian P. Brinig, Douglas R. Carmichael, Raymond P. Ladouceur,
Jay E. Fishman, William C. Barrett, J. Clifford Griffith, Melinda M. Harper.

"Alter Ego Testing and Piercing the Corporate Veil", published in the
Fall 2011 issue of Dunn on Damages. Author: Melinda M. Harper.

"Another Voice: Financial Experts on Reducing Client Costs in Civil Litigation",
published September 21st, 2012 issue of AICPA in partnership with IAALS, Authors:
Ron Durkin, Melinda Harper, Glenn Newman, Thomas Burrage, Sandra Johnigan,
and Ron Seigneur.

"Court Rules and Pilot Programs Intended to Reduce Litigation Costs and Delays",
published in the Spring 2013 issue of Dunn on Damages. Author: Melinda M. Harper.

# EXHIBIT 3

# Email Thread involving Hunt's message to Loeb & Loeb and Wyles' message to Hunt

# EXHIBIT 3

**Print | Close Window**

**Subject:** TERRY - Skype message from Frank, etc. . . .

**From:** James <james@aluminaid.com>

**Date:** Mon, Apr 01, 2013 10:00 am

**To:** Allen Sussman <asussman@loeb.com>

**Cc:** David Warnock <david@aluminaid.com>, Carl Freer <cjf@aluminaid.com>, alex@aluminaid.com, joseph@aluminaid.com

**Attach:** james_email_sig.jpg

Hi Allen,
Below you will see an email from Terry which I believe gives us cause for termination. He has lost the support of the Board as he makes outrageous allegations against the company. We will pick up on this tomorrow.

On Apr 1, 2013, at 11:53 PM, "Terrence M. Wyles, Esq." <Terry.Wyles@aluminaid.com> wrote:

> David,
>
> I am responding to your e-mail regarding the Skype message from Frank and other matters.
>
> As you know, I have been cut-off from all substantive Company communications, so I do not know what is going on with Aluminaid in general. It is ironic that you refer to me as the "Company attorney", when you, James, and Carl are keeping the "Company attorney" completely in the dark on matters I clearly need to know about and advise on in order to meet my legal and fiduciary duties to Aluminaid and its stockholders. In any event, Frank, with Aja being confronted out of the blue with a communication from a government investigator, reached out to me, the "Chief In-House Counsel" when that occurred. I was not expecting a communication from Frank on any topic, let alone this one. Frank then had Aja call me. Aja had very little substantive information to tell me other than they are looking for Carl and Rich, and that Aja gave them Rich's home address in California and simply stated that Carl was somewhere in Singapore, but that she did not know exactly where. Understandably, Aja is extremely upset and nervous. (As an aside, given her past position with Carl, I think that it is quite foolish not to ensure that Aja and Frank have been paid -- it is virtually begging to have someone (Aja) turn against you and offer unfettered assistance to an adverse federal investigation and/or launch a qui tam suit against Aluminaid and/or individual senior officer.) Since I do not enjoy a direct communications channel with Carl, James, and you (ironically, it was you that had asked for a separate channel of communication with me that was undiscoverable by James and Carl, but now pretend to not have engaged in such conversations with me), I communicated directly with Joseph to discuss what I was told so that he could communicate with Senior Management. Here is the Skype thread:
>
> [3/25/2013 12:45:42 PM] Francis Fasanella: Hey terry. How are you
> [3/25/2013 12:49:29 PM] Terrence Wyles: Hi, Frank. Things could be much better, of course. It sucks being owed many weeks of pay with no realistic hope of actually being paid anytime soon. Are you in Colorado now?
> [3/25/2013 12:51:21 PM] Francis Fasanella: I am. Believe you and me. I know what its like to be owed. I don't think we are going to be getting paid at all. Being the purchasing manager, i have however found out he has been paying vendors
> [3/25/2013 12:53:54 PM] Terrence Wyles: He has paid the vendors? Which

ones, and when?
[3/25/2013 12:55:19 PM] Francis Fasanella: I know that Katecho has gotten paid just this weekend. They received wire confirmation from him. Also, California Thermal Solutioms
[3/25/2013 12:56:20 PM] Terrence Wyles: How are you learning about all of this?
[3/25/2013 12:57:38 PM] Francis Fasanella: I have been reaching out to vendors to inform them that we no longer have an office or a job and they have engaged in conversation with me.
[3/25/2013 12:59:16 PM] Francis Fasanella: Aja just recieved a call from some federal agency looking for Rich and carl.
[3/25/2013 1:00:17 PM] Francis Fasanella: I knew something was up after what happened with you and Joseph.
[3/25/2013 1:02:33 PM] Francis Fasanella: I asked her to call you. Her number is 970-618-7096

With regard to the e-mail on the bank statement, I received it from an address called "aluminaid_whistle@hushmail.com", which I was unable to trace.  I saved the pictures of the various pages of the bank statement (obviously from a mobile phone) in the e-mail to construct the statement in pdf format that I later sent you via Dropbox, as you and I had discussed when I first learned about this mess.  I also looked up "hushmail", and it is a Canadian service that provides a way for people to create an untraceable, anonymous e-mail address.  You have the entirety of the bank statement that was anonymously sent to me, and in a separate e-mail, I have forwarded the anonymous e-mail containing 17 digital photos.  What you apparently fail to appreciate, even though you call me the "Company attorney" in your e-mail below, is that when I was confronted with such information, I have a legal and fiduciary responsibility to look into the matter.  (Corporate attorneys in the US have affirmative duties in the US, the breach of which in some fact patterns could lead such attorneys to jail.)  When Joseph convened a conference Skype call between himself, James, David, and me to discuss some alarming findings by our Accountant (again, I had nothing to do with the Accountant's findings), Joseph and I were thrown under the bus immediately afterward by James, despite James telling Joseph that Joseph was doing the right thing and to keep looking into the matter while keeping things quiet until we figured out how to best deal with the situation.  Thus, obviously, as you discussed with me via a Skype chat, we could not trust James on this kind of matter before you had a chance to review the bank statement that I was sent.  I did attempt to look into the matter in good faith and was immediately punished by Senior Aluminaid Management for trying to do my duty, and of course, such actions taken against me were violative of both my employment contract and of the law.  You, David, conveniently exhibited amnesia with regard to our conversations as to how to best handle the bank-statement matter and all that it implicates in order to have James and Carl leave you alone.

I categorically reject your assertions as to my motives with regard to Aluminaid Senior Management.  My duty is to promote Aluminaid and its legitimate corporate goals, ultimately serving the shareholders.  I am not the personal attorney of any individual within Aluminaid, including Carl or James.  There have clearly been, to express it euphemistically, highly questionable (and I would also say reckless) fiscal practices going on within Aluminaid International, AG and its closely held subsidiaries.  So unnecessarily reckless have been the practices that I believe that it would not be very difficult at all for an adverse litigant to convince a federal court to pierce the corporate veil to expose all Aluminaid entities and its Senior Officers to serious personal liability.  In addition, there are numerous serious legal issues implicated by the conduct of Aluminaid fiscal matters, not the least of which involves the potential charge of serious tax evasion, which is illegal, as opposed to mere tax avoidance, which is legal.

I am not the cause of those bad practices, but you wish to lash out and punish me for trying to meet my duties. I wish that someone would try to protect Aluminaid from these practices and to protect Carl from himself so he would not have to escape to the other side of the globe in an attempt to avoid these issues. I will not respond further to any more unfounded accusations.

Finally, I need to know what is going on regarding an IP budget. Forgive me, but it seems to me that enabling me to get an issued US patent for V2 bandages very soon should dramatically help garner investor interest in presentations that Carl conducts. Since there is obviously some funds available for discretionary spending, why is the IP taking a back seat when Aluminaid needs to bolster its perceived value to potential investors now? Since I am not being given any support in furtherance of my position as Chief In-House Counsel (especially on the IP front), nor am I being communicated with in any substantive way by Senior Aluminaid Management, please inform me unambiguously whether Aluminaid intends to terminate my employment pursuant to my Employment Contract. Of course, based on the facts right now, I could reasonably declare that Aluminaid has constructively discharged me (I am not being paid, my efforts to do my job are being aggressively interfered with by Senior Management, Aluminaid Senior Management have materially breached my employment Agreement in numerous ways, etc.), but then that would immediately lead to multiple channels of litigation initiated by me and quite possibly that would lead to other related government-enforcement actions/investigations. I would like to avoid that scenario.

So, without resorting to gratuitous threats to me (most of which would originate from James, I realize), please advise me as to just what it is you expect from me when I am not being paid (while others are) and when I am being effectively shut out from Aluminaid affairs. For example, do you seriously expect me to continue prosecuting Aluminaid's patent interests when all indications would tell a reasonable person that I am not going to get paid, that there are activities afoot amongst Senior Aluminaid Management to try to cause me personal harm, including divesting me of my shares in Aluminaid International, AG, and that I cannot rely on the word of a single person in the Control Group of Aluminaid? If Aluminaid's Senior Management is going to take action against me (e.g., termination or whatever), then let's get on with it and let the chips fall where they may. (I can assure you that I can and would use every single legal "arrow" in my quiver in such a case.) From my perspective, the fundamental and seemingly insurmountable issue is that no one in Senior Management is willing to admit to and/or correct past bad behaviors such that Aluminaid can move forward as a viable Company. Conversely, I just want to help figure out a way to ensure that Aluminaid survives (while also ensuring that I don't get screwed in the process, which is what is happening now).

Sincerely,

— Terry

This e-mail transmission, and any documents, files, or previous e-mail messages attached to it may contain information that is confidential or legally privileged. If you are not the intended recipient, or a person responsible for delivering it to the intended recipient, then you are hereby notified that you must not read this transmission and that any disclosure, copying, printing, distribution, or use of any of the information contained in or attached to this transmission is strictly prohibited. If you have received this transmission in error, then please notify the sender by

telephone or return e-mail and delete the original transmission and its
attachments without reading or saving in any manner.  This transmission is
covered by the Electronic Communications Privacy Act, 18 USC §§ 2510-2521.


-----Original Message-----
From: david warnock [mailto:davidwam@me.com]
Sent: Tuesday, March 26, 2013 9:31 AM
To: <Terry_Wyles@usa.net>; <Terry.Wyles@aluminaid.com>
Terry.Wyles@aluminaid.com
Cc: Hunt James; Freer Carl
Subject: skype message

Terry
I am responding to your message on skype sent to me earlier today. I thought
I had made myself crystal clear that all future communications should be
directed to all members of the board. It is entirely unacceptable for you,
the company attorney, to act in this way. To say that you have received
"unsolicited communications...?" By what source were these conveyed to you? I
would like to see copies immediately please. Do you not think, as company
attorney, that it would be pertinent to inform the senior management if
"some sort of federal government investigation was supposedly going on." I
find your conduct baffling in the extreme and massively disruptive to the
task that the company is trying to strive to achieve. I also would like to
receive the email that passed on the bank statements to you at the same
time.
Every time we seem to reach a platform from which we can build and move on
you systematically try and dismantle it and seem to want to drive a wedge
into the management of the company. People are trying extremely hard to move
the company to the next level and you appear to want to thwart every effort.
Please desist and comply with my requests listed above immediately.
David
<winmail.dat>



**James Hunt**

**Aluminaid AG**

Copyright © 2003-2013. All rights reserved.

# EXHIBIT 4

Selected Pages from Deposition of Mr. Hunt December 4, 2019

# EXHIBIT 4

```
 1               UNITED STATES DISTRICT COURT

 2        CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

 3

 4

 5
     TERRENCE M. WYLES,        )
 6                             )
               Plaintiff,      )
 7                             )
        v.                     ) Case No.2:17-cv-07722-DMG-SK
 8                             )
     ALLEN ZACHARY SUSSMAN,    )
 9   et al.,                   )
                               )
10             Defendants.     )
                               )
11   -----------------------)

12

13

14                   Deposition of JAMES HUNT

15              Wednesday, December 4, 2019

16                    At 2:02 p.m.

17                   Taken at:

18
              Charles Russell Speechlys
19                  5 Fleet Place
                      London
20                   EC4M 7RD
                 United Kingdom
21

22   Reported stenographically by:
     Miss Leah M. Willersdorf
23   Barkley Court Reporters
     (AVR, MBIVR, QRR2*, International
24   Participating Member NCRA)

25
```

1

```
1                    A P P E A R A N C E S

2
     On behalf of Plaintiff:
3
          LAW OFFICES OF THOMAS SCULLY
4
              10736 Jefferson Boulevard #117
5             Culver City, CA 90230

6             Telephone:   (310) 439 1140
              Facsimile:   (509) 756 6952
7
          BY:  MR. THOMAS H. SCULLY, Esq. (via video)
8             thomas@ThomasScullyLaw.com

9

10   On behalf of Defendant JOSEPH MATHEW MARTEN:

11        HAIGHT BROWN & BONESTEEL LLP

12            555 South Flower Street
              45th Floor
13            Los Angeles, CA 90071

14            Telephone:   (213) 542 8000
              Facsimile:   (213) 542 8100
15
          BY:  MR. WILLIAM E. IRELAND, Esq. (via video)
16            wireland@hbblaw.com

17

18

19

20

21

22

23

24

25


                          2
```

BARKLEY
Court Reporters

```
 1          Q.   Okay.  And how long have you -- strike

 2     that.

 3               Could you briefly describe your

 4     educational and work history?

 5          A.   My education, I went to Westminster

 6     St Vincent de Paul School, leaving without attaining

 7     any qualifications whatsoever.  I started my first

 8     business at the age of 22 and have been self-engaged

 9     from that date to this date in my own businesses.

10          Q.   What is your current business, sir, if you

11     have one?

12          A.   I currently operate under HunterMay, which

13     is a corporate inquiry and negotiation company.

14          Q.   When did you first meet Terrence Wyles?

15          A.   It would have been mid-2012.

16          Q.   And what business were you involved in

17     when you met Mr. Hunt in mid-2012?

18          A.   Sorry, when I met Mr. --

19               (Videoconference link disconnected.)

20               (Off the record at 2:07 p.m.)

21               (On the record at 2:07 p.m.)

22     BY MR. IRELAND:

23          Q.   Hello again.

24          A.   Hi.

25          Q.   That sort of thing happens.  Let me re-ask
```

8

JAMES HUNT

BARKLEY
Court Reporters

1          Q.   I see.  To your knowledge, does Aluminaid,

2     Inc., now called West Hills, does it have any

3     employees at all at the present time?

4          A.   No.

5          Q.   Okay.

6               Were you aware of the lawsuit that West

7     Hills Research and Development filed against my

8     client, Terrence Wyles?

9          A.   Yes.

10         Q.   How were you aware of that lawsuit?

11         A.   I was at the meetings with Loeb & Loeb

12    and went through the documentations with them.

13         Q.   Who had the decision-making power at that

14    time that the lawsuit was filed to proceed with the

15    litigation?

16         A.   That would be Carl Freer and myself.

17         Q.   And that's it; just the two of you?

18         A.   I think we was the only two at the time in

19    the meeting.

20         Q.   So is it fair to say that you decided

21    to move ahead with litigation against Mr. Wyles at

22    that time?

23         A.   It's fair to say on legal advice we went

24    ahead with litigation against Mr. Wyles.

25         Q.   And Carl Freer also agreed to go ahead


                                94

BARKLEY
Court Reporters

# EXHIBIT 5

Selected Pages from Deposition of Mr. Wyles December 9, 2019

# EXHIBIT 5

1              UNITED STATES DISTRICT COURT

2        CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

3                        --o0o--

4    TERRENCE M. WYLES,

5         Plaintiff,

6    vs.                          No. 2:17-cv-07722-DMG-SK

7    ALLEN ZACHARY SUSSMAN, et al.,

8         Defendants.
                                 /

9

10

11

12            DEPOSITION OF TERRENCE M. WYLES

13

14

15

16

17            Taken before JANICE L. BELCHER

18                  CSR No. 12342

19                 December 9, 2019

20

21

22

23

24

25

                                          Page 1

```
 1                        I N D E X

 2                                              PAGE

 3   EXAMINATION BY MR. IRELAND                 5, 199

 4   EXAMINATION BY MR. BRADY                   169, 202

 5

 6

 7

 8

 9

10                    E X H I B I T S

11   Defendants'

12                                              PAGE

13   EXHIBIT 1    5/7/18 Harper Hofer Report      87

14   EXHIBIT 2    Expert Report of David J. Kendall, JD   87

15   EXHIBIT 3    Interrogatory Responses        108

16   EXHIBIT 4    Document entitled,            138

                  "Lawyer Terrence M. Wyles, Esq."

17

     EXHIBIT 5    Document with Affidavit of Terrence   139

18                M. Wyles

19   EXHIBIT 6    Complaint                      141

20   EXHIBIT 7    Transcript of Recorded Phonecall   152

21

22

23

24

25

                                              Page  2
```

```
 1    think, I'm going to record this phone call?

 2         A.  I have to actually go back.  I don't remember.

 3         Q.  Do you remember implying by your silence that

 4    you would not record the phone calls he requested and

 5    then going ahead and doing it?

 6         A.  That I can't comment.  I don't know.

 7         Q.  Is that the sort of thing you would do, sir,

 8    mislead someone by silence?

 9         MR. SCULLY:  Objection as to form.

10    BY MR. IRELAND:

11         Q.  You can answer the question, sir.

12         A.  I don't deliberately try to mislead anyone.

13    When I'm under attack, there's a different set of rules.

14    But when -- but, no, I'm a pretty ethical, honest

15    person.

16         Q.  Okay.  When did you find out that Mr. Sandoval

17    was working on setting up a competing business to

18    Aluminaid?

19         A.  I wasn't aware that he was.

20         Q.  Okay.  Now, you said a moment ago that when you

21    are under attack, there's a different set of rules.

22         What do you mean by that, sir?

23         A.  What I mean by that is, we have a group of

24    people for reasons that, you know, only a little bit has

25    come to light in these intervening years, made up stuff,
```

Page 71

```
 1    literally made up ungodly charges out of whole cloth
 2    that had no basis in reality to destroy me, to make me
 3    whither away.  And when I didn't whither away, they took
 4    the next step to completely destroy me.  It wasn't
 5    enough to just fire me.  They had to absolutely destroy
 6    my reputation.  That's what I mean by under attack.
 7           There isn't a day since that has occurred that
 8    I haven't thought about taking my life.  That is how it
 9    means to be under attack.  I'm very serious.  I take
10    things very seriously.  I'm an honest, ethical person.
11    It is ungodly what has happened to me and how it has
12    made me feel, and --
13        Q.  Anything else, sir?
14        A.  Right now, I'm trying to just steady out.
15            MR. SCULLY:  Why don't we take a moment,
16    Counsel.
17            THE WITNESS:  Please.
18            MR. IRELAND:  Let him know what when you are
19    ready to resume, sir.
20            THE WITNESS:  Go ahead.
21    BY MR. IRELAND:
22        Q.  Did you review the discovery responses in this
23    case before they were served?
24        A.  The discovery responses, yes, I reviewed them.
25    I went over them with counsel, yes.
```

Page 72